UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LA TOIYA MORRISON,<br><br>    Plaintiff,<br><br>v.<br><br>AMERICAN NATIONAL RED CROSS,<br><br>    Defendant. | Case No. 19-cv-02855-HSG<br><br>**ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Re: Dkt. No. 36 |

Pending before the Court is the unopposed motion for preliminary approval of class action settlement filed by Plaintiff La Toiya Morrison. *See* Dkt. No. 36. The parties have reached a settlement regarding Plaintiff's claims and now seek the required court approval. For the reasons set forth below, the Court **GRANTS** Plaintiff's motion for preliminary approval of class action settlement.

## I. BACKGROUND

### A. Factual Background

Plaintiff brings this wage and hour class action against Defendant American National Red Cross on behalf of herself and a putative class of instructors who taught training courses to Defendant's clients in California. *See generally* Dkt. No. 39 ("SAC"). Plaintiff seeks to represent a class defined as "all individuals who are or were employed by [Defendant] as Training Services instructors (formerly known as Preparedness and Health and Safety Services instructors) and Nurse Assistant Training instructors and who taught courses to Red Cross clients in California" during the four years prior to the filing of this action. *Id.* at ¶ 1.

Plaintiff alleges that Defendant required its instructors to use their personal cell phones to carry out their job duties, including communicating with Defendant and its clients regarding class

scheduling, but Defendant did not reimburse any portion of instructors' cell phone expenses. *See id.* at ¶¶ 3, 27–29, 44. Additionally, Defendant did not authorize and permit instructors to take meal and rest breaks, nor did Defendant compensate instructors for missed breaks. *Id.* at ¶¶ 4–5, 30–33, 51–52, 59, 63. Instead, Defendant required instructors to be available to students during all scheduled class time, which impeded instructors' ability to take any meal or rest breaks. *See id.* at ¶ 31. Plaintiff contends that as a result of these practices, Defendant also failed to comply with numerous provisions of California's Labor Code and with Wage Orders promulgated by California's Industrial Welfare Commission ("IWC"). *See id.* at ¶¶ 34–38. Plaintiff further argues that Defendant's conduct constitutes unfair business practices, intended to reduce instructors' compensation and increase Defendant's own profits. *See id.* at ¶¶ 39, 80.

In particular, Plaintiff alleges that Defendant failed to: (a) reimburse for instructors' business expenses, in violation of California Labor Code § 2802; (b) authorize and permit paid off-duty rest breaks, in violation of California Labor Code § 226.7 and the applicable IWC Wage Order; (c) authorize and permit off-duty meal breaks, in violation of California Labor Code § 512 and the applicable IWC Wage Order; (d) compensate instructors for all hours worked, in violation of California Labor Code §§ 510, 1194, 1197, 1198, and the applicable IWC Wage Order; (d) issue accurate itemized wage statements and maintain payroll records, in violation of California Labor Code §§ 226, 1174, 1174.5, and the applicable IWC Wage Order; and (e) pay all compensation due upon termination, in violation of California Labor Code §§ 201–203. *See id.* at ¶¶ 42–77. In addition to compensation and penalties for these violations, Plaintiff seeks restitution and injunctive relief for unfair business practices under California's Unfair Competition Law ("UCL), California Business and Professions Code §§ 17200 *et seq. See id.* at ¶¶ 78–84. Plaintiff also seeks civil penalties under the Private Attorneys General Act of 2004 ("PAGA"), California Labor Code §§ 2698 *et seq. Id.* at ¶¶ 85–87.

### B. Procedural History

Plaintiff initially filed this action in Alameda County Superior Court on April 24, 2019. *See* Dkt. No. 1-1, Ex. A. At the time, Plaintiff only challenged Defendant's failure to reimburse instructors for their cell phone related business expenses, alleging violations of California Labor

Code § 2802 and the UCL. *Id.* Soon after, on May 23, 2019, Defendant removed this action to federal court. *See* Dkt. No. 1. On July 8, 2019, Plaintiff filed an amended complaint, seeking PAGA penalties on behalf of herself and other instructors from April 17, 2018, through the present ("PAGA Period"), for the underlying violation of California Labor Code § 2802. *See* Dkt. No. 15. The parties subsequently agreed to attend early mediation and engaged in informal discovery. *See* Dkt. Nos. 20, 26. As part of this process, Plaintiff's counsel sent surveys to and conducted interviews of putative class members. *See* Dkt. No. 36-1 at ¶ 11. On January 27, 2020, the parties participated in a full-day mediation with mediator Lisa Klerman. *See* Dkt. No. 36-1 at ¶ 14.

