JULIAN HAMMOND, Bar No. 268489
jhammond@hammondlawpc.com
POLINA BRANDLER, Bar No. 269086
pbrandler@hammondlawpc.com
ARI CHERNIAK, Bar No. 290071
acherniak@hammondlawpc.com
HAMMONDLAW, P.C.
1829 Reisterstown Road
Suite 410
Baltimore, Maryland  21208
Telephone:    310.601.6766
Facsimile:     310.295.2385

Attorneys for Plaintiff LA TOIYA MORRISON

LISA LIN GARCIA, Bar No. 260582
llgarcia@littler.com
LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, California  94104
Telephone:    415.433.1940
Facsimile:     415.399.8490

Attorneys for Defendant
AMERICAN NATIONAL RED CROSS

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LA TOIYA MORRISON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN NATIONAL RED CROSS, a Congressional Charter Corporation,<br><br>Defendant. | Case No. 4:19-CV-02855-HSG<br><br>ASSIGNED FOR ALL PURPOSES TO JUDGE HAYWOOD S. GILLIAM, JR.<br><br>**[PROPOSED] ORDER: (1) GRANTING FINAL APPROVAL OF CLASS SETTLEMENT AND PLAN OF DISTRIBUTION; (2) GRANTING APPROVAL OF PAGA SETTLEMENT; (3) APPROVING INCENTIVE AWARD TO PLAINTIFF; (4) APPROVING ATTORNEY'S FEES AND COSTS TO CLASS COUNSEL; AND (5) RETAINING JURISDICTION** |

This matter came on for hearing on January 7, 2021 on Plaintiff La Toiya Morrison's ("Plaintiff" or "Class Representative") unopposed Motion for Final Approval of Class Action Settlement, Approval of PAGA Settlement and for Judgment in this action on the terms set forth in the Class and Representative Action Settlement Agreement and Stipulation and the Joint Stipulation to Amend Paragraph 4.3 of the Class and Representative Action Settlement Agreement and Stipulation (collectively the "Settlement Agreement"), attached hereto as Exhibit 1. All capitalized terms appearing in this Final Approval Order that are not defined herein shall have the meanings assigned to them in the Parties' Class and Representative Action Settlement Agreement and Stipulation.

Due and adequate Notice having been given to the members of the Class, and the Court having considered the Settlement Agreement, all papers and proceedings held herein, and all oral and written comments received regarding the proposed Class Settlement, and having reviewed the entire record in this action, *LA TOIYA MORRISON, individually and on behalf of all others similarly situated, v. AMERICAN NATIONAL RED CROSS, a Congressional Charter Corporation*, Case No. 4:19-CV-02855-HSG (the "Action"), and good cause appearing, finds that:

WHEREAS, Plaintiff has alleged claims against Defendant American National Red Cross ("Defendant") on behalf of herself and all individuals who are or were employed by the American National Red Cross as Training Services instructors (formerly known as Preparedness and Health and Safety Services instructors) and/or Nurse Assistant Training instructors and who have taught courses to Red Cross clients in California at any time from April 24, 2015 through July 27, 2020; and

WHEREAS, Plaintiff asserts claims that Defendant failed to reimburse such instructors; failed to authorize and permit off-duty rest breaks and pay rest break premiums; failed to provide off-duty meal periods and pay meal break premium pay; failed to pay them for all hours worked (including minimum, straight time and overtime wages); failed to provide accurate wage statements; failed to pay all wages due upon discharge; failed to maintain accurate payroll records; and violated the California Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200 *et seq.*). Plaintiff further asserts claims that Defendant is liable for penalties under the California Private Attorneys General Act of 2004 ("PAGA") (Cal. Labor Code §§ 2698, *et seq.*); and

WHEREAS, Defendant expressly denies the allegations of wrongdoing and violations of law

alleged in this Action; asserts that it always properly compensated its employees; and further denies

any liability whatsoever to Plaintiff, to the PAGA Releasees, and to the Class Members; and

WHEREAS, without admitting any liability, claim or defense the Parties determined that it was mutually advantageous to settle this Action and avoid the costs, delay, uncertainty and business disruption of ongoing litigation; and

WHEREAS, this Court granted preliminary approval of the parties' Class Settlement in this Action on July 27, 2020 ("Preliminary Approval Order"); and

WHEREAS, a fairness hearing on the proposed Class Settlement and the proposed PAGA Settlement having been duly held and a decision reached,

NOW, therefore, the Court grants final approval of the Class Settlement and approval of the PAGA Settlement, and IT IS HEREBY ORDERED THAT:

1.      The Court has jurisdiction over the subject matter of this Action, Defendant, the Class and the PAGA Releasees.

2.      The Court has determined that the Class Notice given to the Class Members fully and accurately informed all Class Members of all material elements of the proposed Class Settlement — including the plan of distribution of the Gross Settlement Fund, the application for an Incentive Award to Plaintiff and the application for Class Counsel's Fees and Expenses to Class Counsel — constituted the best notice practicable under the circumstances, constituted valid, due and sufficient notice to all Class Members, and complied fully with Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution, and any other applicable laws.  No Class Member objected to the Settlement.  Three Class Members timely and properly opted out of the Class Settlement.

3.      The Court hereby grants final approval of the Class Settlement as fair, reasonable and adequate in all respects to the Class Members pursuant to Rule 23 of the Federal Rules of Civil Procedure.

4.      The Court hereby grants approval of the PAGA Settlement, including the settlement and release of the PAGA Claims, as defined in the Settlement Agreement, and the payment of $37,700 from the Gross Settlement Fund to resolve the PAGA Claims ("PAGA Payment"). Pursuant to the terms of the Settlement Agreement, the Settlement Administrator shall pay seventy-

five percent (75%) of the PAGA Payment, or $28,275.00, to the State of California Labor and Workforce Development Agency ("LWDA"), and twenty-five percent (25%) of the PAGA Payment, or $9,425.00, to the PAGA Releasees. PAGA Releasees will not have the opportunity to opt out of, or object to the PAGA Payment and settlement and release of the PAGA Claims. The plan of distribution as set forth in the Settlement Agreement providing for the distribution of the PAGA Payment to PAGA Releasees is hereby approved, and the PAGA Releasees shall be paid their portion of the PAGA Payment on a pro rata, based on the number of PAGA Pay Periods Worked, as a fraction of the total PAGA Pay Periods Worked by all PAGA Releasees.

5.      The Court hereby orders the Parties and the Settlement Administrator to implement all terms of the Settlement Agreement pertaining to the distribution of the Gross Settlement Fund, including the PAGA Payment and the Net Settlement Fund, in accordance with the terms of the Settlement Agreement.

6.      The plan of distribution as set forth in the Settlement Agreement providing for the distribution of the Net Settlement Fund to Class Members is hereby finally approved as being fair, reasonable, and adequate pursuant to Rule 23 of the Federal Rules of Civil Procedure.

7.      As previously held in the Court's Preliminary Approval Order, the Class for settlement purposes is appropriate under Federal Rule of Civil Procedure 23 and related case law and is defined as follows: "all individuals who are or were employed by the American National Red Cross as Training Services instructors (formerly known as Preparedness and Health and Safety Services instructors) and/or Nurse Assistant Training instructors and who have taught courses to Red Cross clients in California at any time from April 24, 2015 through and including the date the Preliminary Approval Order is entered by the Court."

8.      As previously held in the Court's Preliminary Approval Order, the Court appoints as Class Counsel, Julian Hammond, Polina Brandler and Ari Cherniak of HammondLaw, P.C.

9.      The Court approves payment of an Incentive Award of $8,000.00 to Plaintiff La Toiya Morrison for her service to the Class, which shall be paid from, and not in addition to, the Gross Settlement Fund.

10.     The Court approves the payment of attorneys' fees in the amount of $94,250.00 to Class Counsel, which shall be paid from, and not in addition to, the Gross Settlement Fund.

11.     The Court also approves the additional payment of attorneys' costs in the amount of $9,095.15 to Class Counsel to reimburse them for their expenses, which shall be paid from, and not in addition to, the Gross Settlement Fund.

12.     The Court approves a payment of up to $7,500.00 to the Settlement Administrator, which shall be paid from, and not in addition to, the Gross Settlement Fund. Any portion of the payment to the Settlement Administrator that is unused will go to the Net Settlement Fund.

13.     Any checks for Individual Settlement Payments and any checks for PAGA Payments that are not cashed within 90 days after distribution by the Settlement Administration shall be avoid, and any funds not distributed after expiration of the settlement shall be paid to Bet Tzedek.

14.     All claims asserted in this Action are DISMISSED WITH PREJUDICE as to Plaintiff and all Plaintiff Class Members.  Further, the PAGA claim asserted in this Action shall be DISMISSED WITH PREJUDICE as to Plaintiff and all PAGA Releasees.  Each party shall bear her, his or its own costs and attorneys' fees, except as provided in the Settlement Agreement and as set forth above in this Order and as set forth in any other Order issued in response to the application by Class Counsel for an award of attorneys' fees, costs, and expenses, which hearings took place concurrently with the hearing for this Order.

15.     Upon entry of this Order and the accompanying Judgment, the claims in this Action and the Released Claims of each Plaintiff Class Member against Defendant and against any and all of the Released Parties, as defined in the Settlement Agreement, are fully, finally, and forever released, relinquished and discharged pursuant to the terms of the Settlement Agreement to the maximum extent permitted by law and the PAGA Claims of each PAGA Releasee against Defendant and against any and all of the Released Parties, as defined in the Settlement Agreement, are fully, finally, and forever released, relinquished and discharged pursuant to the terms of the Settlement Agreement to the maximum extent permitted by law.

16.     Upon entry of this Order and the accompanying Judgment, all Plaintiff Class

Members are hereby forever barred and enjoined from prosecuting the Released Claims against any of the Released Parties as defined in the Settlement Agreement and all PAGA Releasees are forever barred and enjoined from prosecuting the PAGA Claims against any of the Released Parties as defined in the Settlement Agreement.

17. Each Plaintiff Class Member and each PAGA Releasee are bound by this Final Approval Order and the Judgment, including, without limitation, the release of claims as set forth in the Settlement Agreement.

18. This Final Approval Order, the Judgment, the Preliminary Approval Order, the Settlement Agreement, and all papers related thereto, are not, and shall not be construed to be, an admission by Defendant of any liability, claim or wrongdoing whatsoever, and shall not be offered as evidence of any such liability, claim or wrongdoing in this Action or in any other proceeding.

19. Without affecting the finality of this Final Approval Order and the Judgment, the Court reserves exclusive and continuing jurisdiction over the Action, the Plaintiff, the Class, the PAGA Releasees, and Defendant for the purposes of supervising the implementation, enforcement, construction, and interpretation of the Settlement Agreement, the Preliminary Approval Order, distribution of the Individual Settlement Payments, the PAGA Payment, award of attorney's fees, costs, and expenses, the Judgment, and this Final Approval Order.

IT IS SO ORDERED.

Dated: _____

_____
HON. HAYWOOD S. GILLIAM. JR.
UNITED STATES DISTRICT COURT JUDGE

**EXHIBIT 1**

1  JULIAN HAMMOND, Bar No. 268489
   jhammond@hammondlawpc.com
2  POLINA BRANDLER, Bar No. 269086
   pbrandler@hammondlawpc.com
3  ARI CHERNIAK, Bar No. 290071
   acherniak@hammondlaw.com
4  HAMMONDLAW, P.C.
   1829 Reisterstown Road
5  Suite 410
   Baltimore, Maryland 21208
6  Telephone:  310.601.6766
   Facsimile:   310.295.2385
7
   Attorneys for Plaintiff
8  LA TOIYA MORRISON
9  LISA LIN GARCIA, Bar No. 260582
   llgarcia@littler.com
10 LITTLER MENDELSON, P.C.
   333 Bush Street
11 34th Floor
   San Francisco, California 94104
12 Telephone:  415.433.1940
   Facsimile:   415.399.8490
13
   Attorneys for Defendant
14 AMERICAN NATIONAL RED CROSS
15
                   UNITED STATES DISTRICT COURT
16
                NORTHERN DISTRICT OF CALIFORNIA
17
18
   LA TOIYA MORRISON, individually and      Case No. 4:19-CV-02855-HSG
19 on behalf of all others similarly situated,
                                             ASSIGNED FOR ALL PURPOSES TO
20               Plaintiff,                   JUDGE HAYWOOD S. GILLIAM
21        v.                                  **CLASS AND REPRESENTATIVE ACTION
                                             SETTLEMENT AGREEMENT AND
22 AMERICAN NATIONAL RED CROSS, a            STIPULATION**
   Congressional Charter Corporation,
23                                           Complaint Filed:   April 24, 2019
                 Defendant.                  FAC Filed:         July 8, 2019
24                                           Trial Date:        None Set
25
26
27
28

This Class and Representative Action Settlement Agreement and Stipulation ("Settlement" or "Settlement Agreement") is made and entered into by Plaintiff LA TOIYA MORRISON, individually and as representative of the Class, as defined below ("Plaintiff" or "Class Representative"), and Defendant AMERICAN NATIONAL RED CROSS ("Defendant").

This Agreement is subject to the approval of the Court, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, 28 U.S.C. § 1711 *et seq*. and California Labor Code section 2699, and is made for the sole purpose of attempting to consummate settlement of this Action on a class-wide and representative basis subject to the following terms and conditions. As detailed below, in the event the Court does not enter an order granting approval of the PAGA Settlement, as defined below, final approval of the Class Settlement, as defined below, or the conditions precedent are not met for any reason, this Agreement is void and of no force or effect whatsoever.

NOW THEREFORE, in consideration of the promises and warranties set forth below, and intending to be legally bound and acknowledging the sufficiency of the consideration and undertakings set forth below, Plaintiff, individually and as representative of the Class, and Defendant agree that the Action shall be, and is finally and fully compromised and settled on the following terms and conditions:

# I.  FACTUAL AND PROCEDURAL BACKGROUND OF ACTION

1.1   Plaintiff's Claims. On April 24, 2019, Plaintiff, on behalf of herself and all others similarly situated, commenced the Action by filing a complaint against Defendant in the Superior Court of the State of California for the County of Alameda, alleging the following causes of action: (1) Failure To Reimburse Business Expenses (Cal. Labor Code § 2802); and (2) Unfair Competition Law Violation (Cal. Business & Professions Code §§17200-17204). Shortly before initiating her action, on or about April 17, 2019, Plaintiff provided written notice to the California Labor and Workforce Development Agency ("LWDA") and to Defendant pursuant to the Private Attorneys General Act of 2004 ("PAGA") (Cal. Labor Code §§ 2698 *et seq*.) ("Plaintiff's April 17, 2019 LWDA Letter") and, following the expiration of the statutory waiting period and after Defendant removed this Action to the United States District Court for the Northern District of California, Plaintiff filed a first amended complaint in the United States District Court for the Northern District of California on July

8, 2019, re-alleging each of the causes of action in the original complaint and alleging a new cause of action for civil penalties pursuant to PAGA.

1.2 Defendant's Answer. Defendant answered Plaintiff's original complaint on May 22, 2019, and answered Plaintiff's first amended complaint on July 29, 2019.

1.3 Discovery, Investigation, and Research. Class Counsel conducted significant discovery, research and investigation in furtherance of the prosecution of the Action. This discovery, investigation, research and prosecution included, among other things, (a) multiple conferences with Plaintiff and Defendant's counsel; (b) inspection and analysis of hundreds of pages of documents and other information produced by Plaintiff and Defendant during the litigation of the Action and in preparation for mediation (including relevant policies, course records of the classes taught by the Class Members and reimbursement records); (c) analysis of the numerous legal positions taken by Defendant; (d) investigation into the viability of class treatment of the claims asserted in the Action; (e) analysis of potential class-wide damages, including reviewing course records and analyzing information sufficient to understand Defendant's potential defenses thereto; (f) research of the applicable law with respect to the claims asserted in the Complaint as well as the potential defenses thereto; (g) research and preparation of extensive briefing regarding class certification issues; and (h) assembling and analyzing extensive data and information for calculating damages. The Parties have determined that as of October 2019, the estimated size of the Class was approximately 386 Class Members.

The Class Representative has vigorously prosecuted this Action, and Defendant has vigorously contested it. The Parties have engaged in sufficient investigation and discovery to assess the relative merits of the claims asserted by the Class Representative and of Defendant's defenses thereto.

1.4 Mediation. The Parties attended mediation on January 27, 2020 before Lisa Klerman. With mediator Klerman's assistance, the Parties agreed, subject to approval by the Court, to the Settlement of the Action. The Parties further agreed to enter into this Agreement to memorialize their settlement of the Action.

1.5 Allegations of the Class Representative and Benefits of Settlement. The extensive discovery conducted in this matter, as well as discussions between counsel, have been adequate to give

the Class Representative and Class Counsel a sound understanding of the merits of their positions and to evaluate the worth of the claims of the Class. The discovery conducted in the Action and the information exchanged by the Parties through discovery and settlement discussions are sufficient to reliably assess the merits of the Parties' respective positions and to compromise the issues on a fair and equitable basis.

Class Counsel believes that the Settlement set forth in this Stipulation confers substantial benefits upon Plaintiff and the Class Members and that an independent review of this Agreement by the Court in the approval process will confirm this conclusion. Based on their own independent investigation and evaluation, Class Counsel has determined that the Settlement set forth in the Agreement is in the best interests of the Class Members.

1.6    <u>Defendant's Denial of Wrongdoing and Liability</u>. Defendant has denied and continues to deny each and all of the allegations, claims, and contentions alleged by Plaintiff in the Action. Defendant has expressly denied and continues to deny all charges of wrongdoing or liability against it arising out of any of the conduct, statements, acts or omissions alleged in the Action. Defendant contends that it complied in good faith with California and federal wage and hour laws and has dealt legally and fairly with Plaintiff and Class Members. Defendant further denies that, for any purpose other than settling the Action, these claims are appropriate for class or representative treatment. Nonetheless, Defendant has concluded that further proceedings in the Action would be protracted and expensive and that it is desirable that the Action be fully and finally settled in the manner and upon the terms and conditions set forth in this Agreement in order to dispose of burdensome and protracted litigation, to permit the operation of Defendant's business without further expensive litigation and the distraction and diversion of its personnel with respect to matters at issue in the Action. Defendant has also taken into account the uncertainty and risks inherent in any litigation, especially in complex cases such as the Action. Defendant has, therefore, determined that it is desirable and beneficial to it that the Action be settled in the manner and upon the terms and conditions set forth in this Stipulation.

1.7    <u>Intent of the Settlement</u>. The Settlement set forth herein intends to achieve the following: (1) entry of an order approving the PAGA Settlement; (2) entry of an order approving the Class Settlement; (3) entry of judgment of the Action; (4) discharge of the Released Parties from

liability for any and all of the PAGA Claims by the PAGA Releasees; (5) discharge of the Released Parties from liability for any and all of the Released Claims by the Plaintiff Class Members; and (6) discharge of Plaintiff from liability for any and all claims arising out of the Action and any other claims arising from her employment and separation of employment with the Red Cross.

## II. DEFINITIONS

As used in this Agreement, the following terms shall have the meanings specified below. To the extent terms or phrases used in this Agreement are not specifically defined below, but are defined elsewhere in this Agreement, they are incorporated by reference into this definition section.

2.1    "Action" refers to the civil action entitled *La Toiya Morrison v. American National Red Cross*, commenced on April 24, 2019, in the Superior Court of the State of California for the County of Alameda, Case No. RG19016307, which was then removed to the United States District Court for the Northern District of California, Case No. 4:19-CV-02855-HSG.

2.2    "Administrative Expenses" include all costs and expenses associated with and paid to the Settlement Administrator for administration of the Settlement and related matters, which are anticipated not to exceed $12,000.00.

2.3    "Agreement" means this Class and Representative Action Settlement Agreement and Stipulation, including the attached exhibits.

2.4    "Class" means "all individuals who are or were employed by the American National Red Cross as Training Services instructors (formerly known as Preparedness and Health and Safety Services instructors) and/or Nurse Assistant Training instructors and who have taught courses to Red Cross clients in California at any time from April 24, 2015 through and including the date the Preliminary Approval Order is entered by the Court."

2.5    "Class Counsel" refers to Julian Hammond, Polina Brandler and Ari Cherniak of HammondLaw, P.C.

2.6    "Class Counsel's Fees and Expenses" means the amount awarded to Class Counsel by the Court to compensate them for their fees in prosecuting the Action, not to exceed $125,666.67 (i.e., ⅓ of the Gross Settlement Fund), plus reasonable costs actually incurred, not to exceed $15,000.00 as determined by the Court.

2.7    "Class Member" means any person who is a member of the Class.

2.8    "Class Notices" means the Notices of Class Action Settlement, as set forth in the form of **Exhibit 1** attached hereto, or as otherwise approved by the Court, which is to be mailed to Class Members.

2.9    "Class Representative" means Plaintiff La Toiya Morrison.

2.10    "Class Settlement" means the non-PAGA portion of the settlement embodied in this Agreement, which is subject to the Court's preliminary and final approval.

2.11    "Complaint" means the Class Action Complaint and the First Amended Class Action Complaint filed by Plaintiff in the Action as well as the Second Amended Class Action Complaint Plaintiff shall file for settlement purposes. This Second Amended Class Action Complaint shall add the following causes of action: (1) failure to authorize and permit paid off-duty rest breaks and pay rest break premium pay in violation of California Labor Code § 226.7, § 12 of applicable IWC Wage Order and corresponding California Code of Regulations; (2) failure to provide off-duty meal periods and pay meal break premium pay in violation of California Labor Code §§ 512, 226.7, § 11 of applicable IWC Wage Order and corresponding California Code of Regulations; (3) failure to pay all wages owed in violation of California Labor Code §§ 510, 1194, 1197, 1198, §§ 3-4 of applicable IWC Wage Order and corresponding California Code of Regulations; (4) failure to issue accurate itemized wage statements and maintain payroll records in violation of California Labor Code §§ 226(a), 1174(d) and 1174.5, § 7 of applicable IWC Wage Order and corresponding California Code of Regulations; and (5) failure to pay all wages due upon discharge in violation of California Labor Code §§ 201-203. In the Second Amended Class Action Complaint, Plaintiff shall amend the existing UCL claim as well as PAGA claim to seek PAGA penalties based on the new causes of action in the Second Amended Complaint. A copy of a proposed Second Amended Class Action Complaint subject to Court approval is attached hereto as **Exhibit 2**.

2.12    "Court" means the United States District Court for the Northern District of California.

2.13    "Defendant" means American National Red Cross (sometimes known as "The American National Red Cross").

2.14    "Defense Counsel" means Lisa Lin Garcia of Littler Mendelson, P.C.