### C.     Settlement Agreement

Following the parties' informal discovery, and with the assistance of a mediator, the parties entered into a settlement agreement, fully executed on June 2, 2020. Dkt. No. 36-2, Ex. A ("SA"). The key terms are as follows:

Class Definition:  The Settlement Class is defined as:

> [A]ll individuals who are or were employed by the American National Red Cross as Training Services instructors (formerly known as Preparedness and Health and Safety Services instructors) and/or Nurse Assistant Training instructors and who have taught courses to Red Cross clients in California at any time from April 24, 2015 through and including the date the Preliminary Approval Order is entered by the Court.

SA ¶ 2.4.

Settlement Benefits:  Defendant will make a $377,000 non-reversionary payment. *Id.* ¶¶ 2.21, 3.1. The parties propose that ten percent of this gross settlement fund, or $37,700, be allocated to the PAGA claim as civil penalties. *See* SA ¶¶ 2.35, 3.1(c). Of this PAGA Payment, $28,275 will be paid to the California Labor and Workforce Development Agency ("LWDA") and $9,425 will be distributed pro rata to instructors who taught courses for Defendant in California from April 17, 2018, through the date of this order ("PAGA Releasees"). *Id.*; *see also* Cal. Lab. Code § 2699(i) (providing that penalties under PAGA are split 75% to LWDA and 25% to aggrieved employees). The gross settlement fund also includes Court-approved attorneys' fees and costs, settlement administration fees, any additional payment to Plaintiff as class representative, and payments to class members. SA ¶ 3.1. The cash payments to the class will be

based on the number of pay periods each class member worked during the relevant class period. *Id.* at ¶ 3.1(e). The parties have estimated that after the deductions identified above, as well as applicable taxes and required withholdings, individual class members will receive approximately $557. Dkt. No. 36 at 4; Dkt. No. 36-1 at ¶ 60; *see also* SA ¶ 3.2.

*Cy Pres* Distribution: Settlement checks that are not cashed within 90 days of mailing will be void and those funds will be donated to Bet Tzedek, a non-profit legal services organization that offers free legal services to low-income residents in Southern California, where Defendant's headquarters are located and the region in which Plaintiff worked during the time she was employed by Defendant. SA ¶ 6.8(b); Dkt. No. 36 at 5–6. Bet Tzedek's Employment Rights Project enforces minimum labor standards in the workplace by assisting low-wage workers through a combination of individual representation before the Labor Commissioner, litigation in state and federal court, legislative advocacy, and community education. *See* Dkt. No. 36-1 at ¶ 68.

Release: During the hearing on the motion for preliminary approval, the Court raised concerns that the proposed release was potentially overly broad, requiring class members to release claims that do not arise from the claims that were or could have been pled in the complaint based on the facts alleged. The parties have since clarified this language, and filed an amended Paragraph 4.3 of the Settlement Agreement. *See* Dkt. No. 43. Under this amendment, all Settlement Class Members will release:

> any and all claims pleaded or that could have been pleaded in the Complaint based on the facts and/or allegations in the Complaint, Plaintiff's April 17, 2019 LWDA Letter and/or Plaintiff's February 18, 2020 Supplemental LWDA Letter, including, but not
> limited to, any and all underlying statutory provisions identified in the Complaint, Plaintiff's April 17, 2019 LWDA Letter and/or Plaintiff's February 18, 2020 Supplemental LWDA Letter, any and all penalties and any and all of the following claims or forms of relief that arose at any time during the Settlement Period to the maximum extent permitted by law:
>
> (a) Any claims for expense reimbursement, meal break violations, rest break violations, unpaid wages (including but not limited to minimum wages, regular wages and overtime pay), improper itemized wage statements, improper payroll records maintenance and failure to pay all wages due at the time of termination;
>
> (b) Any claims under California Labor Code sections 201