2.15    "Effective Date" of this Agreement means the date when all of the conditions set forth in Paragraph 7.8 have occurred.

2.16    "Employee's Taxes and Required Withholdings" means the employee's share of any and all applicable federal, state or local payroll taxes, including those collected under authority of the Federal Insurance Contributions Act ("FICA"), the Federal Unemployment Tax Act ("FUTA") and/or the State Unemployment Tax Act ("SUTA") on the portion of any Plaintiff Class Member's Individual Settlement Payment that constitutes wages. The Employee's Taxes and Required Withholdings will be withheld from and paid out of the Net Settlement Fund.

2.17    "Employer's Taxes" means and refers to the employer's share of corporate federal, state and/or local payroll taxes, including Medicare taxes, Social Security taxes, federal unemployment taxes, state unemployment insurance taxes, and employment training taxes, that is owed on the portion of any Plaintiff Class Member's Individual Settlement Payment that constitutes wages.

2.18    "Escalator Clause" shall mean the provisions set forth in Paragraph 3.4 of this Agreement.

2.19    "Final Approval Hearing" means the final hearing held to ascertain the fairness, reasonableness, and adequacy of the Class Settlement and the hearing held to approve the PAGA Settlement.

2.20    "Final Approval Order" means an order from the Court that grants final approval of the Class Settlement and grants approval of the PAGA Settlement.  A copy of a proposed Final Approval Order subject to Court approval is attached hereto as **Exhibit 4**.

2.21    "Gross Settlement Fund" means the agreed upon non-reversionary settlement amount comprising of: (1) the amount of $377,000.00; and (2) any additional amount due pursuant to the Escalator Clause, if such Escalator Clause is triggered. This Gross Settlement Fund is to be paid by Defendant in full settlement of the Released Claims and the PAGA Claims, including the Administrative Expenses, Class Counsel's Fees and Expenses, any Court approved Incentive Award, the PAGA Payment, the Net Settlement Fund and all other costs associated with the Settlement.

2.22    "Incentive Award" means any additional monetary payment provided to Plaintiff in her capacity as Class Representative, not to exceed $10,000.00, for her efforts and risks on behalf of the

Class in the Action, as determined by the Court as well as a consideration for the general release and waiver by Plaintiff as set forth in Paragraph 4.7 of this Agreement.

2.23 "Individual Settlement Payment" means the amount which is ultimately distributed to each Plaintiff Class Member from the Net Settlement Fund, net of any Employee's Taxes and Required Withholdings, separate and distinct from the PAGA Releasee's share of the PAGA Payment.

2.24 "LWDA" means the California Labor and Workforce Development Agency.

2.25 "Mailing Date" means the date that the Settlement Administrator initially mails by Regular United States Mail the Class Notice to the Class Members.

2.26 "Net Settlement Fund" means the portion of the Gross Settlement Fund available for distribution to Plaintiff Class Members after deduction of Class Counsel's Fees and Expenses, the Incentive Award, the Administrative Expenses, and the PAGA Payment.

2.27 "Notice Period" means the forty-five (45) calendar day period which begins on the Mailing Date. An Opt-Out Request must be returned to the Settlement Administrator with a postmark dated during the Notice Period to be valid and effective. An objection must be filed with the Court during the Notice Period to be considered. A written notice disputing the number of Pay Periods Worked and/or PAGA Pay Periods Worked must be returned to the Settlement Administrator with a postmark dated during the Notice Period to be considered.

2.28 "Opt-Out Request" means a written request from a Class Member requesting exclusion from the Class in accordance with the terms of the Agreement and the Class Notices.

2.29 "PAGA" means the Private Attorneys General Act of 2004 (Cal. Labor Code §§ 2698 *et seq.*)

2.30 "PAGA Claims" means all disputes, claims, and/or causes of action set forth in Paragraph 4.4.

2.31 "PAGA Payment" means the payment to the LWDA and the PAGA Releasees in settlement of all claims for PAGA penalties.

2.32 "PAGA Payment Check" means the check issued to each PAGA Releasee for his/her share of the PAGA Payment.

2.33    "PAGA <u>Pay Periods Worked</u>" means the number of pay periods for which a PAGA Releasee was paid wages for work performed during the period beginning on April 17, 2018 through and including the date the Preliminary Approval Order is entered by the Court, as regularly recorded on Defendant's payroll systems then in effect.

2.34    "<u>PAGA Period</u>" means the period beginning on April 17, 2018 through and including the date the Final Approval Order is entered by the Court.

2.35    "<u>PAGA Releasee</u>" means an individual who is or was employed by the American National Red Cross as Training Services instructors (formerly known as Preparedness and Health and Safety Services instructors) and/or Nurse Assistant Training instructors and who have taught courses to Red Cross clients in California at any time from April 17, 2018 through and including the date the Preliminary Approval Order is entered by the Court.

2.36    "<u>PAGA Settlement</u>" means the PAGA portion of the settlement embodied in this Agreement, which is subject to Court's approval.

2.37    "<u>Pay Periods Worked</u>" means the number of pay periods for which a Class Member was paid wages for work performed during the Settlement Period, as regularly recorded on Defendant's payroll systems then in effect.

2.38    "<u>Parties</u>" means Plaintiff, individually and on behalf of all Class Members and all PAGA Releasees, and Defendant.

2.39    "<u>Plaintiff</u>" means the named Plaintiff in the Action, La Toiya Morrison.

2.40    "<u>Plaintiff Class Member</u>" means each Class Member who has not timely and properly opted out of the Class Settlement pursuant to Paragraph 6.5 of this Agreement.

2.41    <u>Preliminary Approval Order</u>" means an order from the Court preliminarily approving the Class Settlement. A copy of a proposed Preliminary Approval Order subject to Court approval is attached hereto as **Exhibit 3**.

2.42    "<u>Released Claims</u>" and "<u>Settled Claims</u>" mean all disputes, claims, and/or causes of action set forth in Paragraph 4.3.

2.43    "<u>Released Parties</u>" means the American National Red Cross, its current and former direct or indirect related entities and its/their current and/or former direct or indirect units and related

entities, as well as its/their respective current and former officers, directors, employees, agents, committee members, board members, volunteers, successors, insurers, attorneys, agents, and assigns.

2.44 "Settlement" means the settlement of the Action effectuated by this Agreement between the Parties (including the Class Settlement and PAGA Settlement).

2.45 "Settlement Administrator" means an experienced, neutral third-party administrator approved by the Court responsible for administration of the Settlement and related matters.

2.46 "Settlement Period" means the period beginning on April 24, 2015 through and including the date the Preliminary Approval Order is entered by the Court.

2.47 "Settlement Proceeds Distribution Deadline" means a date that is thirty (30) days after the Effective Date of this Agreement as described in Paragraph 7.8.

## III.    SETTLEMENT PAYMENT PROVISIONS

3.1 Allocation of Gross Settlement Fund. Subject to Court approval and the conditions specified in this Agreement, and in consideration of the mutual covenants and promises set forth herein, Defendant agrees to make a total settlement payment under this Agreement in the amount of $377,000, *i.e.*, Gross Settlement Fund. The Gross Settlement Fund includes, but is not limited to, payments to be made for (1) Class Counsel's Fees and Expenses; (2) Plaintiff's Incentive Award; (3) Administrative Expenses; (4) PAGA Payment; and (5) Net Settlement Fund. Defendant will be responsible for the Employers' Taxes on the wage component of the Individual Settlement Payments and will pay that amount separately from the Gross Settlement Fund. The Parties agree, subject to Court approval, that the Gross Settlement Fund shall be apportioned as follows:

(a) Class Counsel's Fees and Expenses. At the Final Approval Hearing, Class Counsel will apply to the Court for an award of attorneys' fees incurred by Class Counsel in an amount not to exceed $125,666.67, which equals approximately one-third of the Gross Settlement Fund. At the Final Approval Hearing, Class Counsel will also apply to the Court for recovery of actual costs incurred by Class Counsel in the Action, not to exceed $15,000. Defendant will not oppose such application provided that Class Counsel does not seek to recover more than the maximum amounts as stated in this Paragraph. Approval of the Settlement shall not be contingent upon approval of the amounts awarded for the Class Counsel's Fees and Expenses.

The Class Counsel's Fees and Expenses are included in, and shall come from, the Gross Settlement Fund. The Class Counsel's Fees and Expenses approved by the Court shall encompass: (a) all work performed and costs and expenses incurred by, or at the direction of, any attorney purporting to represent the Class and/or PAGA Releasees through the date of this Agreement; (b) all work to be performed and costs to be incurred in connection with approval by the Court of the Settlement and the termination of this Action; (c) all work to be performed and costs and expenses, if any, incurred in connection with administering the Settlement through the termination of the Action, with prejudice; and (d) may be based inter alia on the Common Fund Doctrine and/or the Catalyst Theory.

Class Counsel must provide Defendant and the Settlement Administrator with IRS Forms W-9, so that an IRS Form(s) 1099 misc. may be issued. To the extent attorneys' fees are not approved in the full amount of $125,666.67, as set forth above, then the amount not approved will be a part of the Net Settlement Fund for distribution to the Plaintiff Class Members on a pro rata basis pursuant to Paragraph 3.1(e). Similarly, to the extent costs sought by Class Counsel are not approved in their entirety, any sum not approved will be a part of the Net Settlement Fund for distribution to the Plaintiff Class Members on a pro rata basis pursuant to Paragraph 3.1(e). Except as provided in this Paragraph, upon Final Approval, each Party shall bear her or its own attorneys' fees, costs, and expenses incurred in the prosecution, defense, and settlement of the Action.

(b)     Incentive Award. At the Final Approval Hearing, Class Counsel will apply to the Court for an Incentive Award in the amount of up to $10,000.00 to be paid to Plaintiff for her services and for assuming the risks associated with this litigation as well as consideration for the general release and waiver by Plaintiff set forth in Paragraph 4.7. Defendant will not oppose such application provided that Plaintiff does not seek to recover more than the maximum amount as stated in this Paragraph. Approval of the Settlement shall not be contingent upon approval of the amount awarded as Plaintiff's Incentive Award.

Any Incentive Award is included in, and shall come from, the Gross Settlement Fund. If the Court approves and awards an Incentive Award in an amount less than the $10,000.00, as set forth above, the amount not approved will be a part of the Net Settlement Fund for distribution to the

Plaintiff Class Members on a pro rata basis pursuant to Paragraph 3.1(e). The Incentive Award payable to Plaintiff shall be in addition to any payment she may receive pursuant to Paragraphs 3.1(c) and 3.1(e), below.

(c)     PAGA Payment. Subject to Court approval, the Parties allocates $37,700.00 of the Gross Settlement Fund as the PAGA Payment. Subject to Court Approval, an amount of $28,275.00 shall be paid to the State of California LWDA. This amount is 75% of the $37,700.00 PAGA Payment that the Parties have agreed is to be paid in settlement of all claims for civil penalties under the PAGA. The remaining 25% of the $37,700.00 PAGA Payment shall be distributed pro rata to all PAGA Releasees, based on the number of PAGA Pay Periods Worked by a PAGA Releasee, as a fraction of the total PAGA Pay Periods Worked of all PAGA Releasees. The portion of the PAGA payment to the PAGA Releasees shall be treated entirely as penalties. PAGA Releasees will not have the opportunity to opt out or object to the PAGA Payment and/or release of PAGA Claims set forth in this Agreement although the PAGA Settlement will be subject to Court approval. In the event the LWDA rejects this allocation, the Parties will meet and confer with the Court and the LWDA to reach a penalty allocation acceptable to all parties that does not materially alter the terms of Settlement, nor require Defendant to pay more than the Gross Settlement Fund. At the same time that Plaintiff files her Motion for Preliminary Approval and her Motion for Final Approval, Plaintiff shall send a copy of the Agreement to the LWDA pursuant to the PAGA. The PAGA Payment shall be paid from the Gross Settlement Fund.

(d)     Administrative Expenses. Subject to Court approval, an amount of $12,000.00 will be set aside from the Gross Settlement Fund to cover any of the Settlement Administrator's Administrative Expenses. The Parties agree to propose Simpluris, Inc. as the Settlement Administrator. If any portion of the $12,000.00 amount allocated for Administrative Expenses remains unused, it will go to the Net Settlement Fund.

(e)     Net Settlement Fund. After deducting the amounts specified in Paragraphs 3.1(a)-(d), above, each Plaintiff Class Member shall be entitled to a pro rata portion of the remaining amount of the Gross Settlement Fund, which is known as the Net Settlement Fund. Individual Settlement Payments shall be awarded to Plaintiff Class Members from the Net Settlement Fund based

on the number of Pay Periods Worked by the Plaintiff Class Member, as a fraction of the total Pay Periods Worked of all Plaintiff Class Members.

The Parties acknowledge and agree that the formula used to calculate Individual Settlement Payments does not imply that all of the elements of damages alleged in the Action are not being taken into account. The above formula was devised as a practical and logistical tool to simplify the settlement process.

The Parties agree that the entire amount of the Net Settlement Fund, less applicable Employee's Taxes and Required Withholdings, shall be distributed to Plaintiff Class Members. Any Class Member who is not a Plaintiff Class Member shall not receive an Individual Settlement Payment but as PAGA Releasees, such individual will still receive his/her pro rata share of the PAGA Payment to the PAGA Releasees.

3.2 <u>Taxation of Settlement Proceeds</u>. All Individual Settlement Payments paid to Plaintiff Class Members shall be paid in a net amount after applicable state and federal withholdings, including payroll taxes, have been deducted.

(a) The Parties agree that one-third (⅓) of the Individual Settlement Payment distributed to each Plaintiff Class Member will be considered wages, and will be reported as such to each Plaintiff Class Member on an IRS Form W-2. The Parties agree that two-third (⅔) of the Individual Settlement Payment distributed to each Plaintiff Class Member will be considered civil penalties and interest, and will be reported as such to each Plaintiff Class Member on an IRS Form 1099 misc., if applicable. The Parties agree that the Incentive Award to Plaintiff will be reported on an IRS Form 1099 misc., if applicable. The Parties further agree that the portion of the PAGA Payment distributed to each PAGA Releasee will be treated entirely as civil penalties, and will be reported as such to each PAGA Releasee on an IRS Form 1099 misc., if applicable.

(b) The Settlement Administrator shall calculate, withhold from each Individual Settlement Payment, and remit to applicable governmental agencies sufficient amounts as may be owed by Defendant and the Plaintiff Class Members for applicable employee taxes. The Settlement Administrator will issue appropriate tax forms to Defendant, Plaintiff and each Plaintiff Class Member and PAGA Releasee consistent with the foregoing breakdown.

(c)     The Parties agree that the Gross Settlement Fund will qualify as a settlement fund pursuant to the requirements of section 468(B)(g) of the Internal Revenue Code of 1986, as amended, and section 1.468B-1. *et seq*. of the income tax regulations. Furthermore, the Settlement Administrator is hereby designated as the "Administrator" of the qualified settlement funds for purposes of section 1.46B-2(k) of the income tax regulations. As such, all taxes imposed on the gross income of the Gross Settlement Fund and any tax-related expenses arising from any income tax return or other reporting document that may be required by the Internal Revenue Service or any state or local taxing body will be paid from the Gross Settlement Fund.

(d)     All Parties represent that they have not received, and shall not rely on, advice or representations from the other Party or her/its agents regarding the tax treatment of payments under federal, state or local law.

3.3     <u>No Credit Toward Benefit Plans</u>. Except as otherwise required by applicable plan documents, the Individual Settlement Payments, Incentive Award and PAGA Payment made to Plaintiff, Class Members and PAGA Releasees under this Agreement shall not be utilized to calculate any additional benefits under any benefit plans to which any Plaintiff, Class Members and/or PAGA Releasees may be eligible including, but not limited to: retirement plans, profit-sharing plans, bonus plans, 401(k) plans, stock purchase plans, vacation plans, sick leave plans, PTO plans, pension plans, or any other benefit plan. It is the Parties' intention that this Agreement will not affect any rights, contributions, or amounts to which Plaintiff, Class Members and PAGA Releasees may be entitled under any benefit plans.

3.4     <u>Escalator Clause</u>. The Parties agree that if the number of Class Members exceeds 386 by more than ten percent (10%) (i.e. more than 425 class members) at the time of the Preliminary Approval Order is entered, the Gross Settlement Amount shall be adjusted upwards, *pro rata*, for each additional Class Member by the same number of percentage points above 10% by which the number of Class Members exceeds 10% (*i.e.*, if the actual number of Class Members at the time of the Preliminary Approval Order is entered is 12% more than 386, or 432, then the Gross Settlement Amount shall increase by 2%, or $7,540.00). Any additional funds to be paid by Defendant under this

Escalator Clause shall be added to the Net Settlement Fund to be distributed to Plaintiff Class Members.

## IV.   RELEASE PROVISIONS

4.1   <u>Non-Admission Of Liability</u>. The Parties enter into this Agreement to resolve the dispute that has arisen between them and to avoid the burden, expense and risk of continued litigation. In entering into this Agreement, Defendant does not admit, and specifically denies, that it has violated any federal, state, or local law; violated any regulations or guidelines promulgated pursuant to any statute or any other applicable laws, regulations or legal requirements; breached any contract, violated or breached any duty; engaged in any misrepresentation or deception; or engaged in any other unlawful conduct with respect to the Plaintiff or any Class Member and/or PAGA Releasee. Neither this Agreement, nor any of its terms or provisions, nor any of the negotiations connected with it, shall be construed as an admission or concession by Defendant of any such violations or failures to comply with any applicable law. Except as necessary in a proceeding to enforce the terms of this Agreement, this Agreement and its terms and provisions shall not be offered or received as evidence in any action or proceeding to establish any liability or admission on the part of Defendant or to establish the existence of any condition constituting a violation of, or a non-compliance with, federal, state, local or other applicable law.

4.2   <u>Dismissal of Claims</u>. Subject to final Court approval and the conditions specified in this Agreement, and in consideration of the mutual covenants and promises set forth herein, Plaintiff and all Plaintiff Class Members shall dismiss with prejudice all Released Claims, to the greatest extent permitted by law, and Plaintiff and all PAGA Releasees shall dismiss with prejudice all PAGA Claims to the greatest extent permitted by law.

4.3   <u>Release of All Settled Claims</u>. Upon the Court's final approval of the Class Settlement and entry of the Judgment, Plaintiff and all Plaintiff Class Members (*i.e.*, all Class Members who do not properly opt-out) and all persons purporting to act on the Plaintiff Class Members' behalf or purporting to assert a claim under or through them, hereby do and shall be deemed to have fully, finally, and forever released, settled, compromised, relinquished and discharged any and all of the Released Parties of and from any and all claims pleaded or that could have been pleaded in the

Complaint or arising from the facts and/or allegations in the Complaint, Plaintiff's April 17, 2019 LWDA Letter and/or Plaintiff's February 18, 2020 Supplemental LWDA Letter, including, but not limited to, any and all underlying statutory provisions identified in the Complaint, Plaintiff's April 17, 2019 LWDA Letter and/or Plaintiff's February 18, 2020 Supplemental LWDA Letter, any and all penalties and any and all of the following claims or forms of relief that arose at any time during the Settlement Period to the maximum extent permitted by law:

(a)  Any claims for expense reimbursement, meal break violations, rest break violations, unpaid wages (including but not limited to minimum wages, regular wages and overtime pay), improper itemized wage statements, improper payroll records maintenance and failure to pay all wages due at the time of termination;

(b)  Any claims under California Labor Code sections 201 through 203, 226, 226.7, 510, 512, 558, 1174, 1174.5, 1194, 1197, 1197.1, 1198, 2698 and 2802 *et seq.*, and related provisions contained in the California Wage Orders and the California Code of Regulations; the California Business and Professions Code predicated on such Labor Code sections, California Wage Orders, and California Code of Regulations, including but not limited to California Business and Professions Code section 17200 *et seq.*; and any claims under the Fair Labor Standards Act for unpaid wages (including but not limited to minimum wages, regular wages and overtime pay), improper meal breaks, improper rest breaks, improper itemized wage statements, improper payroll records maintenance, failure to pay all wages due at the time of termination and failure to reimburse for expenses;

(c)  Any claims for damages, penalties, interest, attorney's fees and costs, injunctive relief, declaratory relief, restitution, fraudulent business practices, punitive damages or any other damages which were alleged or which could have been alleged based in whole or in part on the factual or legal allegations and/or claims in the Complaint, Plaintiff's April 17, 2019 LWDA Letter and/or Plaintiff's February 18, 2020 Supplemental LWDA Letter.

All claims set forth in this Paragraph 4.3 shall be collectively referred to as the "Released Claims" or "Settled Claims." The Plaintiff Class Members are bound by the Released Claims regardless of whether they cash their Individual Settlement Payment checks.

4.4    Release of PAGA Claims. Upon the Court's approval of the PAGA Settlement and entry of the Judgment, Plaintiff and the PAGA Releasees and all persons purporting to act on the PAGA Releasees' behalf or purporting to assert a claim under or through them, hereby do and shall be deemed to have fully, finally, and forever released, settled, compromised, relinquished and discharged any and all of the Released Parties of and from any and all PAGA claims premised in whole or in part on any of the claims set forth in Paragraph 4.3 above that arose at any time during the PAGA Period (collectively, the "PAGA Claims"). The PAGA Releasees will be issued a check for their share of the PAGA Payment and will not have the opportunity to opt out of, or object to, the PAGA Payment and release of the PAGA Claims set forth in this Paragraph. The PAGA Releasees are bound by the release of the PAGA Claims regardless of whether they cash their PAGA Payment Check.

4.5    Communication to the Class. The Parties agree for settlement purposes only that, because the Class Members are so numerous, it is impossible or impracticable to have each Class Member execute this Agreement. Accordingly, the Class Notice will advise all Class Members of the binding nature of the release of claims and such notices shall have the same force and effect as if the Agreement were executed by each Class Member.

4.6    Representation by Plaintiff. Plaintiff and Class Counsel represent, covenant, and warrant that they have not directly or indirectly assigned, transferred, encumbered or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action, or rights herein released and discharged, except as set forth herein.