4

through 203, 226, 226.7, 510, 512, 558, 1174, 1174.5, 1194, 1197, 1197.1, 1198, 2698 and 2802 et seq., and related provisions contained in the California Wage Orders and the California Code of Regulations; the California Business and Professions Code predicated on such Labor Code sections, California Wage Orders, and California Code of Regulations, including but not limited to California Business and Professions Code section 17200 *et seq.*; and any claims under the Fair Labor Standards Act for unpaid wages (including but not limited to minimum wages, regular wages and overtime pay), improper meal breaks, improper rest breaks, improper itemized wage statements, improper payroll records maintenance, failure to pay all wages due at the time of termination and failure to reimburse for expenses;

(c) Any claims for damages, penalties, interest, attorney's fees and costs, injunctive relief, declaratory relief, restitution, fraudulent business practices, punitive damages or any other damages which were alleged or which could have been alleged based in whole or in part on the factual or legal allegations and/or claims in the Complaint, Plaintiff's April 17, 2019 LWDA Letter and/or Plaintiff's February 18, 2020 Supplemental LWDA Letter.

*Id.* PAGA Releasees also agree to release "any and all PAGA claims premised in whole or in part on any of the claims set forth in Paragraph 4.3 above that arose at any time during the PAGA Period." *See* SA ¶ 4.4.

Class Notice: A third-party settlement administrator will send class notices via first-class U.S. mail to each member of the class, using the most current known address. *See* SA ¶ 6.3. The notice will include the nature of the action; a summary of the settlement terms; the formula to be used in calculating the individual settlement payment as well as the share of the PAGA Payment; instructions on how to object to and opt out of the settlement, including relevant deadlines; and the released claims. *Id.* at ¶ 6.3(d); *see also* Dkt. No. 36-1, Ex. B.

Opt-Out Procedure: The deadline for a class member to submit a request for exclusion or to object to the Settlement is 45 days after the initial mailing date of the notice. SA ¶¶ 6.3(e), 6.5, 6.7. Defendant retains the right to "rescind/void" the Settlement if twenty or more class members opt out. *See id.* at ¶ 6.6. Class members cannot, however, opt out of or otherwise object to the PAGA Payment or release of PAGA claims. *See id.*; *see also id.* at ¶ 3.1(c).

1    Incentive Award:  The named Plaintiff may apply for an incentive award of no more than

2    $10,000.  *Id*. at ¶ 3.1(b).

3    Attorneys' Fees and Costs:  Class Counsel will file an application for attorneys' fees not to

4    exceed $125,666.67, as well as costs not to exceed $15,000.  *Id*. at ¶ 3.1(a).

**II.    PROVISIAL CLASS CERTIFICATION**

The plaintiff bears the burden of showing by a preponderance of the evidence that class certification is appropriate under Federal Rule of Civil Procedure 23.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011).  Class certification is a two-step process.  First, a plaintiff must establish that each of the four requirements of Rule 23(a) is met:  numerosity, commonality, typicality, and adequacy of representation.  *Id.* at 349.  Second, she must establish that at least one of the bases for certification under Rule 23(b) is met.  Where, as here, a plaintiff seeks to certify a class under Rule 23(b)(3), she must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

"The criteria for class certification are applied differently in litigation classes and settlement classes."  *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) ("*Hyundai II*").  When deciding whether to certify a litigation class, a district court must consider manageability at trial.  *Id*.  However, this concern is not present in certifying a settlement class.  *Id*. at 556–57.  In deciding whether to certify a settlement class, a district court "must give heightened attention to the definition of the class or subclasses."  *Id*. at 557.

**A.    Rule 23(a) Certification**

**i.    Numerosity**

Rule 23(a)(1) requires that the putative class be "so numerous that joinder of all members is impracticable."  The Court finds that numerosity is satisfied here because joinder of the estimated 377 class members would be impracticable.  *See* Dkt. No. 36-1 ¶ 13(a).

**ii.    Commonality**

Rule 23(a)(2) requires that "there are questions of law or fact common to the class."  A

6

contention is sufficiently common where "it is capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S at 350. Commonality exists where "the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class." *Parra v. Bashas', Inc.*, 536 F.3d 975, 978–79 (9th Cir. 2008). "What matters to class certification . . . is not the raising of common 'questions' — even in droves — but rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S at 350. Even a single common question is sufficient to meet this requirement. *Id.* at 359.