4.7    General Release and Waiver of Cal. Civil Code § 1542 by Plaintiff. Upon the Court's final approval of the Class Settlement and entry of the Judgment, Plaintiff (on her behalf and on behalf of her heirs, executors, administrators, and assigns), but not other Class Members and/or PAGA Releasees, knowingly and voluntarily releases and forever discharges the Released Parties from any and all claims, known and unknown, asserted and unasserted, that she has or may have had against Defendant or any of the Released Parties from the beginning of time through the date Plaintiff signs this Agreement. Such claims include, but are not limited to the Released Claims; the PAGA Claims; breaches of contract, whether written, oral or implied; violations of any public policy; tort claims, including but not limited to intentional infliction of emotional distress and negligent infliction of

emotional distress, defamation, misrepresentation, and fraud; retaliation claims; common law claims; any other claims for damages, costs, fees, or other expenses, including attorneys' fees; and any violations of the following statutes, laws, and regulations and amendments thereto: Title VII of the Civil Rights Act of 1964; the Civil Rights Act of 1991; Sections 1981 through 1988 of Title 42 of the United States Code; the Americans with Disabilities Act of 1990; the Employment Retirement Income Security Act of 1974; the Occupational Safety and Health Act; the Sarbanes-Oxley Act of 2002; the Family and Medical Leave Act of 1993; the Fair Labor Standards Act; the California Fair Employment and Housing Act – Cal. Gov't Code § 12900 *et seq.*; the California Family Rights Act – Cal. Gov't Code § 12945.2 *et seq.*; the California Unruh Civil Rights Act – Cal. Civ. Code § 51 *et seq.*; the California Whistleblower Protection Law – Cal. Lab. Code § 1102.5; the California Occupational Safety and Health Act – Cal. Lab. Code § 6300 *et seq.*; the PAGA; the California Business and Professions, Civil, Government and Labor Code; and any other federal, state, or local civil employment law, statute, regulation, or ordinance capable of being released by Plaintiff, excluding any claims that cannot be released as a matter of law. To the extent the foregoing release is a release to which Section 1542 of the California Civil Code or similar provisions of other applicable law may apply, Plaintiff expressly waives any and all rights and benefits conferred upon her by the provisions of Section 1542 of the California Civil Code or similar provisions of applicable law which are as follows:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

In giving this release, Plaintiff acknowledges that she has been fully compensated in connection with her employment by Defendant and the termination of her employment with Defendant.

4.8    <u>Release of Claims by Class Counsel</u>. Upon receipt of Class Counsel's Fees and Expenses, as ordered by the Court on final approval of the Class Settlement, Class Counsel shall fully and finally release Defendant and the Released Parties from any and all claims for attorneys' fees and

expenses arising from the Action and any claims released by Plaintiff, the PAGA Releasees and the Plaintiff Class Members, whether known and unknown, whether under federal, state and/or local law, statute, ordinance, regulation, common law, or other source of law. Release by Class Counsel include, but is not limited to, claims for attorneys' fees and expenses arising from or dependent on the California Civil Code, the California Code of Civil Procedure, the California Labor Code; the California Wage Orders; California Code of Regulations; California Business and Professions Code sections 17200, *et seq.*; California Labor Code sections 2698, *et seq.*; the California common law of contract and tort; and the Fair Labor Standards Act.

4.9    Labor Code Sections Do Not Apply To Releases. The Parties agree that California Labor Code sections 206.5 and 2804 do not invalidate any provision of this Agreement, because among other things, the claims and Released Claims and PAGA Claims are disputed and contested, and the Settlement was bargained for at arms' length and approved by the Court.

## V.    CONDITIONAL CLASS CERTIFICATION AND CLASS COUNSEL

5.1    Conditional Class Certification. For settlement purposes only, the Parties agree that the Class may be certified in the Action pursuant to Federal Rule of Civil Procedure 23. The Parties are not certifying any PAGA claims. In support of this Agreement, Plaintiff will request that the Court certify for settlement purposes the Class as to all non-PAGA claims that have been asserted or which are additionally sought to be asserted in the Action as part of this Agreement.

(a)    The Parties intend their Class Settlement to be contingent upon the preliminary and final approval of each and every term of this Agreement, without material or substantive modification, unless the Parties agree to such modification. If the Court does not so approve this Agreement, the Parties intend this Agreement to become null and void, and unenforceable, in which event the settlement terms set forth herein, including any modifications made with the consent of the Parties, and any action taken or to be taken in connection with this Agreement shall be terminated and shall become null and void and have no further force or effect, and the Class certified pursuant to this Agreement will be decertified for all purposes.

(b)    In the event that the Court does not grant approval of the PAGA Settlement, preliminary or final approval of the Class Settlement, or in the event that this Agreement shall

terminate or the Settlement embodied herein does not become effective for any reason, the Agreement and all negotiations, court orders and proceedings relating thereto shall be without prejudice to the rights of the Plaintiff, Class Members, PAGA Releasees and Defendant, stricken from the record, each of whom shall be restored to her/their/its respective positions existing prior to the execution of this Agreement, and evidence relating to the Agreement and all negotiations shall not be discoverable or admissible in the Action or any other litigation. Defendant does not waive, and instead expressly reserves, its rights to challenge the propriety of class certification for any purpose should the Court not grant preliminary or final approval of the Parties' Settlement.

(c)  If the Court grants approval of the preliminary approval of the Class Settlement but does not grant final approval of the Class Settlement and/or does not grant approval of the PAGA Settlement, then the Preliminary Approval Order shall be vacated in its entirety. In addition, this Agreement, the Preliminary Approval Order and any other document in any way relating to the Agreement or Settlement shall be stricken from the record and may not be relied upon, referred to or used in any way for any purpose in connection with any further proceedings in this or any related action, including class certification proceedings. Defendant does not waive, and instead expressly reserves, its rights to challenge the propriety of class certification for any purpose should the Court not grant final approval of the Class Settlement and/or does not grant approval of the PAGA Settlement.

5.2  <u>Appointment of Class Counsel</u>. For purposes of this Agreement and subject to the Court's approval, the Parties hereby stipulate to the appointment of Class Counsel as counsel for the Class and the effectuation of the Class Settlement pursuant to this Agreement.

**VI.  <u>NOTICE AND SETTLEMENT ADMINISTRATION PROCESS</u>**

6.1  <u>Identification of Class Members</u>. Within thirty (30) days after entry of the Preliminary Approval Order, Defendant shall provide to the Settlement Administrator a list of Class Members that includes: (1) the names, last known addresses, last known personal telephone numbers (if known), and social security numbers of each Class Member; (2) the total number of Pay Periods Worked by each Class Member; (3) the total number of PAGA Pay Periods Worked by each PAGA Releasee; and (4) such other information that the Settlement Administrator requires to identify Class Members.

Defendant agrees to provide the list in an electronic format reasonably acceptable to the Settlement Administrator. The Settlement Administrator will keep the list confidential, use it only for the purposes described herein, and return it to Defendant upon completion of the settlement administration process.

6.2     <u>Individual Settlement Payment Calculation</u>. Based on the information in the Class Member list and the formula set forth in Paragraph 3.1(e) above, the Settlement Administrator shall promptly calculate the estimated share of PAGA Payment to every PAGA Releasee and an estimated Individual Settlement Payment for every Class Member, to be included in the individualized Class Notice to be sent to that Class Member, and shall prepare and mail a spreadsheet setting forth those calculations to Defense Counsel no fewer than five (5) days before mailing the Class Notice to Class Members. The Class Notice will inform each Class Member of his/her right to do nothing, dispute the number of Pay Periods Worked and/or PAGA Pay Periods Worked, opt out of the non-PAGA payment and release of non-PAGA claims or to object to the non-PAGA payment and release of non-PAGA claims. It will also inform Class Members that if they first request exclusion from, and opt out of, the Class Settlement and then object, the objections would not be considered valid and that if the Class Members object and then request exclusion from, and opt out of the Class Settlement, the Class Members would be deemed to have waived their objection.

6.3     <u>Notice Procedure</u>. Within twenty (20) days after receipt of the list of Class Members described in Paragraph 6.1 above, the Settlement Administrator shall mail the Class Notice to each Class Member whose address information is known. Prior to this mailing, the Settlement Administrator shall conduct a National Change of Address check as to each address. The mailing shall be sent by first-class U.S. Mail, postage pre-paid. The date that the Settlement Administrator mails the Class Notice is the Mailing Date. It shall be conclusively presumed that each and every Class Member whose Class Notice are not returned to the Settlement Administrator as undeliverable within thirty (30) calendar days after the Mailing Date has received the Class Notice.

(a)     The Settlement Administrator shall promptly re-mail any Class Notice returned by the Post Office with a forwarding address. It shall be conclusively presumed that those Class Members whose re-mailed Class Notice are not returned to the Settlement Administrator as undeliverable within thirty (30) days after re-mailing has received the Class Notice.

(b) The Settlement Administrator shall conduct one additional address search/check via an appropriate skip tracing search for any Class Notice returned by the Post Office as "undeliverable." If an updated address is found, the Settlement Administrator shall promptly re-mail the Class Notice to that address one time.

(c) Class Counsel shall provide to the Court, at or before the Final Approval Hearing, a declaration from the Settlement Administrator confirming that the Class Notices were mailed to all Class Members as required by this Agreement, as well as any additional information Class Counsel and Defense Counsel both deem appropriate to provide to the Court.

(d) The Class Notice shall state the formula to be used in calculating Individual Settlement Payments and each PAGA Releasee's share of the PAGA Payment as calculated by the Settlement Administrator. Each Plaintiff Class Member and each PAGA Releasee may seek to challenge his or her Pay Periods Worked and/or PAGA Pay Periods Worked, which are used to calculate his or her estimated Individual Settlement Payment and his or share estimated share of the PAGA Payment respectively, set forth in his or her Class Notice. Such challenges must: (i) be in writing; (ii) state the full name of the Plaintiff Class Member/PAGA Releasee seeking the challenge; (iii) include a statement that the Plaintiff Class Member/PAGA Releasee is seeking to challenge his or her Pay Periods Worked and/or PAGA Pay Periods Worked, which are used to calculate the estimated Individual Settlement Payment and the estimated share of the PAGA Payment, set forth in the Class Notice; (iv) state the number of Pay Periods Worked and/or PAGA Pay Periods Worked the Plaintiff Class Member/PAGA Releasee believes he or she has worked; (v) signed by the Plaintiff Class Member/PAGA Releasee seeking the challenge; and (v) mailed to the Settlement Administrator with a postmark date on or before the expiration of the Notice Period. A Plaintiff Class Member and/or PAGA Releasee challenging his or her Pay Periods Worked and/or PAGA Pay Periods Worked, used to calculate his or her Individual Settlement Payment and his or her portion of the PAGA Payment, may produce documentary evidence to the Settlement Administrator for consideration and/or challenge. The Settlement Administrator will resolve the challenge and make a final and binding determination without hearing or right of appeal. The personnel records, including payroll records, of Defendant shall be considered by the Settlement Administrator as the presumptive best evidence of

the number of Pay Periods Worked and PAGA Pay Periods Worked. Such challenges must be mailed to the Settlement Administrator with a postmark date on or before the expiration of the Notice Period.

(e)     The Class Notice shall explain that if a Class Member does not opt out of the Class Settlement, such Class Member will receive the Individual Settlement Payment pursuant to the terms of this Agreement. The Parties intend that reasonable means be used to maximize the probability that all Class Members shall receive the Class Notice.

(f)     Within ten (10) days after the close of the Notice Period, the Settlement Administrator will provide Defense Counsel with a report by name and last four digits of Social Security Number listing the amount of all Individual Settlement Payments to be made to the Plaintiff Class Members and the amount of all PAGA Payments to be made to the PAGA Releasees, a list by name of all Class Members who timely opted out under Paragraph 6.5, below, and a list by name of all Plaintiff Class Members who timely objected under Paragraph 6.7 below. Within that same time period, the Settlement Administrator will provide to Class Counsel a report stating the total number of Plaintiff Class Members, the total number of Class Members who timely opted out under Paragraph 6.5, below and the total number of Plaintiff Class Members who timely objected under Paragraph 6.7 below.

6.4     Class Settlement Payment. Any Class Member who wishes to become a Plaintiff Class Member and receive an Individual Settlement Payment must not opt out of the Class.

6.5     Opt-Out Procedure. Any Class Member who wishes to be excluded from the Class Settlement may seek exclusion under this paragraph. However, no PAGA Releasee can seek exclusion from the PAGA portion of the Settlement. Unless a Class Member timely and properly opts out of the Class Settlement described in this Agreement, he/she shall be a Plaintiff Class Member and shall be bound by all the terms and conditions of this Agreement, and shall also be bound by the Court's Order enjoining all Plaintiff Class Members from pursuing, or seeking to reopen, any of the Settled Claims against the Released Parties. A Class Member will not be entitled to opt out of the Class Settlement established by this Agreement unless he or she makes an Opt-Out Request. An Opt-Out Request must be: (i) made in writing; (ii) state the full name of the Class Member seeking exclusion; (iii) include a statement that the Class Member seeking exclusion from the Settlement requests exclusion from the

Class and does not wish to participate in the Settlement; (iv) signed by the Class Member seeking exclusion from the Settlement; and (v) mailed to the Settlement Administrator with a postmark date on or before the expiration of the Notice Period.

The Opt-Out Request must be completed by the Class Member seeking exclusion from the Class Settlement. No other person may opt out for a Class Member. Any Class Member who properly opts out of the Class Settlement using this procedure will not be entitled to an Individual Settlement Payment and will not be bound by the Settlement or have any right to object, appeal or comment thereon, except that a Class Member who is also a PAGA Releasee will be bound by the release of PAGA Claims set forth in this Agreement and will be issued the PAGA Releasee's share of the PAGA Payment.

(a)     PAGA Releasees will not have the opportunity to opt out or object to the PAGA Payment and/or release of PAGA Claims although the PAGA Payment will be subject to Court approval.

(b)     Upon receipt of any Opt-Out Request within the Notice Period, the Settlement Administrator shall review the request to verify the information contained therein, and to confirm that the request complies with the requirements of this Agreement.

(c)     Any Class Member who fails to submit a timely, complete and valid Opt-Out Request shall be barred from opting out of this Agreement or the Settlement. The Settlement Administrator shall not review or consider any Opt-Out Request postmarked after the end of the Notice Period. It shall be conclusively presumed that, if an Opt-Out Request is not postmarked on or, before the end of the Notice Period or is not received by the Settlement Administrator, the Class Member did not make the request in a timely or valid manner. Under no circumstances shall the Settlement Administrator have the authority to extend the deadline for Class Members to submit an Opt-Out Request.

(d)     The Settlement Administrator shall give Class Counsel and Defense Counsel a weekly update on the number of Opt-Out Request it receives that week.

6.6     <u>Excessive Opt-Out Requests</u>. If twenty (20) or more Class Members timely opt out of the Class Settlement, Defendant shall have the sole and absolute discretion to rescind/void the

Settlement within twenty (20) days after receiving from the Settlement Administrator the final list of opt-outs. Defendant agrees to meet and confer in good faith with Class Counsel before rescinding or voiding the Settlement. In the event that Defendant elects to rescind/void the Settlement, Defendant shall provide written notice of such rescission to Class Counsel. Such rescission shall have the same effect as a termination of this Agreement for failure to satisfy a condition of settlement, and the Agreement shall become null and void and have no further force or effect, and the Class certified pursuant to this Agreement will be decertified for all purposes. If Defendant chooses to terminate this Agreement under this provision, it shall be responsible to pay the Settlement Administrator's fees and costs incurred up to the date of nullification.

6.7     <u>Objections to Class Settlement</u>. Any Plaintiff Class Member may object to the Class Settlement. Plaintiff Class Members who wish to object must send their written objections to the Court only by the close of the Notice Period. All objections will be scanned into the electronic case docket and the Parties will receive electronic notices of filing. An objection must state the specific grounds on which it is being made and all supporting facts. The Class Notice will state in substance:

> Any member of the settlement Class who has not opted out can ask the Court to deny approval of the settlement by filing an objection. You can't ask the Court to order a larger settlement; the Court can only approve or deny the settlement. If the Court denies approval, no additional settlement payments will be sent out and the lawsuit will continue. If that is what you want to happen, you must object.

> You may object to the proposed settlement in writing, except you may not object to the PAGA Payment and release of PAGA Claims. You may also appear at the Final Approval Hearing, either in person or through your attorney. If you appear through your own attorney, you are responsible for paying that attorney. All written objections and supporting papers must (a) clearly identify the case and number (*Morrison v. American National Red Cross*, Case No.: 4:19-CV-02855-HSG), (b) be submitted to the Court either by mailing them to the Class Action Clerk, United States District Court for the Northern District of California, 1301 Clay Street, Suite 400 S, Oakland, CA 94612, or by filing them in person at any location of the United States District Court for the Northern District of California, and (c) be filed or postmarked on or before [insert date of the close of the Notice Period]. Class Members who fail to timely mail or file such a written statement of objection shall be foreclosed from making any objection to this Settlement.

Class Members who fail to timely file and serve such a written statement of objection pursuant to the procedures set forth in this Paragraph shall be foreclosed from making any objection to this

Settlement. Only Plaintiff Class Members may object to the Class Settlement. If an objector intends to appear at the Final Approval Hearing, either in person or through an attorney of his or her choice, he or she must also serve and file with his or her objection, a Notice of Intention to Appear. This Paragraph shall be strictly applied and enforced. Failure to comply with its terms shall render an objection ineffective and waived.

6.8 <u>Funding and Distribution of Settlement</u>. Within twenty (20) calendar days after the Effective Date of the Settlement, Defendant shall transfer to the Settlement Administrator an amount equal to the Gross Settlement Fund and the Employer's Taxes (to be calculated by the Settlement Administrator). The delivery of the Gross Settlement Fund to the Settlement Administrator shall constitute full and complete discharge of the entire obligation of Defendant under this Agreement. Once Defendant has made such payments, it will be deemed to have satisfied all terms and conditions under this Agreement, shall be entitled to all protections afforded to Defendant under this Agreement, and shall have no further obligations under the terms of the Agreement regardless of what occurs with respect to those sums. Additionally, no Released Party shall have any further obligation or liability to the Plaintiff, PAGA Releases or Class Members under this Agreement.

(a) The distribution of Individual Settlement Payments to Plaintiff Class Members and the distribution of the PAGA Payments shall occur on the Settlement Proceeds Distribution Deadline. The Settlement Administrator shall be deemed to have timely distributed all such payments to the Plaintiff Class Members, the PAGA Releasees and the LWDA if it places in the mail Individual Settlement Payments for all Plaintiff Class Members and the PAGA payments to the PAGA Releasees and the LWDA by the Settlement Proceeds Distribution Deadline or by the deadlines set by the Court. No person shall have any claim against the Settlement Administrator, Defendant, Class Counsel, Defense Counsel, or any other agent designated by Plaintiff or Defendant based upon the distribution of Individual Settlement Payments and the PAGA Payments made substantially in accordance with this Agreement or further orders of the Court.

(b) Any Individual Settlement Payment checks and PAGA Payment Checks that are not claimed or not negotiated within 90 days after distribution by the Settlement Administrator shall be void. Any funds not distributed after the expiration of the settlement checks shall be paid to

the court-approved *cy pres* beneficiary of the Settlement. The Parties agree to propose Bet Tzedek as the *cy pres* beneficiary.

(c)     Except as otherwise stated in this Agreement, the Settlement Administrator's distribution of Class Counsel's Fees and Expenses, the Administrative Expenses and the Incentive Award from the Gross Settlement Fund shall occur on the Settlement Proceeds Distribution Deadline. Upon such payment, Defendant, the Released Parties, Defense Counsel, and the Settlement Administrator shall have no further liability or responsibility to Plaintiff, Class Counsel, the Settlement Administrator or to any vendors or third parties employed by Plaintiff or Class Counsel.

(d)     Defendant shall not be obligated to make any payments contemplated by this Agreement until the conditions set forth in this Agreement occur.

6.9     <u>CAFA Notice</u>. Pursuant to the requirements of the Class Action Fairness Act ("CAFA"), within ten (10) days after this Settlement is filed in Court as part of Plaintiff's Motion for Preliminary Approval pursuant to Paragraph 7.3, below, Defendant will serve the United States Attorney General and appropriate state officials with a notice of the Settlement. The notice shall comply with the requirements of the CAFA.

## VII.     **COURT APPROVAL AND EFFECTIVE DATES**

7.1     <u>Binding Effect of Agreement on Class Members</u>. Upon the Court's final approval of the Class Settlement and entry of the Judgment, all Plaintiff Class Members shall be bound by this Agreement, and the Action and the Settled Claims shall be dismissed with prejudice and released as against the Released Parties to the greatest extent permitted by law. In addition, unless a Class Member effectively opts out of the Settlement, he or she shall be bound by the Court's Order enjoining all Plaintiff Class Members from pursuing or seeking to reopen Settled Claims against the Released Parties to the greatest extent permitted by law. Upon Court approval of the PAGA Settlement and entry of the Judgment, all PAGA Releasees shall be bound by the release of the PAGA Claims and the PAGA Claims shall be dismissed with prejudice and released as against all the Released Parties to the greatest extent permitted by law.

7.2     <u>Amendment of the Complaint</u>. Upon execution of this Agreement, and upon expiration of the deadline for the LWDA to provide notice of its intent to investigate the claims alleged in

Plaintiff's February 18, 2020 Supplemental PAGA Notice, Plaintiff shall promptly move to amend the First Amended Class Action Complaint for settlement purposes to add the following causes of action: (1) failure to authorize and permit paid off-duty rest breaks and pay rest break premium pay in violation of California Labor Code § 226.7, § 12 of applicable IWC Wage Order and corresponding California Code of Regulations; (2) failure to provide off-duty meal periods or pay meal break premium pay in violation of California Labor Code §§ 512, 226.7, § 11 of applicable IWC Wage Order and corresponding California Code of Regulations; (3) failure to pay all wages owed in violation of California Labor Code §§ 510, 1194, 1197, 1198, §§ 3-4 of applicable IWC Wage Order and corresponding California Code of Regulations; (4) failure to issue accurate itemized wage statements and maintain payroll records in violation of California Labor Code §§ 226(a), 1174(d) and 1174.5, § 7 of applicable IWC Wage Order No. 4-2001 and corresponding California Code of Regulations; and (5) failure to pay all wages due upon discharge in violation of California Labor Code §§ 201-203. Additionally, in the Second Amended Class Action Complaint, Plaintiff shall expand the existing UCL claim as well as expand the existing PAGA claim to seek PAGA penalties based on the new causes of action in the Second Amended Complaint. The Second Amended Class Action Complaint shall be in a form substantially similar to the Second Amended Class Action Complaint attached as **Exhibit 2**.