Common questions of law and fact in this action include whether Defendant's policies violated California's wage and hour laws by failing to compensate employees for all business-related expenses. *See* SAC ¶¶ 3, 27–29, 44. Plaintiff further contends that Defendant did not authorize requisite meal and rest breaks and failed to pay all wages upon the separation of employment. *Id.* at ¶¶ 4–5, 30–33, 51–52, 59, 63. Far from a singular occurrence, Plaintiff's complaint asserts that these practices were specific policies. *See, e.g.*, *id.* at ¶¶ 27–31. Accordingly, the Court finds that the commonality requirement is met in this case.

### iii. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quotation omitted). That said, under the "permissive standards" of Rule 23(a)(3), the claims "need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (quotation omitted).

Plaintiff's claims are both factually and legally similar to those of the putative class because Defendant allegedly failed to reimburse and to provide requisite meal and rest breaks for both Plaintiff and all class members. *See* SAC ¶¶ 23, 41(c). That is sufficient to satisfy the typicality requirement.

#### iv. Adequacy of Representation

Rule 23(a)(4) requires that the "representative parties will fairly and adequately represent the interests of the class." The Court must address two legal questions: (1) whether the named Plaintiff and her counsel have any conflicts of interest with other class members and (2) whether the named Plaintiff and her counsel will prosecute the action vigorously on behalf of the class. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000). This inquiry "tend[s] to merge" with the commonality and typicality criteria. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982). In part, these requirements determine whether "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.*

The Court is unaware of any actual conflicts of interest in this matter and no evidence in the record suggests that either Plaintiff or proposed class counsel have a conflict with other class members. Plaintiff's counsel has been appointed class counsel in numerous federal and state class actions. Dkt. No. 36-1 at ¶ 7. The Court finds that proposed class counsel and Plaintiff have prosecuted this action vigorously on behalf of the class to date, and will continue to do so. The adequacy of representation requirement, therefore, is satisfied.

### B. Rule 23(b)(3) Certification

To certify a class, a plaintiff must satisfy the two requirements of Rule 23(b)(3). First, "questions of law or fact common to class members [must] predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). And second, "a class action [must be] superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.*

#### i. Predominance

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quotations omitted). The Supreme Court has defined an individualized question as one where "members of a proposed class will need to present evidence that varies from member to member." *Id.* (quotations omitted). A common question, on the other hand, is one where "the same evidence will suffice for each member to make a prima facie showing [or] the issue is

1   susceptible to generalized, class-wide proof." *Id.* (quotations omitted).

2   The Court concludes that for purposes of settlement, common questions predominate here, because under Plaintiff's allegations Defendant's wage and hour policies were uniform and violated California law. Although the class members will need to rely upon individual evidence to some extent to calculate their individual damages, the "mere fact that there might be differences in damage calculations is not sufficient to defeat class certification." *Hyundai II*, 926 F.3d at 560 (quotations omitted).

### ii.   Superiority

The superiority requirement tests whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court considers four non-exclusive factors: (1) the interest of each class member in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. *Id.*

The Court concludes that a class action enables the most efficient use of Court and attorney resources and reduces costs to the class members by allocating costs among them. Further, this forum is appropriate, and there are no obvious difficulties in managing this class action.

The Court finds that the predominance and superiority requirements of Rule 23(b)(3) are met.

### iii.   Class Representative and Class Counsel

Because the Court finds that Plaintiff meets the commonality, typicality, and adequacy requirements of Rule 23(a), the Court appoints the Named Plaintiff as class representative. When a court certifies a class, it must also appoint class counsel. Fed. R. Civ. P. 23(c)(1)(B). Factors that courts must consider when making that decision include:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and

(iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

Counsel have investigated and litigated this case throughout its existence and have submitted declarations detailing their expertise in representing plaintiffs in class action suits, especially consumer class actions. *See* Dkt. No. 36-1 at ¶ 7. Accordingly, the Court appoints the law firm of HammondLaw, P.C. as Class Counsel.

## III.     PRELIMINARY SETTLEMENT APPROVAL

Finding that provisional class certification is appropriate, the Court now considers whether it should preliminarily approve the parties' class action settlement.