       7.3   <u>Preliminary Approval Order</u>. Upon execution of this Agreement, Plaintiff shall file a motion in the Action requesting that the Court enter a Preliminary Approval Order in a form substantially similar to the preliminary approval order attached as **Exhibit 3** as follows:

       (a)   Preliminarily approving the Class Settlement;

       (b)   Preliminarily approving the appointment of Plaintiff as representative of the Class for settlement purposes only;

       (c)   Preliminarily approving the appointment of Class Counsel as counsel for the Class for settlement purposes only;

       (d)   Appointing and approving the Settlement Administrator as chosen by the Parties and approved by the Court, to administer the claims and settlement payment procedures required by this Agreement;

(e)     Approving the form of the Class Notice, and requiring that individualized Class Notice be sent to Class Members;

(f)     Approving the plan for the provision of notice to Class Members, as stated herein and in the Class Notice;

(g)     Scheduling the Final Approval Hearing for consideration of class certification for settlement purposes and final approval of this Agreement;

(h)     Approving the procedure for Class Members to challenge the Pay Periods Worked and PAGA Pay Periods Worked, which are used to calculate the estimated Individual Settlement Payment and the estimated share of the PAGA Payment, set forth in the Class Notice and the date after which no Class Member shall be allowed to submit a challenge;

(i)     Approving the procedure for Class Members to opt out of the Class Settlement and the date after which no Class Member shall be allowed to submit a request to opt out; and

(j)     Approving the procedure for Plaintiff Class Members to object to the Class Settlement and the date after which no Class Member shall be allowed to object.

Plaintiff agrees to provide her motion for preliminary approval of the Class Settlement to Defendant for review no later than seven (7) days before the filing date.

7.4     Should the LWDA provide notice of intent to investigate the alleged violations set forth in Plaintiff's February 18, 2020 Supplemental LWDA Letter, this Agreement is deemed null and void.

7.5     <u>Non-Interference With Settlement Procedure</u>. The Parties and their counsel agree that they shall not seek to solicit or otherwise encourage Class Members to submit an Opt-Out Request or an objection to the Settlement or to appeal from the Preliminary Approval Order, Final Approval Order or Judgment.

7.6     <u>Final Approval Order</u>. Plaintiff (or Plaintiff jointly with Defendant) will request that the Court enter, after the Final Approval Hearing approving the PAGA Settlement and finally approving the Class Settlement, a Final Approval Order in a form substantially similar to the final approval order attached as **Exhibit 4**. Plaintiff (or Plaintiff jointly with Defendant) will request that the Final Approval Order certify the Class for settlement purposes; approve the PAGA Settlement, including the PAGA Payment, distribution plan of the PAGA Payment, and the release of the PAGA

Claims set forth in this Agreement; find that this Agreement is fair, just, equitable, reasonable, adequate and in the best interests of the Class; permanently enjoin all Plaintiff Class Members from pursuing or seeking to reopen Settled Claims against the Released Parties; permanently enjoin all PAGA Releasees from pursuing or seeking to reopen the PAGA Claims against the Released Parties; dismiss the PAGA Claims asserted in the Action with prejudice as to Plaintiff and all PAGA Releasees; dismiss all Settled Claims asserted in the Action with prejudice as to Plaintiff and all Plaintiff Class Members; and require the Parties to carry out the provisions of this Agreement. Plaintiff agrees to provide her motion for approval of the PAGA Settlement and final approval of the Class Settlement to Defendant for review no later than seven (7) days before the filing date.

7.7    Entry of Judgment. Plaintiff (or Plaintiff jointly with Defendant) will request that the Court enter, after the Final Approval Hearing, a Judgment in the form substantially similar to the Judgment attached as **Exhibit 5**.

7.8    Effective Date of Agreement. The "Effective Date" of the of this Agreement shall be the latter of the last date by which all appeals of the Final Approval Order and/or Judgment could be filed or when actual appeals are exhausted such that the Final Approval Order and/or Judgment becomes final. The Effective Date of this Agreement is conditioned upon all of the following occurring:

(a)    This Agreement has been signed by the Parties and Class Counsel;

(b)    The Court has entered an Order granting Plaintiff leave to file a Second Amended Complaint substantially similar to the Second Amended Complaint attached hereto as **Exhibit 2** and the Second Amended Complaint is filed

(c)    The Court has entered a Preliminary Approval Order substantially similar to the Preliminary Approval Order attached hereto as **Exhibit 3**;

(d)    The Class Notice has been mailed to the Class Members as ordered by the Court in this Action;

(e)    The Court has entered a Final Approval Order, approving the Class Settlement and the PAGA Settlement, in a form substantially similar to the Final Approval Order attached hereto as **Exhibit 4**; and

(f)     The Court has entered a Judgment dismissing the Action in a form substantially similar to the Judgment attached hereto as **Exhibit 5**.

7.9     <u>Automatic Voiding of Agreement if Settlement Not Finalized</u>. If for any reason the Settlement set forth in this Agreement does not become final, the Settlement shall be null and void and all orders, judgment, and dismissal entered pursuant to this Agreement shall be vacated, and the Parties will be returned to the status quo prior to entering this Agreement with respect to the Action, as if the Parties had never entered into this Agreement, and the settlement class certified pursuant to this Agreement will be decertified for all purposes. In addition, in such event, the Agreement (including all exhibits, drafts and related documents, papers, and communications) and all negotiations, court orders and proceedings relating thereto shall be without prejudice to the rights of any and all Parties hereto, and evidence relating to the Agreement (including all exhibits, drafts and related documents, papers, and communications) and all negotiations shall not be admissible or discoverable in the Action or otherwise.

7.10     <u>Confidentiality and Non-Disparagement and Returning Documents</u>. The Parties agree that the terms of the Agreement shall be confidential until the filing of Plaintiff's Motion for Preliminary Approval pursuant to Paragraph 7.3. This confidentiality agreement shall not prevent any counsel from conferring with and advising clients who have retained them, provided that the clients agree to abide by this temporary confidentiality agreement.

Plaintiff agrees that she shall not promote, or publicize the filing of this Action, the Parties' Settlement, this Agreement and its terms, or the negotiations leading to this Agreement with anyone other than the Court. Plaintiff agrees that she shall not discuss this Action or this Settlement to anyone except she may disclose the terms of the settlement: (i) to her spouse, lawyer(s) and/or accountant(s); (ii) for the purpose of reporting to any tax agency or authority, whether federal, state or local; (iii) by order of any court of competent jurisdiction following notice to all parties; or (iv) as required by law. Plaintiff agrees that she may disclose the terms of the Settlement to her spouse, but only so long as she first obtains her spouse's express agreement to maintain that information in confidence.

(a)     Class Counsel and Plaintiff agree that they will not issue any press releases, engage in any communications, or take any other action that would directly or indirectly provide the

press or media or any litigation reporting service with information about this Action, this Agreement, or the Parties' Settlement or would otherwise enable or allow the press or other media or any litigation reporting service to learn or obtain such information. Plaintiff and Class Counsel agree not to post any information concerning this Settlement on the internet or social media, including Facebook, Twitter, Instagram and Snapchat. Class counsel and Plaintiff further agree that they will not post any information regarding this Agreement or the Settlement on their internet websites or take any such action that would cause or allow such information to be posted on any other internet website or on the web.

(b)     Plaintiff shall direct all inquiries about Plaintiff's relationship with Defendant to The Work Number at 1-800-367-5690 and use the Employer Code 11539. Defendant agrees that if it receives a request for reference for Plaintiff, it will confirm only dates of employment, provided that all requestors for reference must contact The Work Number at 1-800-367-5690 and use the Employer Code 11539. Any income information will be provided if Plaintiff generates a Salary Key through The Work Number and provides that Salary Key to requestors to use when contacting The Work Number.

7.11   <u>Invalidation of Agreement for Failure to Satisfy Conditions</u>. The terms and provisions of this Agreement are not recitals, but are deemed to constitute contractual terms. In the event that any of the material terms or conditions set forth in this Agreement are not fully and completely satisfied, this Agreement shall terminate and all terms of the Agreement including, but not limited to, the conditional certification of the Class, the payment of Individual Settlement Amounts to Plaintiff Class Members, the payment of attorneys' fees and costs to Class Counsel, the Incentive Award to Plaintiff, and the payment of the PAGA Payment shall be null and void. In such event, nothing in this Agreement shall be used, construed or admissible as evidence by or against any Party or Released Party as a determination, admission, or concession of any issue of law or fact in this Action, or in any other proceeding for any purpose; and the Parties do not waive, and instead expressly reserve, their respective rights to prosecute and defend this Action as if this Agreement never existed. In addition, notwithstanding the generality of the foregoing, if this Agreement is terminated for failure to satisfy any of the terms or conditions of this Agreement, Defendant shall not be obligated to create or maintain any type of settlement fund, and shall not be obligated to pay any amount in the Gross Settlement Fund

to any Class Member and/or PAGA Releasee, to Class Counsel, to the Settlement Administrator, to the State of California or to the Plaintiff. In event the Court has approved the PAGA Payment and release of the PAGA Claims set forth in this Agreement and the PAGA Payment has been issued by the Settlement Administrator, the release of the PAGA Claims shall be binding.

## VIII. <u>GENERAL PROVISIONS</u>

8.1 <u>Notices</u>. All notices, requests, demands and other communications required or permitted to be given pursuant to this Agreement shall be in writing, and shall be delivered personally or by first class mail to the Settlement Administrator appointed by the Court and to counsel at their respective addresses as set forth below:

**CLASS COUNSEL**

JULIAN HAMMOND
jhammond@hammondlawpc.com
POLINA BRANDLER
pbrandler@hammondlawpc.com
ARI CHERNIAK
acherniak@hammondlaw.com
HAMMONDLAW, P.C.
1829 Reisterstown Rd. Suite 410
Baltimore, MD 2120

**DEFENSE COUNSEL**

LISA LIN GARCIA
llgarcia@littler.com
LITTLER MENDELSON, P.C.
333 Bush Street, 34th Floor
San Francisco, CA 94104

8.2 <u>Modification in Writing</u>. This Agreement may be altered, amended, modified or waived, in whole or in part, only in a writing signed by all signatories to this Agreement. This Agreement may not be amended, altered, modified or waived, in whole or in part, orally.

8.3 <u>Ongoing Cooperation</u>. The Parties shall support the Settlement, execute all documents and take such steps as are reasonably necessary to effectuate the Settlement and the terms of this Agreement. Neither the Parties nor their counsel shall directly or indirectly encourage Class Members to opt out or object to the Settlement.

8.4     Binding Agreement. This Agreement shall be binding and shall inure to the benefit of the Parties and their respective successors, assigns, executors, administrators, heirs and legal representatives.

8.5     Entire Agreement. This Agreement constitutes the full, complete and entire understanding, agreement and arrangement between Plaintiff, the PAGA Releasees and the Class Members on the one hand, and Defendant on the other hand, with respect to the Settlement of the Action, the Settled Claims and the PAGA Claims against the Released Parties. This Settlement Agreement supersedes any and all prior oral or written understandings, agreements and arrangements between the Parties with respect to the Settlement of the Action, the Settled Claims and the PAGA Claims against the Released Persons. Except for those set forth expressly in this Agreement, there are no other agreements, covenants, promises, representations or arrangements between the Parties with respect to the Settlement of the Action, the Settled Claims and the PAGA Claims against the Released Parties. The Parties explicitly recognize California Civil Code section 1625 and California Code of Civil Procedure section 1856(a), which provide that a written agreement is to be construed according to its terms, and may not be varied or contradicted by extrinsic evidence, and agree that no such extrinsic oral or written representations or terms shall modify, vary, or contradict the terms of this Agreement.

8.6     Multiple Originals/Execution in Counterpart. This Agreement may be signed in one or more counterparts. All executed copies of this Agreement, and photocopies thereof (including facsimile and PDF copies of the signature pages), shall have the same force and effect and shall be as legally binding and enforceable as the original.

8.7     Captions. The captions and section numbers in this Agreement are inserted for the reader's convenience, and in no way define, limit, construe, or describe the scope or intent of the provisions of this Agreement.

8.8     Governing Law. This Agreement shall be interpreted, construed, enforced, and administered in accordance with the laws of the State of California.

8.9　_Reservation of Jurisdiction_. Notwithstanding the dismissal of this Action and entry of Judgment, the Court shall retain exclusive jurisdiction for purposes of interpreting and enforcing the terms of this Agreement.

8.10　_Mutual Preparation_. The Parties have had a full opportunity to negotiate the terms and conditions of this Agreement. Accordingly, this Agreement shall not be construed more strictly against one party than another merely by virtue of the fact that it may have been prepared by counsel for one of the Parties, it being recognized that, because of the arms-length negotiations between the Parties, all Parties have contributed to the preparation of this Agreement.

8.11　_Severability_. The Parties to this Agreement agree, covenant, and represent that each and every provision of this Agreement shall be deemed to be contractual, and that they shall not be treated as mere recitals at any time or for any purpose. Therefore, the Parties further agree, covenant, and represent that each and every provision of this Agreement shall be considered severable, except for the release provisions of Section IV of this Agreement. If a court of competent jurisdiction finds the release provisions of Section IV of this Agreement to be unenforceable or invalid as against a Class Member, then this Agreement shall become voidable and the payments made pursuant to this Agreement to that Class Member shall be returned to Defendant by that Class Member as to whom the release provisions have been found unenforceable or invalid. If a court of competent jurisdiction finds any provision, other than the release provisions of Section IV, or part thereof to be invalid or unenforceable for any reason, that provision, or part thereof, shall be severed from the Agreement, and all of the remaining provisions of this Agreement shall remain in full force and effect.

8.12　_Warranties and Representations_. With respect to themselves, each of the Parties to this Agreement and or their agent or counsel represents, covenants and warrants that (a) they have full power and authority to enter into and consummate all transactions contemplated by this Agreement and have duly authorized the execution, delivery and performance of this Agreement; and (b) the person executing this Agreement has the full right, power and authority to enter into this Agreement on behalf of the party for whom he/she has executed this Agreement, and the full right, power and authority to execute any and all necessary instruments in connection herewith, and to fully bind such party to the terms and obligations of this Agreement.

8.13 <u>Representation by Counsel</u>. The Parties acknowledge that they have been represented by counsel throughout all negotiations that preceded the execution of this Agreement, and that this Agreement has been executed with the consent and advice of counsel. Further, Plaintiff and Class Counsel warrant and represent that there are no liens on the Agreement, and that Defendant may distribute funds to the PAGA Releasees, the Plaintiff Class Members, Class Counsel, and Plaintiff as provided by this Agreement.

8.14 <u>Action to Enforce Agreement</u>. In any suit or court action to enforce the terms of this Agreement, the prevailing party shall be entitled to recover her or its attorneys' fees and costs.

8.15 <u>Authorization by Plaintiff</u>. Plaintiff authorizes Class Counsel to sign this Agreement and further agrees not to request to be excluded from the Class and not to object to any terms of this Agreement. Any such request for exclusion or objection shall therefore be void and of no force or effect.

**IN WITNESS WHEREOF,** the Parties and their counsel have executed this Agreement on the date below their signatures or the signature of their representatives. The date of the Agreement shall be the date of the latest signature.

**[REMAINDER OF THE PAGE INTENTIONALLY LEFT BLANK]**

**IT IS SO STIPULATED AND AGREED:**

5/29/2020

Dated: May _____, 2020

*La Toiya Morrison*
_____
La Toiya Morrison
Plaintiff

Dated: May _____, 2020

**DEFENDANT AMERICAN NATIONAL RED CROSS**

By: _____
Chevanniese Smith
Senior Counsel

June 1, 2020

Dated: ~~May _____, 2020~~

_____
Julian Hammond
Counsel for Plaintiff and the Class

Dated: May _____, 2020

_____
Lisa Lin Garcia
Attorneys for Defendant

4847-5859-1415.6 103632.1001

1     IT IS SO STIPULATED AND AGREED:

2                    5/29/2020

3   Dated:     May _____, 2020

4                                          _La Toiya Morrison_____
                                           La Toiya Morrison
                                           Plaintiff

5

                   June 2, 2020
6   Dated:     ~~May ------, 2020~~       **DEFENDANT AMERICAN NATIONAL**
                                          **RED CROSS**
7

8                                          By: _____
                                              Chevanniese Smith
9                                             Senior Counsel

10

11  Dated:     May _____, 2020

12                                         _____
                                           Julian Hammond
13                                         Counsel for Plaintiff and the Class

                   June 2, 2020
14  Dated:     ~~May ------, 2020~~

15                                         _____

16                                         Lisa Lin Garcia
                                           Attorneys for Defendant

17

18

19

20  4847-5859-1415.6 103632.1001

21

22

23

24

25

26

27

28

**EXHIBIT 1**

**UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LA TOIYA MORRISON, individually and on behalf of all others similarly situated, | Case No. 4:19-CV-02855-HSG |
| Plaintiff, | **NOTICE OF CLASS ACTION SETTLEMENT** |
| v. | |
| AMERICAN NATIONAL RED CROSS, a Congressional Charter Corporation, | |
| Defendant. | |

<<FIRST AND LAST NAME>>
<<ADDRESS>>
<<CITY AND ZIP CODE>>

To:     All individuals who are or were employed by the American National Red Cross as Training Services instructor (formerly known as Preparedness And Health And Safety Services instructor) and/or Nurse Assistant Training instructor and who have taught courses to Red Cross clients in California at any time from April 24, 2015 through and including [INSERT DATE THE PRELIMINARY APPROVAL ORDER IS ENTERED BY THE COURT] ("Class Members").

**THIS LEGAL NOTICE MAY AFFECT YOUR RIGHTS WHETHER YOU ACT OR NOT, PLEASE READ IT CAREFULLY**

| **Why should you read this notice?** |
|---|

The Court has granted preliminary approval of a proposed class action settlement (the "Settlement") in *Morrison v. American National Red Cross*, United States District Court for the Northern District of California, Case No. 4:19-CV-02855-HSG (the "Action"). Your rights may be affected by the Settlement, and it is important that you read this notice carefully.

You may be entitled to money from this Settlement. The American National Red Cross's records show that you were employed as a Training Services instructor (formerly known as Preparedness And Health And Safety Services instructor) and/or Nurse Assistant Training instructor and taught courses to Red Cross clients in California during the period of April 24, 2015 through [INSERT DATE THE PRELIMINARY APPROVAL ORDER IS ENTERED BY THE COURT] (the "Class Period" or the "Settlement Period"). The Court ordered that this Notice be sent to you because you may be entitled to money under the Settlement and because the Settlement affects your legal rights.

The purpose of this notice is to provide you with a brief description of the Action, to inform you of the terms of the Settlement, to describe your rights in connection with the Settlement, and to explain what steps you may take to participate in, object to, or exclude yourself from the Settlement. If you do not exclude yourself from the Settlement and the Court finally approves the Settlement, you will be bound by the terms of the Settlement and any final judgment.

Plaintiff La Toiya Morrison ("Plaintiff" or "Named Plaintiff") maintains this lawsuit against Defendant American National Red Cross ("Defendant"), asserting claims on behalf of all Class Members. Plaintiff is known as the "Class Representative," and her attorneys, who also represent the interests of all Class Members, are known as "Class Counsel."

This Notice is to inform you about the settlement of a pending class action lawsuit and your rights under the terms of the settlement.

In the Action, Plaintiff alleges that Defendant violated applicable provisions of the Labor Code, the Business and Professions Code and the California Wage Orders with respect to the Class Members by doing all of the following: (1) failing to reimburse business expenses; (2) failing to authorize and permit paid rest breaks or pay missed rest period premiums; (3) failing to provide compliant meal periods or pay missed meal period premiums; (4) failing to pay all wages owed (including minimum wage, regular wages and overtime wages); (5) failing to issue accurate itemized wage statements and maintain accurate payroll records; (6) failing to pay compensation due upon termination; (7) violating unfair competition laws under California Business and Professions Code section 17200 *et seq.*; and (8) is liable for civil penalties under the Private Attorneys General Act of 2004 ("PAGA").

Defendant denies all allegations of wrongdoing and maintains that it complied at all times with applicable laws, rules, and regulations at issue in this litigation. Defendant denies that it owes Class Members any wages, restitution, penalties, or other damages. Accordingly, the Settlement constitutes a compromise of disputed claims and should not be construed as an admission of liability on the part of Defendant, who expressly denies all liability.

The Court has not ruled on the merits of Plaintiff's claims. However, to avoid additional expense, inconvenience, and interference with business operations, the parties concluded that it is in the interest of Class Members and Defendant to settle the Action on the terms summarized in this Notice. Defendant provided relevant information to Class Counsel and the Settlement was reached after mediation and arm's-length negotiations between the parties.

The Class Representative and Class Counsel support the Settlement. Among the reasons for support are the defenses to liability potentially available to Defendant, the risk of denial of class certification, the inherent risks of trial on the merits, and the delays and uncertainties associated with ongoing litigation.

If you are still employed by the Red Cross, your decision about whether to participate in the Settlement will not affect your employment. California law and Defendant's policies strictly prohibit unlawful retaliation. The American National Red Cross will not take any adverse employment action against or otherwise target, retaliate, or discriminate against any Class Member because of his or her decision to either participate or not participate in the Settlement.

**What are the Terms of the Proposed Settlement?**

On [INSERT DATE THE PRELIMINARY APPROVAL ORDER IS ENTERED BY THE COURT], the Court preliminarily certified a class – for settlement purposes only – of all individuals who are or were employed by the American National Red Cross as Training Services instructors (formerly known as Preparedness And Health And Safety Services instructors) and/or Nurse Assistant Training instructors and who have taught courses to Red Cross clients in California at any time from April 24, 2015 through and including [INSERT DATE THE PRELIMINARY APPROVAL ORDER IS ENTERED BY THE COURT] ("Class Members"). Class Members who do not submit a valid and timely Opt-Out Request

from the Settlement pursuant to the procedures set forth in this Notice will be bound by the Settlement and will release their claims against the Red Cross as described below in the "Release" section.

Defendant agreed to pay $377,000.00 (the "Gross Settlement Fund") to fully resolve all claims in the Action, including payments to Class Members, attorneys' fees and expenses, settlement administration costs, payment to the California Labor and Workforce Development Agency ("LWDA") and PAGA Releasees (described below) for their share of PAGA civil penalties, and the class representative incentive award payment.

The following deductions from the Gross Settlement Fund will be requested by the parties:

> Settlement Administrative Expenses. The Court has approved Simpluris, Inc. to act as the "Settlement Administrator," who is sending this Notice to you and who will perform many other duties relating to the Settlement. The Court has approved setting aside up to $12,000.00 from the Gross Settlement Fund to pay the Settlement Administrative Expenses.

> Attorneys' Fees and Expenses. Class Counsel have been prosecuting the Action on behalf of the Class Members on a contingency fee basis (that is, without being paid any money to date) and have been paying all litigation costs and expenses. The Court will determine the amount to award to Class Counsel as attorneys' fees, which will be paid from the Gross Settlement Fund. Class Members are not personally responsible for any of Class Counsel's attorneys' fees or expenses. Class Counsel will ask for fees of up to one-quarter of the Gross Settlement Fund (which is currently estimated to be $94,250.00) as reasonable compensation for the work Class Counsel performed and will continue to perform in this Action through Settlement finalization. Class Counsel also will ask for reimbursement of up to $15,000.00 for verified costs which were incurred by Class Counsel in connection with the Action.