### A.     Legal Standard

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Accordingly, before a district court approves a class action settlement, it must conclude that the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008).

Where the parties reach a class action settlement prior to class certification, district courts apply "'a higher standard of fairness' and 'a more probing inquiry than may normally be required under Rule 23(e).'" *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012). Such settlement agreements "must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048–49 (9th Cir. 2019) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)). A more "exacting review is warranted to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Id.* (quotations omitted).

Courts may preliminarily approve a settlement and notice plan to the class if the proposed

settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) does not grant improper preferential treatment to class representatives or other segments of the class; (3) falls within the range of possible approval; and (4) has no obvious deficiencies. *In re Lenovo Adware Litig.*, No. 15-MD-02624-HSG, 2018 WL 6099948, at *7 (N.D. Cal. Nov. 21, 2018) (citation omitted). Courts lack the authority, however, to "delete, modify or substitute certain provisions. The settlement must stand or fall in its entirety." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

### B. Analysis

#### i. Evidence of Conflicts and Signs of Collusion

The first factor the Court considers is whether there is evidence of collusion or other conflicts of interest. *See Roes*, 944 F.3d at 1049. The Ninth Circuit has directed district courts to look for "subtle signs of collusion," which include whether counsel will receive a disproportionate distribution of the settlement, whether the parties negotiate a "'clear sailing' arrangement (*i.e.*, an arrangement where defendant will not object to a certain fee request by class counsel)," and whether the parties agree to a reverter that returns unclaimed funds to the defendant. *Id*.

As discussed above, the proposed settlement is non-reversionary with all unclaimed funds awarded to a *cy pres* recipient. *See* SA ¶ 6.8(b). However, the Settlement Agreement contains a clear sailing arrangement, which states that Defendant will not oppose Plaintiff's motion for attorneys' fees and costs so long as the amount requested does not exceed $125,666.67 in fees and $15,000 in costs. *Id.* at ¶ 3.19(a)–(b).

#### a. Clear Sailing Provision

Clear sailing provisions are not prohibited, though they "'by [their] nature deprive[] the court of the advantages of the adversary process' in resolving fee determinations and are therefore disfavored." *Id.* at 1050 (quoting *In re Bluetooth*, 654 F.3d at 949) (alterations in original). The Ninth Circuit has noted that clear sailing arrangements are "important warning signs of collusion," because "'[t]he very existence of a clear sailing provision increases the likelihood that class counsel will have bargained away something of value to the class.'" *Id.* at 1051 (quoting *In re Bluetooth*, 654 F.3d at 948). Accordingly, when confronted with a clear sailing provision, the

11

1    district court has a heightened duty to "scrutinize closely the relationship between attorneys' fees
2    and benefit to the class, being careful to avoid awarding 'unreasonably high' fees simply because
3    they are uncontested." *Id.* (quotations omitted).

4    Here, counsel will request fees of $94,250 and costs of $9,595.15. *See* Dkt. No. 36 at 20–
5    21. When deciding to award attorney's fees and costs, the Court has discretion in a common fund
6    case to choose either (1) the lodestar method or (2) the percentage-of-the-fund. *Vizcaino v.*
7    *Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Under the percentage-of-recovery method,
8    twenty-five percent of a common fund is the benchmark for attorneys' fees award. *See*, *e.g.*, *In re*
9    *Bluetooth Headset*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the
10   'benchmark' for a reasonable fee award, providing adequate explanation in the record of any
11   'special circumstances' justifying a departure."). Counsel asserts that they are requesting the
12   benchmark 25% of the settlement fund. *See* Dkt. No. 26 at 20. They have also performed a
13   lodestar cross-check on the requested sum and represent that counsel has incurred fees of $63,984
14   to date, for a preliminary lodestar multiplier of 1.47. Dkt. No. 36-1 at ¶ 72.