> Class Representative Incentive Award. Class Counsel will ask the Court to award $8,000.00 as the class representative incentive award. This payment is meant to compensate Plaintiff for her service and extra work provided on behalf of the Class Members.

> PAGA Payment to the State of California. The parties have agreed to allocate $37,700.00 of the Gross Settlement Fund as PAGA civil penalties. Per California Labor Code Section 2699(i), 75% of such penalties ($28,275.00) will be payable to the LWDA for its share of PAGA penalties, and the remaining 25% ($9,425.00) will be payable to the PAGA Releasees (as described below).

Calculation of Class Members' Individual Settlement Payments. After deducting the Court-approved amounts above, the balance of the Gross Settlement Fund will form the Net Settlement Fund, which will be distributed to all Class Members who do not submit a valid and timely Opt-Out Request (described below). The Net Settlement Fund is estimated to be approximately $210,050.00. The Net Settlement Fund will be distributed to each participating Class Member based on their proportionate number of Pay Periods Worked during the Class Period, by multiplying the Net Settlement Fund by a fraction, the numerator of which is the Class Member's total Pay Periods Worked during the Class Period, and the denominator of which is the total number of Pay Periods Worked by all participating Class Members during the Class Period. "Pay Periods Worked" is defined as the number of pay periods for which a Class Member was paid wages for work performed during the Settlement Period, as regularly recorded on Defendant's payroll systems then in effect.

Based on Defendant's records, you had ___ Pay Periods Worked between April 24, 2015 and [INSERT DATE THE PRELIMINARY APPROVAL ORDER IS ENTERED BY THE COURT], and your estimated share of the Net Settlement Fund is $_____.

Calculation of PAGA Releasees' PAGA Payment. In addition to the Individual Settlement Payment described above, all individuals who are or were employed by the American National Red Cross as Training Services instructors (formerly known as Preparedness and Health and Safety Services instructors) and/or Nurse Assistant Training instructors and who have taught courses to Red Cross clients in California at any time from April 17, 2018 through and including [THE DATE THE PRELIMINARY APPROVAL ORDER IS ENTERED BY THE COURT] ("PAGA Releasees") shall receive a portion of the PAGA Payment based on the proportionate number of PAGA Pay Periods Worked the PAGA Releasee worked as compared to the total number of PAGA Pay Periods Worked worked by all PAGA Releasees. "PAGA Pay Periods Worked" is defined as the number of pay periods for which a PAGA Releasee was paid wages for work performed during the period beginning on April 17, 2018 through and including [INSERT THE DATE THE PRELIMINARY APPROVAL ORDER IS ENTERED BY THE COURT], as regularly recorded on Defendant's payroll systems then in effect.

Based on Defendant's records, you [are not a PAGA Releasee and are not eligible to receive a portion of the PAGA Payment **or** you are a PAGA Releasee and had ___ PAGA Pay Periods Worked between April 17, 2018 and [THE DATE THE PRELIMINARY APPROVAL ORDER IS ENTERED BY THE COURT] and your estimated share of the PAGA Payment is $____].

Settlement Payments to Class Members and PAGA Releasees. If the Court grants final approval of the class portion of the Settlement, Individual Settlement Payments will be mailed to Class Members who did not submit a valid and timely Opt-Out Request after the Gross Settlement Fund is fully funded. If the Court grants approval of the PAGA portion of the Settlement, the share of the PAGA Payment to PAGA Releasees will be mailed to the PAGA Releasees after the Gross Settlement Fund is fully funded.

Allocation and Taxes. For tax purposes, each Individual Settlement Payment will be allocated as one-third (⅓) wages and two-third (⅔) penalties and interest. The PAGA Payments to the PAGA Releasees will be allocated as penalties. The Settlement Administrator will be responsible for issuing to each Class Member who is a recipient of the Individual Settlement and each PAGA Releasee who is a recipient of a share of the PAGA Payment an IRS Form W-2 for amounts paid as wages and an IRS Form 1099, if applicable, for amounts paid as penalties and interest. Class Members are responsible for the proper income tax treatment of the Individual Settlement Payments. PAGA Releasees are responsible for the proper income tax treatment of their share of the PAGA Payment. The Settlement Administrator, Defendant and its counsel, and Class Counsel cannot provide tax advice. Accordingly, Class Members should consult with their tax advisors concerning the tax consequences and treatment of payments they receive under the Settlement.

Release. Upon the Court's final approval of the class portion of the Settlement and entry of the Judgment, Plaintiff and all Plaintiff Class Members (*i.e.*, all Class Members who do not properly opt-out) and all persons purporting to act on the Plaintiff Class Members' behalf or purporting to assert a claim under or through them, hereby do and shall be deemed to have fully, finally, and forever released, settled, compromised, relinquished and discharged the American National Red Cross, its current and former direct or indirect related entities and its/their current and/or former direct or indirect units and related entities, as well as its/their respective current and former officers, directors, employees, agents, committee members, board members, volunteers, successors, insurers, attorneys, agents, and assigns (collectively, the "Released Parties") of and from any and all claims pleaded or that could have been pleaded in the Complaint, First Amended Complaint, or Second Amended Complaint filed in the Action or arising from the facts and/or allegations in the Complaint, First Amended Complaint, Second Amended Complaint, Named Plaintiff's April 17, 2019 LWDA Letter and/or Named Plaintiff's February 18, 2020 Supplemental LWDA Letter, including, but not limited to, any and all underlying statutory provisions identified in the Complaint, First Amended Complaint, Second Amended Complaint, Named Plaintiff's April 17, 2019 LWDA Letter and/or Named Plaintiff's February 18, 2020 Supplemental LWDA Letter,

any and all penalties and any and all of the following claims or forms of relief that arose at any time during the Settlement Period to the maximum extent permitted by law: (a) any claims for expense reimbursement, meal break violations, rest break violations, unpaid wages (including but not limited to minimum wages, regular wages and overtime pay), improper itemized wage statements, improper payroll records maintenance and failure to pay all wages due at the time of termination; (b) any claims under California Labor Code sections 201 through 203, 226, 226.7, 510, 512, 558, 1174, 1174.5, 1194, 1197, 1197.1, 1198, 2698 and 2802 *et seq*., and related provisions contained in the California Wage Orders and the California Code of Regulations; the California Business and Professions Code predicated on such Labor Code sections, California Wage Orders, and California Code of Regulations, including but not limited to California Business and Professions Code section 17200 *et seq*.; and any claims under the Fair Labor Standards Act for unpaid wages (including but not limited to minimum wages, regular wages and overtime pay), improper meal breaks, improper rest breaks, improper itemized wage statements, improper payroll records maintenance, failure to pay all wages due at the time of termination and failure to reimburse for expenses; (c) any claims for damages, penalties, interest, attorney's fees and costs, injunctive relief, declaratory relief, restitution, fraudulent business practices, punitive damages or any other damages which were alleged or which could have been alleged based in whole or in part on the factual or legal allegations and/or claims in the Complaint, First Amended Complaint, Second Amended Complaint, Named Plaintiff's April 17, 2019 LWDA Letter and/or Named Plaintiff's February 18, 2020 Supplemental LWDA Letter. All claims set forth in this Paragraph are collectively referred to as the "Class Release."

In addition, upon the Court's approval of the PAGA portion of the Settlement and entry of the Judgment, Plaintiff and all PAGA Releasees, and all persons purporting to act on the PAGA Releasees' behalf or purporting to assert a claim under or through them hereby do and shall be deemed to have fully, finally, and forever released, settled, compromised, relinquished and discharged any and all of the Released Parties of and from any and all PAGA claims premised in whole or in part on any of the claims set forth in the Class Release above that arose at any time from April 17, 2018 through the date the Court's final approval of the Settlement. All claims set forth in this Paragraph are collectively referred to as the "PAGA Release." It is understood and acknowledged that PAGA Releasees receiving a share of the PAGA Payment as set forth above will be issued a check for their share of the PAGA Payment and will not have the opportunity to opt out of, or object to, the PAGA Release in this paragraph.

## How can I claim money from the Settlement?

<u>Do Nothing</u>. If you do nothing, you will be entitled to your Individual Settlement Payment which has been calculated for you based on the formula set forth above, as stated in the accompanying Notice of Settlement Award. You also will be bound by the Settlement, including the release of claims stated above.

Any funds payable to Class Members/PAGA releasees whose checks are not cashed within 90 calendar days after mailing will be transferred by the Settlement Administrator to a court-approved cy pres beneficiary. The parties propose Bet Tzedek to be the cy pres beneficiary. The failure to cash any check within 90 days does not affect the binding nature of the Settlement or the binding nature of any release of claims.

You may dispute your Individual Settlement Payment and your share of the PAGA Payment. Your Individual Settlement Payment award is based on the proportionate number of Pay Periods Worked. Your share of the PAGA Payment is based on the proportionate number of PAGA Pay Periods Worked. "Pay Periods Worked" is defined as the number of pay periods for which a Class Member was paid wages for work performed during the Settlement Period, as regularly recorded on Defendant's payroll systems then in effect. "PAGA Pay Periods Worked" is defined as the number of pay periods for which a PAGA Releasee was paid wages for work performed during the period beginning on April 17, 2018 through and

including [INSERT THE DATE THE PRELIMINARY APPROVAL ORDER IS ENTERED BY THE COURT], as regularly recorded on Defendant's payroll systems then in effect.

The information contained in Defendant's records regarding this information, along with your estimated Individual Settlement Payment and your estimated share of the PAGA Payment, is listed above. If you disagree with the number of Pay Periods Worked and/or the number of PAGA Pay Periods Worked, you may submit a written challenge. For the challenge to be deemed valid, it must include: (i) the full name of the person making the challenge; (ii) a statement that the person seeking the challenge are seeking to challenge his or her Pay Periods Worked and/or PAGA Pay Periods Worked set forth in this Notice; (iii) state the number of Pay Periods Worked the person seeking the challenge believe he or she has worked between April 24, 2015 and [INSERT DATE OF PRELIMINARY APPROVAL] and/or the number of PAGA Pay Periods Worked the person seeking the challenge believe he or she has worked between April 17, 2018 and [INSERT DATE OF PRELIMINARY APPROVAL]; and (iv) the person seeking the challenge must sign the document. You may attach any and all documents that support your claim (such as paystubs, cancelled checks, etc.). All such challenges must be mailed to the Settlement Administrator at the address below with a postmark date on or before [INSERT DATE]. Please be advised that the number of Pay Periods Worked and PAGA Pay Periods Worked stated in this Notice is presumed to be correct unless the documents you submit prove otherwise. DO NOT SEND ORIGINALS; DOCUMENTATION SENT TO THE SETTLEMENT ADMINISTRATOR WILL NOT BE RETURNED OR PRESERVED.

The Parties and the Settlement Administrator will evaluate the evidence submitted and discuss in good faith how to resolve any disputes submitted by Class Members. Defendant's personnel records, including payroll records, will be considered by the Settlement Administrator and the Parties as the presumptive best evidence of the number of Pay Periods Worked and the number of PAGA Pay Periods Worked.

### What other options do I have?

<u>Exclude Yourself from the Settlement</u>. If you do not wish to take part in the Settlement, you may exclude yourself from the Class Release by sending to the Settlement Administrator a written "Opt-Out Request from the Class Action Settlement" letter or card postmarked no later than [INSERT DATE], with your full name and a statement that you request exclusion from the Class and do not wish to participate in the Settlement. The Opt-Out Request must be signed by the Class Member seeking to opt out and must be mailed to the Settlement Administrator at the address below with a postmark date on or before [INSERT DATE].

Should you choose to timely exclude yourself from the Settlement, the money that you would have otherwise received from the Settlement will be distributed amongst the remaining participating Class Members. However, to the extent you are eligible to receive a portion of the PAGA Payment, you will still receive that amount whether or not you submit an Opt-Out Request. This is because, if the Court approves the PAGA portion of the Settlement, there is no right to be excluded from the PAGA Release that is part of this Settlement.

Any person who timely submits an Opt-Out Request from the Settlement shall, upon receipt by the Settlement Administrator, no longer be a Class Member, shall be barred from participating in any portion of the Class Settlement, and shall receive no benefits from the class portion of the Settlement. You will still receive your share of the PAGA Payment, if applicable as explained above. Do not submit both a Dispute and an Opt-Out Request. If you do, the Opt-Out Request will be invalid, you will be included in the Class, and you will be bound by the terms of the Settlement.

<u>Objecting to the Settlement</u>. Any member of the settlement Class who has not opted out can ask the Court to deny approval of the settlement by filing an objection. You can't ask the Court to order a larger settlement; the Court can only approve or deny the settlement. If the Court denies approval, no settlement payments will be sent out and the lawsuit will continue. If that is what you want to happen, you must object.

You may object to the proposed settlement in writing, except you may not object to the PAGA Payment and the PAGA Release. You may also appear at the Final Approval Hearing, either in person or through your attorney. If you appear through your own attorney, you are responsible for paying that attorney. All written objections and supporting papers must (a) clearly identify the case and number (*Morrison v. American National Red Cross*, Case No.: 4:19-CV-02855-HSG), (b) be submitted to the Court either by mailing them to the Class Action Clerk, United States District Court for the Northern District of California, 1301 Clay Street, Suite 400 S, Oakland, CA 94612, or by filing them in person at any location of the United States District Court for the Northern District of California, and (c) be filed or postmarked on or before [INSERT DATE OF THE CLOSE OF THE NOTICE PERIOD]. Class Members who fail to timely mail or file such a written statement of objection shall be foreclosed from making any objection to this Settlement.

As a reminder, the PAGA Release is binding on all PAGA Releasees upon Court approval. PAGA Releasees will not have the opportunity to opt-out of, or object to, the PAGA Release. PAGA Releasees are bound by the PAGA Release regardless of whether they cash their PAGA check.

**What is the next step?**

The Court will hold a Final Approval Hearing on the adequacy, reasonableness, and fairness of the Settlement on [INSERT DATE], in Courtroom 2 of the United States District Court for the Northern District of California, Oakland Courthouse, located at 1301 Clay Street, Oakland, California 94612. The location, date, and time of the Final Approval Hearing may be moved without further notice to you. You may contact Class Counsel using the contact information provided below to confirm the address and time of the hearing. The Court also will be asked to rule on Class Counsel's request for attorneys' fees and reimbursement of documented costs and expenses, the incentive award to the Class Representative, the Settlement Administrator's costs, and the amount related to the PAGA civil penalties. **You are <u>not</u> required to attend the Final Approval Hearing.**

**Designated Class Settlement Administrator.**

The Settlement Administrator, as agreed upon by the Parties and approved by the Court, is Simpluris, Inc. and their mailing address and contact information are:

[INSERT NAME, ADDRESS, TELEPHONE NUMBER AND EMAIL ADDRESS]

ALL DISPUTES CONCERNING PAY PERIODS WORKED AND/OR PAGA PAY PERIODS WORKED AS WELL AS OPT-OUT REQUESTS MUST BE MAILED SIMPLURIS'S ADDRESS LISTED ABOVE. ALSO, ALL QUESTIONS AND INQUIRIES REGARDING ADMINISTRATION OF THE SETTLEMENT MAY BE DIRECTED TO SIMPLURIS.

**Designated Class Counsel.**

The Class Counsel's name and contact information is below

Julian Hammond
Polina Brandler
Ari Cherniak
HAMMONDLAW, P.C.
1829 Reisterstown Rd. Suite 410
Baltimore, Maryland 2120

**Update to Your Contact Information.**

It is your responsibility to keep a current address and telephone number on file with the Settlement Administrator, to ensure receipt of your Individual Settlement Payment, your share of the PAGA Payment (if applicable) and applicable tax forms if the settlement is given final approval by the Court. If you change your mailing address, you should promptly contact the Settlement Administrator and provide the Settlement Administrator your new address and contact information.

**How to Obtain More Information About the Action or Settlement.**

This Notice summarizes the proposed settlement. For the precise terms and conditions of the settlement, please see the Class and Representative Action Settlement Agreement, the Complaint, the First Amended Complaint, the Second Amended Complaint and Plaintiff's April 17, 2019 and February 18, 2020 letters to the LWDA available at www._____.com, by contacting Class Counsel at the address or telephone number set forth above, by accessing the Court docket in this case through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California, Oakland Courthouse, 1301 Clay Street, Oakland, California 94612, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE SETTLEMENT PROCESS.

This Notice has been reviewed and approved by the United States District Court for the Northern District of California. If you have any questions regarding the Action, how it affects your rights, or how to file a claim, please contact the Settlement Administrator or Class Counsel listed below. Please do not contact the Court.

**EXHIBIT 2**

1  Julian Hammond (SBN 268489)
   jhammond@hammondlawpc.com
2  Polina Brandler (SBN 269086)
   Polina Brandler@hammondlawpc.com
3  Ari Cherniak (SBN 290071)
   acherniak@hammondlawpc.com
4  HAMMONDLAW, PC
   1829 Reisterstown Rd., Suite 410
5  Baltimore, MD 21208
   Tel:  (310) 601-6766
6  Fax:  (310) 295-2385
7  Attorneys for Plaintiff and the Putative Class

8

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11  LA TOIYA MORRISON, individually and on      Case No.: 4:19-cv-02855-HSG
12  behalf of all others similarly situated,
                                                **CLASS AND REPRESENTATIVE ACTION**
13          Plaintiff,
                                                **SECOND AMENDED COMPLAINT FOR:**
    vs.
14                                              **1. FAILURE TO REIMBURSE BUSINESS
    AMERICAN NATIONAL RED CROSS, a              EXPENSES (LABOR CODE § 2802);
15  Congressional Charter Corporation,          2. FAILURE TO AUTHORIZE AND
                                                PERMIT PAID REST BREAKS (LABOR
16          Defendant.                          CODE § 226.7; IWC WAGE ORDER § 12);
                                                3. FAILURE TO PROVIDE OFF-DUTY
17                                              MEAL BREAK AND PAY PREMIUM PAY
                                                (LABOR CODE §§ 226.7 AND 512; IWC
18                                              WAGE ORDER § 11);
                                                4. FAILURE TO PAY ALL WAGES OWED
19                                              (LABOR CODE §§ 510, 1194, 1197, 1198,
                                                IWC WAGE ORDER §§ 3-4);
20                                              5. FAILURE TO ISSUE ACCURATE
                                                ITEMIZED WAGE STATEMENTS AND
21                                              MAINTAIN PAYROLL RECORDS (CAL.
                                                LABOR CODE §§ 226, 1174, IWC WAGE
22                                              ORDER § 7);
                                                6. FAILURE TO PAY COMPENSATION
23                                              DUE UPON DISCHARGE FROM
                                                EMPLOYMENT (CAL. LABOR CODE §§
24                                              201-203);
                                                7. UCL VIOLATIONS (BUS. & PROF.
25                                              CODE §§ 17200-17204); AND
                                                8. CIVIL PENALTIES PURSUANT TO
26                                              PRIVATE ATTORNEY GENERAL ACT
                                                (LABOR CODE §§ 2698, ET SEQ.)**
27
                                                **DEMAND FOR JURY TRIAL**
28

Plaintiff La Toiya Morrison ("Plaintiff"), on behalf of herself and all others similarly situated (hereinafter "Class Members"), complains and alleges as follows:

## <u>OVERVIEW OF CLAIMS</u>

1. This is a class action, under Federal Rules of Civil Procedure, Rule 23, seeking reimbursement for cell phone business expenses; unpaid premium pay; unpaid wages; statutory penalties for the failure to issue accurate itemized wage statements and maintain accurate payroll records; and for the failure to pay all wage due upon termination; interest; injunctive and other equitable relief, and reasonable attorneys' fees and costs, under California Labor Code §§ 226(a) and (e), 201-203, 226.7, 510, 512, 558, 1174, 1194, 1197, 1197.1, 1198 and 2802; applicable IWC Wage Order §§ 3, 4, 7, 11, and 12; corresponding sections of the California Codes of Regulation; and California Business and Professions Code § 17200, *et seq.*, on behalf of Plaintiff and all individuals who are or were employed by the American National Red Cross ("Defendant") as Training Services instructors (formerly known as Preparedness and Health and Safety Services instructors) and Nurse Assistant Training instructors and who taught courses to Red Cross clients in California ( "Class Members" or "Instructors") during the four years prior to the filing of this action through to the trial date ("Class Period").

2. The "Class Period" is designated as the period from four years prior to the filing of this action through the trial date. Defendant's violations of California's wage and hour laws and unfair competition laws, as described more fully below, have been ongoing for at least the past four years, are continuing at present.

3. During the Class Period, Plaintiff and Class Members paid cell phone expenses incurred by them in the course of their work for Defendant as Instructors, for which they have not received reimbursement from Defendant.

4. During the Class Period, Defendant did not authorize and permit Class Members to take paid off-duty rest breaks and did not have a policy and/or practice of paying premium pay for missed rest breaks, in violation of Labor Code § 226.7 and Wage Order § 12.

5. During the Class Period, Defendant failed to provide Class Members timely off-duty meal breaks and failed to pay premium pay for missed meal breaks, in violation of Labor Code §§ 226.7 and 512 and Wage Order § 11.

6. During the Class Period, Defendant failed to pay Class Members' wages (including minimum wages, straight time wages and overtime wages) for all hours worked as a result of requiring that Class Members to work through their unpaid meal breaks without pay.

7. During applicable time period, Defendant failed to issue accurate itemized wage statements to Class Members that contained accurate entries for total hours worked, all applicable hourly rates, gross wages, and net wages earned, in violation of Labor Code § 226(a), (e).

8. During the applicable time period, Defendant failed to pay all compensation due and owing to the Class Members at the time of their discharge from employment in violation of Labor Code §§ 201-203.

9. As a result of the above Labor Code violations, Defendant committed unfair, unlawful, and fraudulent business practices, in violation of the UCL.

10. Plaintiff also brings this action as a representative action under the Labor Code Private Attorneys General Act ("PAGA"), Labor Code §§ 2698, et seq., on behalf of herself and Class Members employed by Defendant from April 17, 2018 through to the present ("Aggrieved Employees") for the labor code violations alleged herein.

## **JURISDICTION**

11. This Court has jurisdiction over the Plaintiff's claims for reimbursement of business expenses under Labor Code § 2802.

12. This Court has jurisdiction over Plaintiff's and Class Members' claims for failure to authorize and permit Class Members to take off-duty rest breaks and failure to pay premium pay for missed rest breaks, under Labor Code § 226.7, applicable Wage Order § 12 and corresponding California Code of Regulations.

13. This Court has jurisdiction over Plaintiff's and Class Members' claims for failure to provide off-duty meal breaks and failure to pay premium pay for missed meal breaks, under Labor Code §§ 226.7 and 512, applicable Wage Order § 11 and corresponding California Code of Regulations.