15   The Court recognizes that Class Counsel obtained significant results for the prospective
16   class members, as discussed below in Section III.B.iii. And Class Counsel assumed substantial
17   risk in litigating this action on a contingency fee basis, and incurring costs without the guarantee
18   of payment for its litigation efforts. Further, the agreement does not contemplate a
19   disproportionate cash allocation between counsel and the class. *Cf. Roes*, 944 F.3d at 1051
20   ("Here, more of the available $2 million in settlement cash ultimately went to attorneys' fees
21   ($950,000) than would be distributed to class members ($864,115)."). Even if the Court were to
22   award 25% in attorneys' fees, the majority of the monetary settlement will still be distributed to
23   class members. The Court is cognizant of its obligations to review class fee awards with particular
24   rigor, and at the final approval stage will carefully scrutinize the circumstances and determine
25   what attorneys' fee awards is appropriate in this case. Accordingly, given that counsel will not
26   request a disproportionate amount of the settlement agreement and that the settlement is non-
27   reversionary, the Court does not find that the clear sailing provision weighs against preliminary
28   approval.

#### b. *Cy Pres* Distribution

The Court must also evaluate whether the parties' proposed *cy pres* recipient is appropriate. A *cy pres* award must qualify as "the next best distribution" to giving the funds to class members. *Dennis*, 697 F.3d at 865. "Not just any worthy recipient can qualify as an appropriate *cy pres* beneficiary," and there must be a "driving nexus between the plaintiff class and the *cy pres* beneficiaries." *Id.* (quotation omitted). That is to say, a *cy pres* award must be "guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members, and must not benefit a group too remote from the plaintiff class." *Id.* (quotation omitted). A *cy pres* distribution is not appropriate if there is "no reasonable certainty that any class member would benefit from it." *Id.* (quotation omitted).

Here, the parties have selected Bet Tzedek, a non-profit legal services program that provides free legal services to low-income residents of Southern California as its *cy pres* recipient. *See* SA at ¶ 68. Bet Tzedek's Employment Rights Project enforces minimum labor standards in the workplace by assisting low-wage workers, such as class members, through a combination of individual representation before the Labor Commissioner, litigation in state and federal court, legislative advocacy, and community education. *See id.* Counsel are not associated with Bet Tzedek. *See* Dkt. No. 36 at 26–27.

The Court preliminarily finds that Bet Tzedek shares the interests of the class members in preventing consumer fraud, in the context of mislabeling of food products. Accordingly, the Court preliminarily finds that there is a sufficient nexus between the *cy pres* recipient and the Settlement Class.

#### ii. Preferential Treatment

The Court next considers whether the settlement agreement provides preferential treatment to any class member. The Ninth Circuit has instructed that district courts must be "particularly vigilant" for signs that counsel have allowed the "self-interests" of "certain class members to infect negotiations." *In re Bluetooth*, 654 F.3d at 947. For that reason, courts in this district have consistently stated that preliminary approval of a class action settlement is inappropriate where the proposed agreement "improperly grant[s] preferential treatment to class representatives." *Lenovo*,

2018 WL 6099948, at *8 (quotations omitted).

Although the Settlement Agreement authorizes the Named Plaintiff to seek an incentive award of no more than $10,000 for her role in this lawsuit, *see* SA ¶ 3.1(b), the Court will ultimately determine whether she is entitled to such an award and the reasonableness of the amount requested. Incentive awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). Plaintiff must provide sufficient evidence to allow the Court to evaluate her award "individually, using 'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation . . . .'" *Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). The Court will consider the evidence presented at the final fairness hearing and evaluate the reasonableness of any incentive award request. Nevertheless, because incentive awards are not per se unreasonable, the Court finds that this factor weighs in favor of preliminary approval. *See Rodriguez*, 563 F.3d at 958 (finding that "[i]ncentive awards are fairly typical in class action cases" and "are discretionary" (emphasis omitted)).

### iii.  Settlement within Range of Possible Approval

The third factor the Court considers is whether the settlement is within the range of possible approval. To evaluate whether the settlement amount is adequate, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Lenovo*, 2018 WL 6099948, at *8. This requires the Court to evaluate the strength of Plaintiff's case.

Here, the total settlement amount constitutes approximately 71% of what Class Counsel estimates to be the realistic recovery at trial. *See* Dkt. No. 36-1 at ¶ 55. The average net recovery, after deduction of administration costs, attorneys' fees and costs, and any incentive award, will be $557 per Settlement Class Member. *Id.* at ¶ 60. Plaintiff acknowledges that there is substantial risk she would face in continuing to litigate this case, such as certifying the class and prevailing at trial. *See* Dkt. No. 36 at 10–17. The Court finds that the settlement amount, given these risks, weighs in favor of granting preliminary approval.