14. This Court has jurisdiction over Plaintiff's and Class Members' claims for unpaid wages under Labor Code §§ 510, 1194, 1197, 1197.1, 1198 and applicable Wage Order §§ 3 and 4 and

corresponding California Code of Regulations.

15.     This Court has jurisdiction over Plaintiff's and Class Members' claims for compensation due upon discharge from employment under Labor Code §§ 201-203.

16.     This Court has jurisdiction over Plaintiffs' and Class Members' claims for failure to issue accurate itemized wage statements under Labor Code § 226(a).

17.     This Court has jurisdiction over Plaintiffs' and Class Members' claims for failure to maintain accurate payroll records under <u>Labor Code §§ 226, 1174(d) and 1174.5, applicable Wage Order § 7 and corresponding California Code of Regulations</u>.

18.     This Court has jurisdiction over the claims for restitution arising from Defendant's violations of Labor Code §§ 1197, 1198, 1194, 510, 2802, 226.7 and 512, applicable Wage Order §§ 3, 4, 11 and 12 and corresponding California Code of Regulations, under the UCL, Bus. & Prof. Code §§ 17203 and 17204.

19.     This Court has jurisdiction over claims for attorney's fees and costs pursuant to Labor Code §226(h), 2802, and Cal. Civ. Proc. Code § 1021.5.

20.     This Court has jurisdiction over the claims for declaratory relief and injunctive relief under the UCL, Bus. & Prof. Code §§ 17200 *et seq.*

21.     This Court has jurisdiction over Plaintiff's claims for PAGA penalties under Labor Code § 2699.  On April 17, 2019 Plaintiff provided PAGA Notice pursuant to Labor Code § 2699.3 to the Labor California Labor & Workforce Development Agency ("LWDA") and Defendant of Defendant's alleged violations of Labor Code § 2802. On or about February 18, 2020 Plaintiff provided PAGA Notice pursuant to Labor Code § 2699.3 to the Labor California Labor & Workforce Development Agency ("LWDA") and Defendant of Defendant's alleged violations of Labor Code §§ 201-203, 226, 226.7, 510, 512, 1174, 1174.5, 1194, 1197 and 1198 as well as corresponding Wage Order and California Code of Regulations.  The LWDA has provided no notice to Plaintiff within the period specified in Labor Code § 2699.3 regarding its intentions to investigate or not to investigate Plaintiff's claims. Plaintiff has therefore fully complied with the PAGA procedural requirements and may commence this representative action pursuant to Labor Code § 2699.

**VENUE**

22.     Venue is proper in the United States District Court for the Northern District of California pursuant to 28 U.S.C. §§ 1441 and 1446.

**PARTIES**

23.     Plaintiff La Toiya Morrison resides in Studio City, California.  Plaintiff was employed by Defendant from approximately April 2018 through March 2019, and worked as an Instructor out of Defendant's Los Angeles, California, regional headquarters office.  During that time Plaintiff Morrison was subject to Defendant's policies and/or practices set forth herein.

24.     Defendant American National Red Cross is a Congressional Charter corporation with its principal place of business in Washington, DC.  The policies and practices complained of herein were formulated, implemented, and maintained, in whole or in substantial part, at that address.

25.     All of Plaintiff's claims stated herein are asserted against Defendant and any of its predecessors, successors, and/or assigns that do, or have done, business, and that employ, or have employed, Class Members in California during the Class Period.

**FACTUAL BACKGROUND**

26.     Defendant operates and, at all times during the Class Period, has done business throughout California.  Defendant, in the course of operating its business in California during the Class Period, employs or has employed Plaintiff and Class Members as Instructors.

### ***Defendant Failed to Reimburse Class Members' Business Expenses***

27.     During the Class Period, Defendant's expense-related policies and/or practices require, and/or with Defendant's knowledge thereof permit, Plaintiff and Class Members to use their personal cell phones and pay for cell phone related business expenses incurred in direct consequence of discharging their instructor duties on behalf of Defendant, without reimbursement by Defendant for such expenses.

28.     Specifically, during the Class Period, Instructors provide training courses on behalf of Defendant.  In order to prepare for and conduct these training courses, Defendant requires and expects Instructors to communicate regularly with Defendant and Defendant's clients regarding scheduling, needs of particular clients, and more.  Defendant, however, did not provide Instructors with cell phones

and they therefore must use their personal cellular phones to communicate with Defendant and Defendant's clients.

29. Defendant was aware or should have been aware that Plaintiffs and Class Members regularly incur cell phone related business expenses in the discharge of their work duties and was required to reimburse them pursuant to Labor Code § 2802. Defendant nevertheless has, throughout the Class Period, failed and refused to reimburse Plaintiff and Class Members for such cell phone related business expenses incurred by them in their work for Defendant.

### ***Defendant Failed to Provide Rest and Meal breaks and Failed to Pay Premium Pay***

30. During the Class Period, Class Members were non-exempt employees. As a result, during the Class Period Defendant was required to comply with the wage and hour obligations to, including but not limited to, the obligation to authorize and permit off-duty rest periods and provide off-duty meal periods, or pay premium pay in lieu thereof, to provide Class Members with accurate itemized wage statements, and to pay Class Members all wages due upon termination, pursuant to Labor Code §§ 226.7, 512, 226(a), 201-203, applicable Wage Order §§ 11 and 12 and corresponding California Code of Regulations.

31. During the Class Period, Defendant failed, as a matter of policy and/or practice, to permit and authorize Class Members to take off-duty rest breaks in violation of applicable Wage Order § 12 and corresponding California Code of Regulations.  In fact, Defendant had a written policy that required Class Members to remain available to students during all scheduled class time thus impeding Class Members' ability to take rest breaks.

32. Thus, Defendant failed to authorize and permit compliant rest breaks in accordance with applicable Wage Order § 12(A) thereby triggering an obligation to make premium payments to Plaintiffs and Class Members on a class-wide basis under Labor Code § 226.7. Defendant failed, as a matter of policy and/or practice, to pay premium pay for missed rest breaks in violation of Labor Code § 226.7.

33. During the Class Period, Defendant failed to provide Class Members with a 30-minute meal break before the end of the fifth hour of each shift as required by Labor Code § 512, applicable Wage Order § 11 and corresponding California Code of Regulations, thereby triggering an obligation

to make premium payments to Plaintiff and Class Members pursuant to Labor Code § 226.7. Defendant failed, as a matter of policy and/or practice, to pay premium pay for missed meal breaks in violation of Labor Code § 226.7.

### *Defendant Failed to Pay All Wages Owed*

34. During the Class Period, Class Members were non-exempt employees, and Defendant was required to pay them all wages owed (including applicable minimum wages, straight time wages and overtime wages) for the hours that they worked under Labor Code §§ 510, 1194, 1197, 1198, applicable Wage Order §§ 3 and 4, and corresponding California Code of Regulations.

35. During the Class Period, as a result of Defendant's requirement that Class Members' work through their unpaid meal break time, Defendant failed to pay Class Members' at least minimum wage for all hours worked and failed to pay overtime wages for all hours worked, in violation of Labor Code §§ 510, 1194, 1197 and 1198.

### *Defendant Failed to issue Accurate Itemized Wage Statements*

36. As an additional consequence of Defendant's failure to provide compliant meal and rest breaks, failure to pay premium pay, and failure to pay wages for all hour worked, Plaintiff and Class Members did not receive accurate itemized wage statements as required by Labor Code § 226(a)(1), (a)(2), (a)(5), and (a)(9) that included accurate entries applicable hourly rates, total hours worked, net wages, and gross wages earned.

### *Defendant Failed to Pay All Wages Due and Owing Upon Termination*

37. As a further consequence of Defendant's failure to provide compliant meal and rest breaks, failure to pay wages premium pay, and failure to pay wages for all hours worked, Plaintiff and Class Members whose employment with Defendant was terminated did not receive all compensation due to them in their final paychecks. As a result, Plaintiffs and these Class Members did not receive all wages due upon termination; nor did they receive these wages due within 30 days of the separation of their employment from Defendant in violation of Labor Code §§ 201-203.

### *Defendant Failed to Maintain Accurate Records*

38. As a further consequence of Defendant's failure to provide compliant meal and rest breaks, failure to pay wages premium pay, and failure to pay wages for all hours worked, Defendant

failed to maintain accurate records required under Labor Code §§ 226, 1174(d), 1174.5, applicable Wage Order § 7, and corresponding California Code of Regulations.

### *Defendant's Labor Code Violations Were Unfair Business Practices*

39. From at least four years prior to filing this complaint, through the present, Defendant has adopted and used unfair business practices to reduce Class Members' compensation and increase profits. These unfair business practices include failing to authorize and permit timely off-duty rest periods and meal breaks; failing to pay premium pay for missed breaks; failing to pay all wages owed (including minimum, straight and overtime wages); and failing to reimburse Class Members for their cell phone expenses.

## CLASS ACTION ALLEGATIONS

40. Plaintiff brings this action, on behalf of herself and all others similarly situated, as a class action pursuant to Federal Rules of Civil Procedure, Rule 23.

41. This action has been brought and may properly be maintained as a class action under Federal Rules of Civil Procedure, Rule 23, because there is a well-defined community of interest in the litigation, the proposed class is easily ascertainable, and Plaintiff is a proper representative of the Class:

a. <u>Numerosity</u>: The potential members of the Class as defined are so numerous and so diversely located throughout California, that joinder of all the members of the Class is impracticable. Plaintiff is informed and believes that Defendant has at all times during the Class Period employed approximately 370 Instructors in California subject to Defendant's unlawful policies and/or practices. The Class Members are dispersed throughout California. Joinder of all members of the proposed class is therefore not practicable.

b. <u>Commonality</u>: There are questions of law and fact common to the Plaintiff and the Class that predominate over any questions affecting only individual members of the Class. These common questions of law and fact include, without limitation:

i. Whether Plaintiff and Class Members incurred unreimbursed cell phone related business expenses in the discharge of their duties as employees.

ii. Whether Defendant intended, suffered and/or permitted, and/or was aware that Plaintiff and Class Members incurred such unreimbursed cell phone related business expenses in the discharge of their duties as employees.

iii. Whether Defendant failed and/or refused to reimburse cell phone related business expenses incurred by Plaintiff and Class Members in the discharge of their duties.

iv. Whether Defendant violated Labor Code § 2802 by denying Plaintiff and other Class Members reimbursement for their cell phone related business expenses.

v. Whether Defendant maintained policies and/or practices that prevented or impeded Class Members from being authorized and permitted to take off-duty rest periods during the Class Period;

vi. Whether Defendant maintained policies and/or practices that prevented or impeded Class Members from being provided off-duty meal periods during the Class Period;

vii. Whether Defendant violated Labor Code § 226.7, applicable Wage Order §§ 11 and 12 and corresponding California Code of Regulations by failing to pay one hour of premium pay to each member of the Class for each day that an off-duty rest period or meal period was not provided during the Class Period;

viii. Whether Defendant violated Labor Code §§ 510, 1194, 1197 and 1198, applicable Wage Order §§ 3 and 4 and corresponding California Code of Regulations by failing to pay Class Members all wages owed (including applicable minimum wages, straight time wages and overtime wages) for the hours that they worked;

ix. Whether Defendant issued wage statements to Plaintiffs and Class Members that failed to include accurate entries for applicable hourly rates, total hours worked, net wages earned, and gross wages earned as required by Labor Code § 226(a)(1), (a)(2), (a)(5), and (a)(9);

x. Whether Defendant's violation of Labor Code § 226(a) was knowing and intentional;

xi. Whether Defendant violated Labor Code §§ 201-203 by failing to pay Class Members for all of their wages due to them upon separation of their employment;

xii. Whether Defendant failed to maintain required records required under Labor Code §§ 226, 1174, 1174.5, applicable Wage Order § 7 and corresponding California Code of Regulations;

xiii. Whether these violations of the above Labor Code provisions constitute unfair, unlawful, and fraudulent business practices, in violation of UCL;

xiv. Whether Plaintiff is entitled to restitution under Business and Professions Code § 17200 for unpaid premium pay and unreimbursed cell phone expenses incurred by Plaintiff and Class Members.

xv. Whether the Class is entitled to declaratory relief.

xvi. The proper formula(s) for calculating damages, interest, and restitution owed to Plaintiff and the Class Members.

c. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the Class. Both Plaintiff and Class Members sustained injuries and damages, and were deprived of property rightly belonging to them, arising out of and caused by Defendant's common course of conduct in violation of law as alleged herein, in similar ways and for the same types of expenses.

d. <u>Adequacy of Representation</u>: Plaintiff is a member of the Class and will fairly and adequately represent and protect the interests of the Class Members. Plaintiff's interests do not conflict with those of Class Members. Counsel who represents Plaintiff is competent and experienced in litigating large wage and hour class action and will devote sufficient time and resources to the case and otherwise adequately represent the Class.

e. <u>Superiority of Class Action</u>: A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all Class Members is not practicable, and questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class. Each Class Member has been damaged or may be damaged in the future by reason of Defendant's unlawful policies and/or practices. Certification of this case as a class action will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system. Certifying this case as a class action is superior because it allows for efficient and full disgorgement of the ill-gotten gains Defendant

9

has enjoyed by maintaining its unlawful policies and/or practices, and will thereby effectuate California's strong public policy of protecting employees from deprivation of compensation earned in their employment. If this action is not certified as a Class Action, it will be impossible as a practical matter for many or most Class Members to bring individual actions to recover monies unlawfully withheld from their lawful compensation due from Defendant, due to the relatively small amounts of such individual recoveries relative to the costs and burdens of litigation.

## FIRST CAUSE OF ACTION
### Failure to Reimburse for Business Expenses
### (Labor Code § 2802)

42.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

43.     Labor Code § 2802 provides that "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties."

44.     In order to discharge their job duties for Defendant, Plaintiff and similarly situated Instructors were required and/or expected by Defendant to use their own personal cell phones for business communications. However, Defendant did not provide them with company cell phone and did not pay them for expenses incurred as a result of Plaintiff's and Class Members' use of their personal cell phones for work.

45.     Defendant's failure to pay for or reimburse the work-related cell phone expenses of Plaintiff and other Class Members violated non-waivable rights secured to them by Labor Code § 2802. Plaintiff and Class Members are entitled to reimbursement for these necessary expenditures, plus interest, under Labor Code § 2802.

46.     As a result of Defendant's violations of Labor Code § 2802, Defendant is also liable for attorneys' fees and costs under Labor Code § 2802(c).

47.     Plaintiff, on behalf of herself and Class Members, request relief as described below

## SECOND CAUSE OF ACTION
### Failure to Authorize and Permit Off-Duty Rest Breaks or Pay Missed Rest Period Premiums
### [Cal. Labor Code § 226.7; IWC Wage Order § 12; corresponding California Code of Regulations]

48.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in

10

the preceding paragraphs.

49.    Applicable IWC Wage Order § 12(A) and corresponding California Code of Regulations provide:

> "(A) Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten minutes net rest time per four hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 1/2) hours. Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages."

50.    California Labor Code § 226.7(a) provides, "No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission."

51.    As set forth above, Class Members routinely worked 3.5 hours or longer without being authorized and permitted to take an off-duty rest breaks to which they were entitled, in violation of applicable Wage Order § 12 and corresponding California Code of Regulations.

52.    Defendant did not have a policy and/or practice of paying Plaintiffs and Class Members for missed rest breaks in violation of Labor Code § 226.7, applicable Wage Order § 12 and corresponding California Code of Regulations.

53.    As a result of Defendant's policies and practices, Plaintiffs and the Class are entitled to recover one additional hour of pay at the employee's regular rate of compensation for each day in which Defendant failed to authorize and permit Class Members to take rest periods as required under Labor Code § 226.7, applicable Wage Order § 12 and corresponding California Code of Regulations.

54.    Plaintiff, on behalf of herself and all other Class Members, requests relief as described below.

### THIRD CAUSE OF ACTION
**Failure to Provide Compliant Meal Periods and Pay Missed Meal Period Premiums**
**[Cal. Labor Code § 226.7 and 512; Wage Order § 11; corresponding California Code of Regulations]**

55.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

56.     California Labor Code § 512(a) provides: "An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes…"

57.     California Labor Code § 226.7(a) provides: "No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission."

58.     Applicable Wage Order No. § 11(A) and corresponding California Code of Regulations provide: "(A) No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes…"

59.     As alleged herein, Plaintiff and Class Members regularly worked five (5) hours or more in a day without being provided a 30-minute meal period in which they were relieved of all duties, in violation of Labor Code § 512, applicable Wage Order No. § 11(A) and corresponding California Code of Regulations.

60.     As a result, Plaintiff and the Class are entitled to recovery under Labor Code § 226.7, applicable Wage Order § 11 and corresponding California Code of Regulations in the amount of one additional hour of pay at the employee's regular rate of compensation for each day in which Defendant failed to provide Class Members with off-duty meal periods as required by California law.

61.     Plaintiff, on behalf of herself and all other Class Members, requests relief as described below.

**FOURTH CAUSE OF ACTION**
**Failure to Pay Wages for All Hours Worked**
**[Labor Code §§ 510, 1194, 1197 and 1198; Wage Order § 3 and 4; corresponding California Code of Regulations]**

62.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

63.     During the Class Period, Defendant required and expected Plaintiff and Class Members to perform work during their unpaid meal break time, which Plaintiff and Class Members did perform,

but were not compensated for, in violation of applicable Wage Order §§ 3-4, corresponding California

Code of Regulations and Labor Code §§§ 510, 1194, 1197, 1198.

64.     As a result, Plaintiff and the Class are entitled to recover their unpaid wages, unpaid

overtime wages, interest, attorneys' fees and costs, statutory penalties, plus liquidated damages in an

additional amount equal to the total amount of wages unlawfully withheld during the Class Period.

65.     Plaintiff, on behalf of herself and all other Class Members, requests relief as described

below.

### FIFTH CAUSE OF ACTION
**Failure to Issue Accurate Itemized Wage Statements and Maintain Payroll Records**
**[Cal. Labor Code §§ 226, 1174, 1174.5, Wage Order § 7; corresponding California Code of Regulations]**

66.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in

the preceding paragraphs.

67.     Labor Code § 226(a) requires employers to furnish their employees with wage

statements containing accurate entries for "(1) gross wage earned, (2) total hours worked by the

employee…(5) net wages earned, … (9) all applicable hourly rates in effect during the pay period and

the corresponding number of hours worked at each hourly rate by the employee."

68.     Under Labor Code §§ 226, 1174(d) and 1174.5, applicable Wage Order § 7, and

corresponding California Code of Regulations, Defendant was required to maintain accurate records for

Plaintiff and Class Members.

69.     Based on the allegations above, Defendant issued Plaintiffs and Class Members wage

statements that lacked accurate entries for applicable hourly rates in effect during the pay period, total

hours worked, net wages, and gross wages earned in violation of Labor Code § 226(a)(1), (a)(2), (a)(5),

and (a)(9).  Defendant failed to maintain accurate records of, among other things, the applicable hourly

rates in effect during the pay period, total hours worked, net wages, and gross wages earned.

70.     Plaintiff and Class Members suffered injury as a result of Defendant's knowing and

intentional failure to comply with Labor Code § 226(a). As a result, Class Members are entitled to

recover $50 for each initial pay period with a violation, and $100 for each subsequent pay period with a

violation, up to an amount not exceeding an aggregate penalty of $4,000 for each Class Member,

pursuant to Labor Code § 226(e).

71.     Plaintiff, on behalf of herself and all Class Members, request relief as described below.

**SIXTH CAUSE OF ACTION**
**Failure to Pay Compensation Due Upon Termination**
**[Cal. Labor Code §§ 201-203]**

72.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

73.     Labor Code §§ 201 and 202 require Defendant to pay all compensation due and owing to Class Members promptly after their employment was terminated.  Labor Code § 203 provides that if an employer willfully fails to pay compensation promptly upon discharge or resignation, as required by §§ 201 and 202, then the employer is liable for penalties in the form of continued compensation up to 30 work days.

74.     As alleged herein, Defendant willfully failed to pay Plaintiff and Class premium pay during their employment, and failed to pay wages for all hours worked, upon their termination or separation from employment with Defendant, as required by Labor Code §§ 201 and 202.

75.     In light of the clear law requiring Defendant to authorize and permit Class Members to take off-duty rest breaks and pay premium pay for missed rest breaks, and provide Class Members with off-duty meal breaks and pay premium pay for missed meal breaks, and pay Class Members at the applicable minimum wage, straight time and/or the applicable overtime rate for all time spent working, Defendant's failure to pay wages for such time was willful.

76.     As a result, Defendant is liable to Plaintiff and Class Members whose employment terminated for waiting time penalties amounting to thirty (30) days wages for each formerly employed Class Member pursuant to Labor Code § 203.

77.     Plaintiff, on behalf of herself and all other Class Members, request relief as described below.

**SEVENTH CAUSE OF ACTION**
**Unfair Competition Law Violation**
**(Bus. & Prof. Code §§ 17200 et seq.)**

78.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

79.     Business & Professions Code §§ 17200, *et seq.* prohibits unfair competition in the form of any unlawful, unfair, or fraudulent business act or practice. Business & Professions Code § 17204 allows "any person who has suffered injury in fact and has lost money or property" to prosecute a civil action for violation of the UCL. Such a person may bring such an action on behalf of himself and others similarly situated who are affected by the unlawful, unfair, or fraudulent business practice.

80.     Beginning at least four years prior to the filing of this Complaint, Defendant committed, and continues to commit, acts of unfair competition, as defined in the UCL by wrongfully denying Class Members off-duty rest breaks and meal breaks, failing to pay premium pay for missed breaks, and failing to pay them all wages owed (including applicable minimum wages, straight time wages and overtime wages) for the hours that they worked, failing to pay them all wages due at time of discharge and failing to reimburse them for reasonable necessary business expenses in violation of Labor Code §§ 201-203, 226.7, 512, 510, 1194, 1174.5, 1197, 1198, 2802, applicable Wage Order No. §§ 3, 4, 11 and 12, and corresponding California Code of Regulations.

81.     By its actions and omissions, Defendant has substantially injured Plaintiff and the Class Members. Defendant's conduct as herein alleged has damaged Plaintiff and the Class and was substantially injurious to them.

82.     The harm to Plaintiff and the Class resulting from Defendant's labor code violations outweighs the utility, if any, of Defendant's policies and practices. Therefore, Defendant's actions described herein constitute an unfair business practice or act within the meaning of the UCL.

83.     Plaintiff has assumed the responsibility of enforcement of the laws and public policies specified herein by suing on behalf of herself and other similarly situated members of the public previously and presently employed by Defendant in California. Plaintiff's success in this action will enforce important rights affecting the public interest. Plaintiff will incur a financial burden in pursuing this action in the public interest. Therefore, an award of reasonable attorneys' fees to Plaintiff is appropriate pursuant to Code of Civil Procedure § 1021.5.