14

### iv. Obvious Deficiencies

The fourth and final factor that the Court considers is whether there are obvious deficiencies in the settlement agreement. The Court finds no obvious deficiencies, and therefore finds that this factor weighs in favor of preliminary approval.

*     *     *

Having weighed the relevant factors, the Court preliminarily finds that the settlement agreement is fair, reasonable, and adequate, and **GRANTS** preliminary approval. The Court **DIRECTS** the parties to include both a joint proposed order and a joint proposed judgment when submitting their motion for final approval.

## IV. PROPOSED CLASS NOTICE PLAN

For Rule 23(b)(3) class actions, "the court must direct notice to the class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Individual notice must be sent to all class members "whose names and addresses may be ascertained through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). With respect to the content of the notice itself, the notice must clearly and concisely state in plain, easily understood language:

(i)   the nature of the action;
(ii)  the definition of the class certified;
(iii) the class claims, issues, or defenses;
(iv)  that a class member may enter an appearance through an attorney if the member so desires;
(v)   that the court will exclude from the class any member who requests exclusion;
(vi)  the time and manner for requesting exclusion; and
(vii) the binding effect of a class judgment on members[.]

Fed. R. Civ. P. 23(c)(2)(B).

The parties have agreed that a third-party settlement administrator will send class notice via first-class U.S. mail to each absent class member at their last known address, as provided by Defendant and updated by the administrator as appropriate. SA ¶ 6.3. Any letters returned as undeliverable will be sent to any updated address provided with the returned mail. *Id.* If no forwarding address is provided, the settlement administrator will attempt to determine the correct address through a skip-trace or other search engine. *Id.* The Court finds that the proposed notice

15

process is "reasonably calculated, under all the circumstances, to apprise all class members of the proposed settlement." *Roes*, 944 F.3d at 1045 (quotation omitted).

As to the substance of the notice, the parties have attached a copy of their proposed class notice to the Settlement Agreement. Dkt. No. 36-2, Ex. 1. The notice packets will include individualized estimates of the number of pay periods for each class member and the estimate of the amount a class member would receive from the settlement. *See id.* The notice will also specify if the specific class member is a PAGA Releasee, and if so, the number of PAGA pay periods and the estimate of the amount a class member would receive from the PAGA Payment. *Id.* The notice also explains how to opt out of or object to the Settlement Agreement. *Id.*

The notice also informs class members that Class Counsel will file a motion with the Court for attorneys' fees, as well as reimbursement of litigation costs and expenses advanced by Class Counsel. *Id.* It also provides that Plaintiff may request up to $8,000 for her services as Class Representative. *Id.* To enable class members to review the motion for attorneys' fees and the motion for incentive award, Class Counsel shall include language in the settlement notice: (1) indicating the deadline for filing the attorneys' fees motion and request for Plaintiff's incentive award; (2) specifically stating the deadline for any class member objections to these motions; and (3) informing class members that the motion and supporting materials will be available for viewing on Class Counsel's website. *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993–94 (9th Cir. 2010) (holding that under Rule 23(h), class members must be given a full and fair opportunity to examine and object to attorneys' fees motion). The Court therefore finds that with these changes, the content of the proposed notice provides sufficient information about the case and thus conforms with due process requirements. *See Hyundai II*, 926 F.3d at 567 ("Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." (quotation omitted)).

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion for preliminary approval. The parties are **DIRECTED** to meet and confer and stipulate to a schedule of dates for each event

listed below, which shall be submitted to the Court within seven days of the date of this Order:

| Event | Date |
|---|---|
| Deadline for Settlement Administrator to mail notice to all putative Class Members | |
| Filing deadline for attorneys' fees and costs motion | |
| Filing deadline for incentive payment motion | |
| Deadline for Class Members to opt-out or object to settlement and/or application for attorneys' fees and costs and incentive payment | |
| Filing deadline for final approval motion | |
| Final fairness hearing and hearing on motions | |

The parties are further **DIRECTED** to implement the proposed class notice plan with the edits identified above.

**IT IS SO ORDERED.**

Dated: 7/27/2020

*Haywood S. Gilliam Jr.*
HAYWOOD S. GILLIAM, JR.
United States District Judge