84.     Plaintiff, on behalf of herself and the Class, requests relief as described below.

# EIGHTH CAUSE OF ACTION
## Civil Penalties (Labor Code §§ 2698 et seq.)

85.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

86.     Plaintiff is an "Aggrieved Employee" under PAGA as she was employed by Defendant during the applicable statutory period and suffered one or more of the Labor Code violations alleged herein.  As such, Plaintiff seeks to recover, on behalf of herself and all Aggrieved Employees of Defendant, civil penalties provided by PAGA, plus reasonable attorneys' fees and costs.

87.     Plaintiff seeks PAGA penalties on behalf of herself and Aggrieved Employees against Defendant for the following violations:

### *Violation of IWC Wage Order § 12, corresponding California Code of Regulations, and Labor Code §§ 226.7*

88.     During the PAGA Period, Defendant failed to authorize and permit paid rest breaks and pay missed rest break premiums in violation of Labor Code § 226.7, applicable IWC Wage Order § 12 and corresponding California Code of Regulations, as described above.

89.     Pursuant to Labor Code § 2699(f)(2), Plaintiffs and Aggrieved Employees are entitled to one hundred dollars ($100) per pay period for each initial violation and two hundred dollars ($200) per pay period for each subsequent violation.

### *Violation of Labor Code § 2802*

90.     During the PAGA Period, Defendant failed to reimburse Aggrieved Employees for their necessarily incurred business expenses in violation of Labor Code § 2802.

91.     Under Labor Code § 2699(f)(2), Plaintiff and Aggrieved Employees are entitled to a PAGA penalty equal to one hundred dollars ($100) per pay period per Aggrieved Employee for each initial violation of Labor Code § and two hundred dollars ($200) per pay period for each subsequent violation.

### *Violation of Labor Code §§ 226.7 and 512, IWC Wage Order § 11, corresponding California Code of Regulations*

92.     During the PAGA Period, Defendant failed to provide off-duty meal breaks and pay missed meal break premiums in violation of Labor Code § 226.7 and 512, applicable IWC Wage Order § 11 and corresponding California Code of Regulations, as described above.

93.     Pursuant to Labor Code § 2699(f)(2), Plaintiffs and Aggrieved Employees are entitled to one hundred dollars ($100) per pay period for each initial violation and two hundred dollars ($200) per pay period for each subsequent violation.

### *Violation of Labor Code §§ 510, 1194, 1197, 1197.1, 1198, IWC Wage Order §§ 3-4, corresponding California Code of Regulations,*

94.     During the PAGA Period, Defendant failed to pay Aggrieved Employees all wages owed (including applicable minimum wages, straight time wages and overtime wages) for the hours that they worked in violation of Labor Code §§ 510, 1194, 1197 and 1198, applicable IWC Wage Order §§ 3-4 and corresponding California Code of Regulations, as described above.

95.     Pursuant to Labor Code § 558, Plaintiff and Aggrieved Employees are entitled to fifty hundred dollars ($50) for each initial violation and one hundred dollars ($100) for each subsequent violation.

### *Violation of Labor Code §§ 226(a)*

96.     During the PAGA Period, Defendant failed to issue accurate itemized wage statements containing all applicable hourly rates in effect during the pay period, gross wages, and net wages, violation of Labor Code §§ 226(a).

97.     Under Labor Code § 2699(f)(2), Plaintiff and Aggrieved Employees are entitled to a PAGA penalty equal to one hundred dollars ($100) per pay period per Aggrieved Employee for each initial violation of Labor Code § 226(a)(1), (a)(2), (a)(5), and (a)(9), and two hundred dollars ($200) per pay period for each subsequent violation.

### *Violation of Labor Code §§ 201-203*

98.     During the PAGA Period, Plaintiff and formerly employed Aggrieved Employees also did not receive all compensation due to them in their final paychecks in violation of Labor Code §§ 201-203.

99.     Pursuant to Labor Code § 2699(f)(2), Plaintiffs and Aggrieved Employees are entitled to one hundred dollars ($100) per pay period for each initial violation and two hundred dollars ($200) per pay period for each subsequent violation.

### *Violation of Labor Code §§ 226, 1174(d) and 1174.5; IWC Wage Order § 7, corresponding California Code of Regulations,*

1   100.   As a result of the Labor Code violations described above, Defendant willfully failed to

2   keep accurate payroll records showing, among other things, the hours worked by the Aggrieved

3   Employees, in violation of Labor Code §§ 226, 1174(d), applicable IWC Wage Order § 7,

4   corresponding California Code of Regulations.

5   101.   Pursuant to Labor Code § 1174.5, Plaintiff and each Aggrieved Employee are entitled to

6   a civil penalty of $500 per violation.

7   **PRAYER FOR RELIEF**

8   WHEREFORE, Plaintiff request the following relief:

9   A.   That the Court determine that this action may be maintained as a class action under

10  Federal Rules of Civil Procedure, Rule 23, and define the Class as requested herein;

11  B.   That the Court find and declare that Defendant's business expense policies and/or

12  practices violate California law, including Labor Code § 2802, and award to Plaintiff and Class

13  Members all unreimbursed cell phone related business expenses, and interest thereon, pursuant to

14  Labor Code § 2802;

15  C.   That the Court find and declare that Defendant violated Labor Code § 226.7. Wage

16  Order § 12 and corresponding California Code of Regulations by failing to pay Plaintiffs and Class

17  Members premium pay for missed rest breaks; and award Plaintiffs and the Class unpaid premium pay

18  for missed rest breaks;

19  D.   That the Court find and declare that Defendant violated Labor Code §§ 226.7 and 512,

20  Wage Order § 11 and corresponding California Code of Regulations by failing to provide compliant

21  meal breaks and award Plaintiff and the Class unpaid premium pay for missed meal breaks.

22  E.   That the Court find and declare that Defendant violated Labor Code §§ 510, 1194,

23  1197, 1198, Wage Order §§ 3 and 4 and corresponding California Code of Regulations by failing to

24  pay Class Members wages for all work performed by them; and award Plaintiff and Class Members

25  unpaid wages, interest, and liquidated damages;

26  F.   That the Court find and declare that Defendant has violated Labor Code §§ 226(a), (e);

27  award Plaintiff and Class Members statutory penalties under Labor Code § 226(e);

28

G. That the Court find and declare that Defendant has violated Labor Code §§ 226, 1174 and 1174.5;

H. That the Court find and declare that Defendant has violated §§ 201-203 of the California Labor Code, and award Plaintiff and Class Members penalties in the amount of 30 days' wages per Class Member;

I. That the Court find and declare Defendant has violated the UCL by failing to authorize and permit compliant rest breaks and pay premium pay for missed rest breaks; failing to provide compliant meal breaks and pay premium pay for missed meal breaks; failing to pay wages for all hours worked; and failing to reimburse necessarily incurred business expenses; award restitution to the Class in the amount of unpaid premium pay, unpaid wages, and unreimbursed expenses; and enjoin Defendant from continuing to enforce policies and practices that violate Labor Code §§ 226.7, 510, 512, 1194, 1197, 1198 and 2802.

J. That the Court award Plaintiff and Aggrieved Employees civil penalties pursuant to PAGA;

K. That be Plaintiff and the Class awarded reasonable attorneys' fees and costs pursuant to Labor Code §§ 2802(c), 226(e), 1194, 2699, Code of Civil Procedure § 1021.5, and/or other applicable law;

L. That the Court award such other and further relief as this Court may deem appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of herself and the Class Members hereby demands a jury trial on all causes of action and claims with respect to which she has a right to jury trial.

Dated: June 1, 2020          Respectfully submitted,

HAMMONDLAW, P.C.


Julian Hammond

Attorney for Plaintiff and the Putative Class

**EXHIBIT 3**

1   JULIAN HAMMOND, Bar No. 268489
    jhammond@hammondlawpc.com
2   POLINA BRANDLER, Bar No. 269086
    pbrandler@hammondlawpc.com
3   ARI CHERNIAK, Bar No. 290071
    acherniak@hammondlaw.com
4   HAMMONDLAW, P.C.
    1829 Reisterstown Road
5   Suite 410
    Baltimore, Maryland 21208
6   Telephone:   310.601.6766
    Facsimile:   310.295.2385
7
    Attorneys for Plaintiff
8   LA TOIYA MORRISON

9   LISA LIN GARCIA, Bar No. 260582
    llgarcia@littler.com
10  LITTLER MENDELSON, P.C.
    333 Bush Street
11  34th Floor
    San Francisco, California 94104
12  Telephone:   415.433.1940
    Facsimile:   415.399.8490
13
    Attorneys for Defendant
14  AMERICAN NATIONAL RED CROSS

15                  UNITED STATES DISTRICT COURT

16               NORTHERN DISTRICT OF CALIFORNIA

17

18  LA TOIYA MORRISON, individually and       Case No. 4:19-CV-02855-HSG
    on behalf of all others similarly situated,
19                                             ASSIGNED FOR ALL PURPOSES TO
                  Plaintiff,                   JUDGE HAYWOOD S. GILLIAM
20
         v.                                    **[PROPOSED] ORDER GRANTING
21                                             PLAINTIFF'S MOTION FOR ORDER
    AMERICAN NATIONAL RED CROSS, a             GRANTING PRELIMINARY APPROVAL
22  Congressional Charter Corporation,         OF CLASS ACTION SETTLEMENT**

23                Defendant.

24

25

26

27

28

This matter came on for hearing on _____, on Plaintiff LaToiya Morrison's ("Plaintiff" or "Class Representative") unopposed Motion for Order Granting Preliminary Approval of Class Action Settlement in this action on the terms set forth in the Class and Representative Action Settlement Agreement and Stipulation (the "Settlement Agreement").[1] Having fully considered the papers submitted in support of the motion and having carefully analyzed the Settlement Agreement and the Notice of Class Action Settlement and in recognition of the Court's duty to make a preliminary determination as to the reasonableness of a proposed class action settlement, the Court hereby GRANTS Plaintiff's motion as follows:

## **BACKGROUND OF THE LAWSUIT**

1.      This class and PAGA action lawsuit alleges the following causes of action against Defendant American National Red Cross ("Defendant"): (1) failure to reimburse business expenses in violation of California Labor Code § 2802; (2) failure to authorize and permit paid off-duty rest breaks and pay rest break premium pay in violation of California Labor Code § 226.7, § 12 of applicable IWC Wage Order and corresponding California Code of Regulations; (3) failure to provide off-duty meal periods and pay meal break premium pay in violation of California Labor Code §§ 512, 226.7, § 11 of applicable IWC Wage Order and corresponding California Code of Regulations; (4) failure to pay all wages owed in violation of California Labor Code §§ 510, 1194, 1197, 1198, §§ 3-4 of applicable IWC Wage Order and corresponding California Code of Regulations; (5) failure to issue accurate itemized wage statements and maintain payroll records in violation of California Labor Code §§ 226(a), 1174, 1174.5, § 7 of applicable IWC Wage Order and corresponding California Code of Regulations; (6) failure to pay all wages due upon discharge in violation of California Labor Code §§ 201-203; (7) Unfair Competition Law Violation (Cal. Business & Professions Code §§17200-17204); and (8) violation of California Private Attorneys General Act ("PAGA"), Cal. Labor Code § 2699 et seq.

2.      In January 2020, the Parties participated in extensive settlement negotiations including,

---

[1] All capitalized terms appearing in this Order that are not defined herein shall have the meanings assigned to them in the Parties' Class and Representative Action Settlement Agreement and Stipulation.

without limitation, mediation before Lisa Klerman, Esq. The negotiations were conducted after the Parties engaged in extensive and contested litigation, including inspection and analysis of hundreds of pages of documents and other information produced by Plaintiff and Defendant during the litigation of the Action and in preparation for mediation (including relevant policies, course records of the classes taught by the Class Members and reimbursement records of the Class Members).

3. The Parties negotiated and executed a Class and Representative Action Settlement Agreement and Stipulation (the "Settlement Agreement"), which was filed with the Court on [INSERT DATE]. A true and correct copy of the fully-executed Settlement Agreement is attached as Exhibit A to the Declaration of Julian Hammond in Support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement. The Settlement Agreement provides for the full settlement and release of all PAGA, class and representative claims encompassed by the Complaint, the First Amended Complaint, and the Second Amended Complaint as well as Plaintiff's April 17, 2019 LWDA Letter and Plaintiff's February 18, 2020 Supplemental LWDA Letter, and otherwise sets forth the terms of the proposed Settlement which is before the Court for approval. Defendant continues to deny all allegations of wrongdoing, and does not admit or concede that it has, in any manner, violated the California Labor Code, the California Unfair Competition Law, any Wage Orders, the Fair Labor Standards Act or any other law. Defendant also denies that this case is appropriate for class action treatment other than for purposes of settlement.

**CERTIFICATION OF SETTLEMENT CLASS**

4. Based on the findings and conclusions set forth below in Subparagraphs (a)-(e), the Court determines that this case meets the requirements for certification of a class under Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure for purposes of settlement, and hereby orders that this case is certified as a class action, for purposes of settlement only, on behalf of the following class: "All individuals who are or were employed by the American National Red Cross as Training Services instructors (formerly known as Preparedness and Health and Safety Services instructors) and/or Nurse Assistant Training instructors and who have taught courses to Red Cross clients in California at any time from April 24, 2015 through and including the date the Preliminary Approval Order is entered by the Court."

The findings and conclusions that follow are based on the Court's consideration of the allegations, information, arguments, and authorities cited in the Motion and supporting memorandum and declaration; the allegations, information, arguments, and authorities provided in connection with the Complaints filed in this case; Defendant's agreement, for settlement purposes only, not to oppose certification of the class specified in the Settlement Agreement; the terms of the Settlement; and the elimination of the need, on account of the Settlement, for the Court to consider any potential trial manageability issues that might otherwise bear on the propriety of class certification.

a. <u>Numerosity</u>. The Court finds that the Class is so numerous that joinder of all members is impracticable because there are approximately 377 Class Members as of April 2020. Class Members' identities can be ascertained from Defendant's records.

b. <u>Common Questions of Law or Fact</u>. The Court finds that, for purposes of this settlement only, there are questions of law or fact common to the Class, including but not limited to: whether Defendant has violated California Labor Code § 2802 by failing to pay alleged owed business expenses; whether Defendant has violated California Labor Code § 226.7 and related Wage Order and California Code of regulations by failing to allegedly authorize and permit paid rest breaks; whether Defendant has violated California Labor Code §§ 226.7 and 512 and related Wage Order and California Code of regulations by failing to allegedly provide meal breaks; whether Defendant has violated §§ 510, 558, 1194, 1197 and 1197.1 and related Wage Order by failing to pay all wages owed (including minimum and overtime wages); whether Defendant violated California Labor Code §§ 226 and 1174 and related Wage Order and California Code of Regulations by failing to provide accurate wage statements and maintain proper payroll records; whether Defendant is liable for waiting time penalties pursuant to California Labor Code §§ 201-203; and whether Defendant violated California Business and Professions Code § 17200, *et seq.*

c. <u>Typicality of the Representative Plaintiff's Claims</u>. The Court finds that, for purposes of this settlement only, the claims of Plaintiff La Toiya Morrison ("Representative Plaintiff") are typical of the claims of the Class, in that her claims arise from the same alleged events and course of conduct as the claims of the Class, and are based on the same legal theories.

d. <u>Fair and Adequate Representation of the Class's Interests</u>. The Court finds that, that,

for purposes of this settlement only, the Representative Plaintiff will fairly and adequately represent the Class's interests, in that the Representative Plaintiff for purposes of this settlement has the same interests as all members of the Class, has diligently and zealously prosecuted this action to date, and is represented by experienced and competent attorneys who have the resources necessary to represent the Class. The Court hereby appoints Plaintiff as the Class Representative, for settlement purposes only, under Rule 23 of the Federal Rules of Civil Procedure.

        e. <u>Predominance and Superiority of the Class Action Procedure</u>. The Court concludes that with respect to the proposed Class, for purposes of this settlement only, the requirements of Federal Rule of Civil Procedure 23(b)(3) are satisfied because questions of law and fact common to Class Members predominate over any questions affecting only individual members and that a settlement class is superior to other available methods for the fair and efficient adjudication of the controversy.

        5. <u>Appointment of Class Counsel</u>. The Court hereby further appoints, for purposes of this settlement only, Julian Hammond, Polina Brandler and Ari Cherniak of HammondLaw, P.C as counsel for the settlement Class ("Class Counsel"). In making this appointment, the Court has considered that Class Counsel has performed extensive work to date in identifying and investigating potential claims in the action; that Class Counsel have extensive experience in handling class and representative actions and the types of claims asserted in this action; that Class Counsel is very knowledgeable of the applicable law; and that Class Counsel have committed and will continue to commit adequate resources to representing the Class.

        6. <u>Appointment of Settlement Administrator</u>. The Court appoints Simpluris, Inc. as the Settlement Administrator.

**PRELIMINARY APPROVAL OF CLASS SETTLEMENT**

        7. The Court has reviewed the terms of the Settlement and the description of the Settlement set forth in Plaintiff's moving papers. Based on that review, the Court concludes that the Class Settlement has no obvious deficiency, appears to be fair, reasonable, and adequate, and is within the range of possible settlement approval such that notice of the proposed class settlement to the Class is appropriate.

8.    The Court has read and considered the declarations in support of the motion for preliminary approval. Based on the Court's review of the declarations, the Court finds that the Settlement was negotiated at arms-length and is not collusive. The Court further finds that Class Counsel were adequately informed about the strengths and risks of the Class's case when they entered into the Settlement, and that they entered into the Settlement only after conducting extensive informal and formal discovery and investigation, which included interviewing Plaintiff and other current and former employees of Defendant in California, reviewing and analyzing extensive data for the Class produced by Defendant in the course of discovery, and estimating potential Class recoveries on a per pay period basis thereon.

9.    As to the proposed distribution plan for the Net Settlement Fund ("Distribution Plan") set forth in the Agreement, the Court has read and considered the declarations and finds that the proposed Distribution Plan does not improperly grant preferential treatment to any segment of the Class. The Plan is rationally and reasonably related to the relative strengths and weaknesses of the claims asserted and the associated potential recoveries.

10.    The Court further finds on a preliminary basis that the payment of the Incentive Award of $_____ to the Representative Plaintiff contemplated by the Settlement is proper, fair, and reasonable in consideration of the facts that the Representative Plaintiff spent significant amounts of time assisting Class Counsel in investigating and preparing the Class's claims, searching for and producing documents, and that the Representative Plaintiff provided an extensive individual release to Defendant, in addition to the releases provided by all Plaintiff Class Members.

11.    Accordingly, the Court hereby GRANTS preliminary approval to the Class Settlement.

**APPROVAL OF CLASS NOTICE**

12.    Plaintiff has submitted for the Court's approval proposed forms of Class Notice directed to Class Members that have been jointly agreed upon by the Parties (see Settlement Agreement, Exh. 1). The proposed Class Notice appears to be the best notice practical under the circumstances and appear to allow Class Members a full and fair opportunity to consider the proposed Settlement and develop a response. The Parties' proposed plan for distributing the Class Notice set forth in the Settlement Agreement likewise appears to be a method that is reasonably calculated to reach all

members of the Class who would be bound by the Settlement. Under this plan, a Settlement Administrator will distribute the Class Notice to Class Members by U.S. First Class Mail. There appears to be no additional method of distribution that would be reasonably likely to result in the receipt of notice by Class Members who may otherwise not receive notice pursuant to the proposed distribution plan.

13. Accordingly, the Court HEREBY ORDERS that the Parties' proposed forms and manner of distributing notice to the Class is approved. The Court directs the mailing of the Class Notice by first-class mail to the Class Members in accordance with the Implementation Schedule set forth below. The Court finds the dates and process selected for the mailing and distribution of the Class Notice, as set forth in the Implementation Schedule and the Settlement Agreement, meet the requirements of due process and provide the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled thereto.

14. The Court orders the following Implementation Schedule for further proceedings:

a. Within thirty (30) days from the entry of this Preliminary Approval Order, Defendant shall provide to the Settlement Administrator in an electronic format reasonably acceptable to the Settlement Administrator a list of Class Members that identifies for each of them: 1) his/her name; 2) his/her Social Security Number; 3) his/her last-known address; 4) his/her last-known personal telephone number (if known); 5) his/her total number of Pay Periods Worked during the Settlement Period and 6) his/her total number of PAGA Pay Periods Worked between April 17, 2018 through and including the date of this Order.

b. Within twenty (20) days after the Settlement Administrator receives the list of Class Members, the Settlement Administrator shall transmit via regular United States First Class Mail the Class Notice to each Class Member. The Settlement Administrator shall conduct one additional address search/check for any Class Notice returned by the Post Office as "undeliverable." If an updated address is found, the Settlement Administrator shall promptly re-mail the Class Notice to that address one time. The Settlement Administrator will use appropriate skip tracing searches to increase the likelihood of delivery of the Class Notice, including one address confirmation/update of all Class Members prior to the initial mailing. The Settlement Administrator shall not perform more than one

re-mailing to any Class Member. It shall be conclusively presumed that each and every Class Member whose Class Notice is not returned to the Settlement Administrator as undeliverable within thirty (30) calendar days after the Mailing Date has received the Class Notice.

        c.     Any challenges/disputes concerning Pay Periods Worked, which will be used to determine the estimated Individual Settlement Payment and their estimated portion of the PAGA Payment (if applicable), must be completed and postmarked on or before the expiration of the Notice Period and returned to the Settlement Administrator, in compliance with the terms of the Settlement Agreement and Class Notice.

        d.     Requests for exclusion from the Settlement must be postmarked on or before the expiration of the Notice Period and returned to the Settlement Administrator, in compliance with the terms of the Settlement Agreement and Class Notice. Any Class Member may seek exclusion from the Settlement, except the PAGA portion of the settlement as provided in the Settlement Agreement. Requests for exclusion that do not comply with this paragraph and the requirements set forth in the Settlement Agreement and Class Notice shall not be effective.

        e.     Objections to the Class Settlement must be filed with the Court by the close of the Notice Period in compliance with the terms of the Settlement Agreement and Class Notice. Objections must state the specific grounds on which they are being made and include all supporting facts. If an objector intends to appear at the Final Approval Hearing, either in person or through an attorney, the objector must file and serve with the objection a notice of intention to appear at the Final Approval Hearing. Objections that do not comply with this paragraph and the requirements set forth in the Settlement Agreement and Class Notice shall not be considered.

**FINAL APPROVAL HEARING RE CLASS SETTLEMENT**

     15.    A Final Approval and Fairness Hearing on the separate questions of whether (i) the proposed Class Settlement, (ii) the proposed award of Class Counsel's Fees and Expenses to Class Counsel, and (iii) the proposed Class Representative's Incentive Award should be finally approved as fair, reasonable, and adequate as to the members of the Class is scheduled for _____ a.m./p.m. on _____, 2020, which is more than 130 days after the Motion for Preliminary Approval was filed, in the Courtroom of the Honorable Haywood S. Gilliam. The hearing on the proposed PAGA

Settlement will be heard at the same hearing as the Final Approval and Fairness Hearing. All briefs and materials in support of an Order granting Final Approval of the Class Settlement and approval of the PAGA Settlement and an Order granting Class Counsel's attorneys' fees and costs, and an Order granting the Class Representative's Incentive Award shall be filed and served by _____, 2020.

16.     If, for any reason, the Court does not execute and file an Order of final approval of the Class Settlement and approval of the PAGA Settlement, or if the Effective Date of the Settlement does not occur for any reason, the Settlement Agreement and the proposed Settlement that is the subject of this Order, and all evidence and proceedings had in conjunction therewith, shall be without prejudice to the status quo ante rights of the Parties to the litigation, as more specifically set forth in the Settlement Agreement.

17.     This Order, the Settlement Agreement, and all papers related thereto, are not, and shall not be construed to be, an admission by Defendant of any liability, claim or wrongdoing whatsoever, and shall not be offered as evidence of any such liability, claim or wrongdoing or the appropriateness of class certification in the non-settlement context in this Action or in any other proceeding.

18.     Pending further order of this Court, all proceedings in this matter other than those contemplated herein and in the Settlement Agreement are stayed.

19.     This Court reserves the right to adjourn or continue the Final Approval Hearing from time to time without further notice to Class Members.

IT IS SO ORDERED.


Dated: _____          _____
                                 HON. HAYWOOD S. GILLIAM
                                 UNITED STATES DISTRICT COURT JUDGE

4820-0601-8234.1 103632.1001

**EXHIBIT 4**

1  JULIAN HAMMOND, Bar No. 268489
   jhammond@hammondlawpc.com
2  POLINA BRANDLER, Bar No. 269086
   pbrandler@hammondlawpc.com
3  ARI CHERNIAK, Bar No. 290071
   acherniak@hammondlaw.com
4  HAMMONDLAW, P.C.
   1829 Reisterstown Road
5  Suite 410
   Baltimore, Maryland 21208
6  Telephone:   310.601.6766
   Facsimile:    310.295.2385
7
   Attorneys for Plaintiff
8  LA TOIYA MORRISON

9  LISA LIN GARCIA, Bar No. 260582
   llgarcia@littler.com
10 LITTLER MENDELSON, P.C.
   333 Bush Street
11 34th Floor
   San Francisco, California 94104
12 Telephone:   415.433.1940
   Facsimile:    415.399.8490
13
   Attorneys for Defendant
14 AMERICAN NATIONAL RED CROSS

15
                    UNITED STATES DISTRICT COURT
16
                  NORTHERN DISTRICT OF CALIFORNIA
17

18
   LA TOIYA MORRISON, individually and       Case No. 4:19-CV-02855-HSG
19 on behalf of all others similarly situated,
                                              ASSIGNED FOR ALL PURPOSES TO
20             Plaintiff,                      JUDGE HAYWOOD S. GILLIAM

21       v.                                    **[PROPOSED] ORDER: (1) GRANTING
                                               FINAL APPROVAL OF CLASS
22 AMERICAN NATIONAL RED CROSS, a              SETTLEMENT AND PLAN OF
   Congressional Charter Corporation,          DISTRIBUTION; (2) GRANTING
23                                             APPROVAL OF PAGA SETTLEMENT;
               Defendant.                      (3) APPROVING INCENTIVE AWARD TO
24                                             PLAINTIFF; (4) APPROVING
                                               ATTORNEY'S FEES AND COSTS TO
25                                             CLASS COUNSEL; AND (5) RETAINING
                                               JURISDICTION**
26

27

28

This matter came on for hearing on _____, on Plaintiff La Toiya Morrison's ("Plaintiff" or "Class Representative") unopposed Motion for Final Approval of Class Action Settlement, Approval of PAGA Settlement and for Judgment in this action on the terms set forth in the Class and Representative Action Settlement Agreement and Stipulation (the "Settlement Agreement"), attached hereto as Exhibit 1. All capitalized terms appearing in this Final Approval Order that are not defined herein shall have the meanings assigned to them in the Parties' Class and Representative Action Settlement Agreement and Stipulation.

Due and adequate Notice having been given to the members of the Class, and the Court having considered the Settlement Agreement, all papers and proceedings held herein, and all oral and written comments received regarding the proposed Class Settlement, and having reviewed the entire record in this action, *LA TOIYA MORRISON, individually and on behalf of all others similarly situated, v. AMERICAN NATIONAL RED CROSS, a Congressional Charter Corporation*, Case No. 4:19-CV-02855-HSG (the "Action"), and good cause appearing, finds that:

WHEREAS, Plaintiff has alleged claims against Defendant American National Red Cross ("Defendant") on behalf of herself and all individuals who are or were employed by the American National Red Cross as Training Services instructors (formerly known as Preparedness and Health and Safety Services instructors) and/or Nurse Assistant Training instructors and who have taught courses to Red Cross clients in California at any time from April 24, 2015 through and including the date the Preliminary Approval Order is entered by the Court; and

WHEREAS, Plaintiff asserts claims that Defendant failed to reimburse such instructors; failed to authorize and permit off-duty rest breaks and pay rest break premiums; failed to provide off-duty meal periods and pay meal break premium pay; failed to pay them for all hours worked (including minimum, straight time and overtime wages); failed to provide accurate wage statements; failed to pay all wages due upon discharge; failed to maintain accurate payroll records; and violated the California Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200 *et seq.*). Plaintiff further asserts claims that Defendant is liable for penalties under the California Private Attorneys General Act of 2004 ("PAGA") (Cal. Labor Code §§ 2698, *et seq.*); and

WHEREAS, Defendant expressly denies the allegations of wrongdoing and violations of law

alleged in this Action; asserts that it always properly compensated its employees; and further denies

any liability whatsoever to Plaintiff, to the PAGA Releasees, and to the Class Members; and

WHEREAS, without admitting any liability, claim or defense the Parties determined that it

was mutually advantageous to settle this Action and avoid the costs, delay, uncertainty and business

disruption of ongoing litigation; and

WHEREAS, this Court granted preliminary approval of the parties' Class Settlement in this

Action on [INSERT DATE] ("Preliminary Approval Order"); and

WHEREAS, a fairness hearing on the proposed Class Settlement and the proposed PAGA

Settlement having been duly held and a decision reached,

NOW, therefore, the Court grants final approval of the Class Settlement and approval of the

PAGA Settlement, and IT IS HEREBY ORDERED THAT:

1.     The Court has jurisdiction over the subject matter of this Action, Defendant, the

Class and the PAGA Releasees.

2.     The Court has determined that the Class Notice given to the Class Members

fully and accurately informed all Class Members of all material elements of the proposed Class

Settlement — including the plan of distribution of the Gross Settlement Fund, the application for an

Incentive Award to Plaintiff and the application for Class Counsel's Fees and Expenses to Class

Counsel — constituted the best notice practicable under the circumstances, constituted valid, due and

sufficient notice to all Class Members, and complied fully with Rule 23 of the Federal Rules of Civil

Procedure, the United States Constitution, and any other applicable laws.

3.     The Court hereby grants final approval of the Class Settlement as fair,

reasonable and adequate in all respects to the Class Members pursuant to Rule 23 of the Federal Rules

of Civil Procedure.

4.     The Court hereby grants approval of the PAGA Settlement, including the

settlement and release of the PAGA Claims, as defined in the Settlement Agreement, and the payment

of $37,700 from the Gross Settlement Fund to resolve the PAGA Claims ("PAGA Payment").

Pursuant to the terms of the Settlement Agreement, the Settlement Administrator shall pay seventy-

five percent (75%) of the PAGA Payment, or $28,275.00, to the State of California Labor and

Workforce Development Agency ("LWDA"), and twenty-five percent (25%) of the PAGA Payment, or $9,425.00, to the PAGA Releasees. PAGA Releasees will not have the opportunity to opt out of, or object to the PAGA Payment and settlement and release of the PAGA Claims. The plan of distribution as set forth in the Settlement Agreement providing for the distribution of the PAGA Payment to PAGA Releasees is hereby approved, and the PAGA Releasees shall be paid their portion of the PAGA Payment on a pro rata, based on the number of PAGA Pay Periods Worked, as a fraction of the total PAGA Pay Periods Worked by all PAGA Releasees.

5. The Court hereby orders the Parties and the Settlement Administrator to implement all terms of the Settlement Agreement pertaining to the distribution of the Gross Settlement Fund, including the PAGA Payment and the Net Settlement Fund, in accordance with the terms of the Settlement Agreement.

6. The plan of distribution as set forth in the Settlement Agreement providing for the distribution of the Net Settlement Fund to Class Members is hereby finally approved as being fair, reasonable, and adequate pursuant to Rule 23 of the Federal Rules of Civil Procedure.

7. As previously held in the Court's Preliminary Approval Order, the Class for settlement purposes is appropriate under Federal Rule of Civil Procedure 23 and related case law and is defined as follows: "all individuals who are or were employed by the American National Red Cross as Training Services instructors (formerly known as Preparedness and Health and Safety Services instructors) and/or Nurse Assistant Training instructors and who have taught courses to Red Cross clients in California at any time from April 24, 2015 through and including the date the Preliminary Approval Order is entered by the Court."

8. As previously held in the Court's Preliminary Approval Order, the Court appoints as Class Counsel, Julian Hammond, Polina Brandler and Ari Cherniak of HammondLaw, P.C.

9. The Court approves payment of an Incentive Award of $_____ to Plaintiff La Toiya Morrison for her service to the Class, which shall be paid from, and not in addition to, the Gross Settlement Fund.

10. The Court approves the payment of attorneys' fees in the amount of

1  $_____ to Class Counsel, which shall be paid from, and not in addition to, the Gross

2  Settlement Fund.

3         11.    The Court also approves the additional payment of attorneys' costs in the

4  amount of $_____ to Class Counsel to reimburse them for their expenses, which shall be paid

5  from, and not in addition to, the Gross Settlement Fund.

6         12.    The Court approves a payment of up to $_____ to the Settlement

7  Administrator, which shall be paid from, and not in addition to, the Gross Settlement Fund. Any

8  portion of the payment to the Settlement Administrator that is unused will go to the Net Settlement

9  Fund.

10         13.    Any checks for Individual Settlement Payments and any checks for PAGA

11  Payments that are not cashed within 90 days after distribution by the Settlement Administration shall

12  be avoid, and any funds not distributed after expiration of the settlement shall be paid to the

13  _____.

14         14.    All claims asserted in this Action are DISMISSED WITH PREJUDICE as to

15  Plaintiff and all Plaintiff Class Members.  Further, the PAGA claim asserted in this Action shall be

16  DISMISSED WITH PREJUDICE as to Plaintiff and all PAGA Releasees.  Each party shall bear her

17  or its own costs and attorneys' fees, except as provided in the Settlement Agreement and as set forth

18  above in this Order and as set forth in any other Order issued in response to the application by Class

19  Counsel for an award of attorneys' fees, costs, and expenses, which hearings took place concurrently

20  with the hearing for this Order or will take place.

21         15.    Upon entry of this Order and the accompanying Judgment, the claims in this

22  Action and the Released Claims of each Plaintiff Class Member against Defendant and against any

23  and all of the Released Parties, as defined in the Settlement Agreement, are fully, finally, and forever

24  released, relinquished and discharged pursuant to the terms of the Settlement Agreement to the

25  maximum extent permitted by law and the PAGA Claims of each PAGA Releasee against Defendant

26  and against any and all of the Released Parties, as defined in the Settlement Agreement, are fully,

27  finally, and forever released, relinquished and discharged pursuant to the terms of the Settlement

28  Agreement to the maximum extent permitted by law.

16.     Upon entry of this Order and the accompanying Judgment, all Plaintiff Class Members are hereby forever barred and enjoined from prosecuting the Released Claims against any of the Released Parties as defined in the Settlement Agreement and all PAGA Releasees are forever barred and enjoined from prosecuting the PAGA Claims against any of the Released Parties as defined in the Settlement Agreement.

17.     Each Plaintiff Class Member and each PAGA Releasee are bound by this Final Approval Order and the Judgment, including, without limitation, the release of claims as set forth in the Settlement Agreement.

18.     This Final Approval Order, the Judgment, the Preliminary Approval Order, the Settlement Agreement, and all papers related thereto, are not, and shall not be construed to be, an admission by Defendant of any liability, claim or wrongdoing whatsoever, and shall not be offered as evidence of any such liability, claim or wrongdoing in this Action or in any other proceeding.

19.     Without affecting the finality of this Final Approval Order and the Judgment, the Court reserves exclusive and continuing jurisdiction over the Action, the Plaintiff, the Class, the PAGA Releasees, and Defendant for the purposes of supervising the implementation, enforcement, construction, and interpretation of the Settlement Agreement, the Preliminary Approval Order, distribution of the Individual Settlement Payments, the PAGA Payment, award of attorney's fees, costs, and expenses, the Judgment, and this Final Approval Order.

IT IS SO ORDERED.


Dated: _____          _____
                                    HON. HAYWOOD S. GILLIAM
                                    UNITED STATES DISTRICT COURT JUDGE

4828-6623-1480.1 103632.1001

**EXHIBIT 5**

1    JULIAN HAMMOND, Bar No. 268489
     jhammond@hammondlawpc.com
2    POLINA BRANDLER, Bar No. 269086
     pbrandler@hammondlawpc.com
3    ARI CHERNIAK, Bar No. 290071
     acherniak@hammondlaw.com
4    HAMMONDLAW, P.C.
     1829 Reisterstown Road
5    Suite 410
     Baltimore, Maryland  21208
6    Telephone:    310.601.6766
     Facsimile:    310.295.2385
7
     Attorneys for Plaintiff
8    LA TOIYA MORRISON

9    LISA LIN GARCIA, Bar No. 260582
     llgarcia@littler.com
10   LITTLER MENDELSON, P.C.
     333 Bush Street
11   34th Floor
     San Francisco, California  94104
12   Telephone:    415.433.1940
     Facsimile:    415.399.8490
13
     Attorneys for Defendant
14   AMERICAN NATIONAL RED CROSS

15                    UNITED STATES DISTRICT COURT

16                   NORTHERN DISTRICT OF CALIFORNIA

17

18
     LA TOIYA MORRISON, individually and        Case No. 4:19-CV-02855-HSG
19   on behalf of all others similarly situated,
                                                 ASSIGNED FOR ALL PURPOSES TO
20                   Plaintiff,                  JUDGE HAYWOOD S. GILLIAM

21           v.                                  **[PROPOSED] JUDGMENT AND
                                                 DISMISSAL**
22   AMERICAN NATIONAL RED CROSS, a
     Congressional Charter Corporation,
23
                     Defendant.
24

25

26

27

28

PURSUANT TO THE PRELIMINARY APPROVAL ORDER ENTERED ON _____ AND THE ORDER GRANTING FINAL APPROVAL ENTERED ON _____, IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1. The Class and Representative Action Settlement Agreement and Stipulation (the "Settlement Agreement"), attached hereto as Exhibit "1," and all exhibits thereto, shall be incorporated into this Judgment as though all terms therein are set forth in full. The capitalized terms in this Judgment shall have the meanings set forth in the Settlement Agreement.

2. All claims asserted in this Action are DISMISSED WITH PREJUDICE as to Plaintiff La Toiya Morrison and the Plaintiff Class Members to the maximum extent permitted by law. As stated in the Final Approval Order, the PAGA Claims asserted in this Action shall be dismissed with prejudice as to Plaintiff La Toiya Morrison and all PAGA Releasees. Except as set forth in the Settlement Agreement and the Final Approval Order, each party is to bear her/its own attorneys' fees and costs. All Class Members who did not properly and timely opt out from the Class Settlement are permanently enjoined from pursuing or seeking to reopen, any of the Settled Claims, as defined in the Settlement Agreement to the maximum extent permitted by law. All PAGA Releasees are permanently enjoined from pursuing or seeking to reopen, any of the PAGA Claims, as defined in the Settlement Agreement to the maximum extent permitted by law.

3. Without affecting the finality of the Judgment, the Court shall retain exclusive and continuing jurisdiction over the above-captioned action and the parties, including all Class Members, for purposes of supervising, administering, implementing, enforcing, and interpreting the Settlement Agreement and the Final Approval Order.

IT IS SO ORDERED.


Dated: _____          _____
                                    HON. HAYWOOD S. GILLIAM
                                    UNITED STATES DISTRICT COURT JUDGE

4842-8836-2424.1 103632.1001

1    HAMMONDLAW, P.C.
      JULIAN HAMMOND (SBN 268489)
2    jhammond@hammondlawpc.com
      POLINA PECHERSKAYA (SBN 269086)
3    ppecherskaya@hammondlawpc.com
      ARI CHERNIAK (SBN 290071)
4    acherniak@hammondlawpc.com
      1829 Reisterstown Rd. Suite 410
5    Baltimore, MD 21208
      (310) 601-6766
6    (310) 295-2385 (Fax)

7

8    Attorneys for Plaintiff
      LA TOIYA MORRISON

9

10    LISA LIN GARCIA (SBN 260582)
      llgarcia@littler.com
      LITTLER MENDELSON, P.C.
11    333 Bush Street
      34th Floor
12    San Francisco, California  94104
      Telephone:      415.433.1940
13    Facsimile:      415.399.8490

14    Attorneys for Defendant
      AMERICAN NATIONAL RED CROSS

15

16                 UNITED STATES DISTRICT COURT

17               NORTHERN DISTRICT OF CALIFORNIA

18

19    LA TOIYA MORRISON, individually and on    Case No.:  4:19-cv-02855-HSG
      behalf of all others similarly situated,
20

21          Plaintiff,                  **JOINT STIPULATION TO AMEND**
                                        **PARAGRAPH 4.3 OF THE CLASS AND**
      vs.                              **REPRESENTATIVE ACTION**
22                                         **SETTLEMENT AGREEMENT AND**
      AMERICAN NATIONAL RED CROSS, a       **STIPULATION**
23    Congressional Charter Corporation,

24

25          Defendant

26

27

28

IT IS HEREBY STIPULATED by and between LA TOIYA MORRISON ("Plaintiff") and AMERICAN NATIONAL RED CROSS ("Defendant") (collectively, the "Parties") as follows:

1.   On or about June 2, 2020 Plaintiff, individually and on behalf of all others similarly situated, and Defendant fully executed the Class and Representative Action Settlement Agreement and Stipulation ("Settlement Agreement").[1]

2.   The Parties hereby agree to amend Paragraph 4.3 of the Settlement Agreement to clarify the scope of the release set forth in this Paragraph 4.3. Specifically, the parties amend the phrase "or arising from" to "based on." See Dkt. 36-2, page 17, line 1.

3.   The amended Paragraph 4.3 of the Settlement Agreement is hereby set forth in full as follows:

Release of All Settled Claims. Upon the Court's final approval of the Class Settlement and entry of the Judgment, Plaintiff and all Plaintiff Class Members (*i.e.*, all Class Members who do not properly opt-out) and all persons purporting to act on the Plaintiff Class Members' behalf or purporting to assert a claim under or through them, hereby do and shall be deemed to have fully, finally, and forever released, settled, compromised, relinquished and discharged any and all of the Released Parties of and from any and all claims pleaded or that could have been pleaded in the Complaint based on the facts and/or allegations in the Complaint, Plaintiff's April 17, 2019 LWDA Letter and/or Plaintiff's February 18, 2020 Supplemental LWDA Letter, including, but not limited to, any and all underlying statutory provisions identified in the Complaint, Plaintiff's April 17, 2019 LWDA Letter and/or Plaintiff's February 18, 2020 Supplemental LWDA Letter, any and all penalties and any and all of the following claims or forms of relief that arose at any time during the Settlement Period to the maximum extent permitted by law:

(a)   Any claims for expense reimbursement, meal break violations, rest break violations, unpaid wages (including but not limited to minimum wages, regular wages and overtime pay), improper itemized wage statements, improper payroll records maintenance and failure to pay all wages due at the time of termination;

---

[1] All capitalized terms appearing in this Stipulation that are not defined herein shall have the meanings assigned to them in the Parties' Class and Representative Action Settlement Agreement and Stipulation.

(b)     Any claims under California Labor Code sections 201 through 203, 226, 226.7, 510, 512, 558, 1174, 1174.5, 1194, 1197, 1197.1, 1198, 2698 and 2802 *et seq.*, and related provisions contained in the California Wage Orders and the California Code of Regulations; the California Business and Professions Code predicated on such Labor Code sections, California Wage Orders, and California Code of Regulations, including but not limited to California Business and Professions Code section 17200 *et seq.*; and any claims under the Fair Labor Standards Act for unpaid wages (including but not limited to minimum wages, regular wages and overtime pay), improper meal breaks, improper rest breaks, improper itemized wage statements, improper payroll records maintenance, failure to pay all wages due at the time of termination and failure to reimburse for expenses;

(c)     Any claims for damages, penalties, interest, attorney's fees and costs, injunctive relief, declaratory relief, restitution, fraudulent business practices, punitive damages or any other damages which were alleged or which could have been alleged based in whole or in part on the factual or legal allegations and/or claims in the Complaint, Plaintiff's April 17, 2019 LWDA Letter and/or Plaintiff's February 18, 2020 Supplemental LWDA Letter.

All claims set forth in this Paragraph 4.3 shall be collectively referred to as the "Released Claims" or "Settled Claims." The Plaintiff Class Members are bound by the Released Claims regardless of whether they cash their Individual Settlement Payment checks.

4.   The Parties further agree to amend the Notice of Class Action Settlement that is attached as Exhibit 1 to the Settlement Agreement to reflect the Parties' amendment in Paragraph 4.3 of the Settlement Agreement.

IT IS SO STIPULATED AND AGREED.

7/13/2020

Dated:        July _____, 2020

_La Toiya Morrison_
_____
La Toiya Morrison
Plaintiff

Dated:     July  16 , 2020

**DEFENDANT AMERICAN NATIONAL
RED CROSS**

By: _____
      Chevanniese Smith
      Senior Counsel

Dated:     July  14 , 2020

_____
Julian Hammond
Polina Pecherskaya
Ari Cherniak
Counsel for Plaintiff and the Class

Dated:     July  16 , 2020

_____
Lisa Lin Garcia
Attorneys for Defendant

4851-2601-0306.3