UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LA TOIYA MORRISON,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN NATIONAL RED CROSS,<br><br>Defendant. | Case No. 19-cv-02855-HSG<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL AND GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES**<br><br>Re: Dkt. Nos. 47, 48 |

Pending before the Court are Plaintiff La Toiya Morrison's motions for final approval of class action settlement and for attorneys' fees, costs, and incentive award. Dkt. Nos. 47, 48. The Court held a final fairness hearing on January 7, 2021. For the reasons detailed below, the Court **GRANTS** final approval. The Court also **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion for attorneys' fees, costs, and incentive award.

## I. BACKGROUND

### A. Factual Background

Plaintiff brought this wage and hour class action against Defendant American National Red Cross on behalf of herself and a putative class of instructors who taught training courses to Defendant's clients in California. *See generally* Dkt. No. 39 ("SAC"). Plaintiff alleges that Defendant required its instructors to use their personal cell phones to carry out their job duties, including communicating with Defendant and its clients regarding class scheduling, but Defendant did not reimburse any portion of instructors' cell phone expenses. *See id.* at ¶¶ 3, 27–29, 44. Additionally, according to Plaintiff, Defendant did not authorize and permit instructors to take meal and rest breaks, nor did Defendant compensate instructors for missed breaks. *Id.* at ¶¶ 4–5,

30–33, 51–52, 59, 63.  Instead, Defendant required instructors to be available to students during all scheduled class time, which impeded instructors' ability to take any meal or rest breaks.  *See id.* at ¶ 31.  Plaintiff contends that as a result of these practices, Defendant also failed to comply with numerous provisions of California's Labor Code and with Wage Orders promulgated by California's Industrial Welfare Commission ("IWC").  *See id.* at ¶¶ 34–38, 42–77.  Plaintiff further argues that Defendant's conduct constitutes unfair business practices, in violation of California's Unfair Competition Law ("UCL), California Business and Professions Code §§ 17200 *et seq.  See id.* at ¶¶ 39, 78–84.

On the basis of these allegations, Plaintiff also sought to represent a class defined as "all individuals who are or were employed by [Defendant] as Training Services instructors (formerly known as Preparedness and Health and Safety Services instructors) and Nurse Assistant Training instructors and who taught courses to Red Cross clients in California" during the four years prior to the filing of this action.  *Id.* at ¶ 1.

**B.  Procedural History**

Plaintiff initially filed this action in Alameda County Superior Court on April 24, 2019.  *See* Dkt. No. 1-1, Ex. A.  At the time, Plaintiff only challenged Defendant's failure to reimburse instructors for their cell phone related business expenses, alleging violations of California Labor Code § 2802 and the UCL.  *Id.*  Soon after, on May 23, 2019, Defendant removed this action to federal court.  *See* Dkt. No. 1.  On July 8, 2019, Plaintiff filed an amended complaint, seeking PAGA penalties on behalf of herself and other instructors from April 17, 2018, through the present ("PAGA Period"), for the underlying violation of California Labor Code § 2802.  *See* Dkt. No. 15.  The parties subsequently agreed to attend early mediation and engaged in informal discovery.  *See* Dkt. Nos. 20, 26.  As part of this process, Plaintiff's counsel sent surveys to and conducted interviews of putative class members.  *See* Dkt. No. 36-1 at ¶ 11.  On January 27, 2020, the parties participated in a full-day mediation with mediator Lisa Klerman.  *See* Dkt. No. 36-1 at ¶ 14.

Following the parties' informal discovery, and with the assistance of a mediator, the parties entered into a settlement agreement, fully executed on June 2, 2020.  Dkt. No. 36-2, Ex. A ("SA").  Plaintiff filed a motion for preliminary approval on June 2, 2020, *see* Dkt. No. 36, and the Court

granted the motion on July 27, 2020, *see* Dkt. No. 44. The parties now seek final approval of the class action settlement and Plaintiff seeks attorneys' fees, costs, and an incentive award for the named Plaintiff. *See* Dkt. Nos. 47, 48.

### C. Settlement Agreement

The key terms of the parties' settlement are as follows:

Class Definition: The Settlement Class is defined as:

> [A]ll individuals who are or were employed by the American National Red Cross as Training Services instructors (formerly known as Preparedness and Health and Safety Services instructors) and/or Nurse Assistant Training instructors and who have taught courses to Red Cross clients in California at any time from April 24, 2015 through and including the date the Preliminary Approval Order is entered by the Court.

SA ¶ 2.4.

Settlement Benefits: Defendant will make a $377,000 non-reversionary payment. *Id.* ¶¶ 2.21, 3.1. The parties propose that ten percent of this gross settlement fund, or $37,700, be allocated to the PAGA claim as civil penalties. *See* SA ¶¶ 2.35, 3.1(c). Of this PAGA Payment, $28,275 will be paid to the California Labor and Workforce Development Agency ("LWDA") and $9,425 will be distributed pro rata to instructors who taught courses for Defendant in California from April 17, 2018, through the date of the preliminary approval order ("PAGA Releasees"). *Id.*; *see also* Cal. Lab. Code § 2699(i) (providing that penalties under PAGA are split 75% to LWDA and 25% to aggrieved employees). The gross settlement fund also includes Court-approved attorneys' fees and costs, settlement administration fees, any additional payment to Plaintiff as class representative, and payments to class members. SA ¶ 3.1. The cash payments to the class will be based on the number of pay periods each class member worked during the relevant class period. *Id.* at ¶ 3.1(e). The parties have estimated that after the deductions identified above, as well as applicable taxes and required withholdings, individual class members will receive approximately $557. Dkt. No. 36 at 4; Dkt. No. 36-1 at ¶ 60; *see also* SA ¶ 3.2.

*Cy Pres* Distribution: Settlement checks that are not cashed within 90 days of mailing will be void and those funds will be donated to Bet Tzedek, a non-profit legal services organization that offers free legal services to low-income residents in Southern California, where Defendant's

3

headquarters are located and the region in which Plaintiff worked during the time she was employed by Defendant. SA ¶ 6.8(b); Dkt. No. 36 at 5–6. Bet Tzedek's Employment Rights Project enforces minimum labor standards in the workplace by assisting low-wage workers through a combination of individual representation before the Labor Commissioner, litigation in state and federal court, legislative advocacy, and community education. *See* Dkt. No. 36-1 at ¶ 68.

Release: During the hearing on the motion for preliminary approval, the Court raised concerns that the proposed release was potentially overly broad, requiring class members to release claims that do not arise from the claims that were or could have been pled in the complaint based on the facts alleged. The parties have since clarified this language, and filed an amended Paragraph 4.3 of the Settlement Agreement. *See* Dkt. No. 43. Under this amendment, all Settlement Class Members will release:

> any and all claims pleaded or that could have been pleaded in the Complaint based on the facts and/or allegations in the Complaint, Plaintiff's April 17, 2019 LWDA Letter and/or Plaintiff's February 18, 2020 Supplemental LWDA Letter, including, but not limited to, any and all underlying statutory provisions identified in the Complaint, Plaintiff's April 17, 2019 LWDA Letter and/or Plaintiff's February 18, 2020 Supplemental LWDA Letter, any and all penalties and any and all of the following claims or forms of relief that arose at any time during the Settlement Period to the maximum extent permitted by law:
>
> (a) Any claims for expense reimbursement, meal break violations, rest break violations, unpaid wages (including but not limited to minimum wages, regular wages and overtime pay), improper itemized wage statements, improper payroll records maintenance and failure to pay all wages due at the time of termination;
>
> (b) Any claims under California Labor Code sections 201 through 203, 226, 226.7, 510, 512, 558, 1174, 1174.5, 1194, 1197, 1197.1, 1198, 2698 and 2802 et seq., and related provisions contained in the California Wage Orders and the California Code of Regulations; the California Business and Professions Code predicated on such Labor Code sections, California Wage Orders, and California Code of Regulations, including but not limited to California Business and Professions Code section 17200 *et seq.*; and any claims under the Fair Labor Standards Act for unpaid wages (including but not limited to minimum wages, regular wages and overtime pay), improper meal breaks, improper rest breaks, improper itemized wage statements, improper payroll records maintenance, failure to pay all wages due at the time of

4

> termination and failure to reimburse for expenses;
>
> (c) Any claims for damages, penalties, interest, attorney's fees and costs, injunctive relief, declaratory relief, restitution, fraudulent business practices, punitive damages or any other damages which were alleged or which could have been alleged based in whole or in part on the factual or legal allegations and/or claims in the Complaint, Plaintiff's April 17, 2019 LWDA Letter and/or Plaintiff's February 18, 2020 Supplemental LWDA Letter.

*Id.* PAGA Releasees also agree to release "any and all PAGA claims premised in whole or in part on any of the claims set forth in Paragraph 4.3 above that arose at any time during the PAGA Period." *See* SA ¶ 4.4.

Class Notice:  A third-party settlement administrator will send class notices via first-class U.S. mail to each member of the class, using the most current known address. *See* SA ¶ 6.3. The notice will include the nature of the action; a summary of the settlement terms; the formula to be used in calculating the individual settlement payment as well as the share of the PAGA Payment; instructions on how to object to and opt out of the settlement, including relevant deadlines; and the released claims. *Id.* at ¶ 6.3(d); *see also* Dkt. No. 36-1, Ex. B.

Opt-Out Procedure:  The deadline for a class member to submit a request for exclusion or to object to the Settlement is 45 days after the initial mailing date of the notice. SA ¶¶ 6.3(e), 6.5, 6.7. Defendant retains the right to "rescind/void" the Settlement if twenty or more class members opt out. *See id.* at ¶ 6.6. Class members cannot, however, opt out of or otherwise object to the PAGA Payment or release of PAGA claims. *See id.*; *see also id.* at ¶ 3.1(c).

Incentive Award:  The named Plaintiff may apply for an incentive award of no more than $10,000. *Id.* at ¶ 3.1(b).

Attorneys' Fees and Costs:  Class Counsel will file an application for attorneys' fees not to exceed $125,666.67, as well as costs not to exceed $15,000. *Id.* at ¶ 3.1(a).

//
//
//

## II. ANALYSIS

### A. Final Settlement Approval

#### i. Class Certification

Final approval of a class action settlement requires, as a threshold matter, an assessment of whether the class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b). *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019–1022 (9th Cir. 1998). Because no facts that would affect these requirements have changed since the Court preliminarily approved the class on July 27, 2020, this order incorporates by reference its prior analysis under Rules 23(a) and (b) as set forth in the order granting preliminary approval. *See* Dkt. No. 44 at 6–10.

#### ii. The Settlement

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). The Court may finally approve a class settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) ("The district court's role in evaluating a proposed settlement must be tailored to fulfill the objectives outlined above. In other words, the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties . . . "). To assess whether a proposed settlement comports with Rule 23(e), the Court "may consider some or all" of the following factors: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009); *see also Hanlon*, 150 F.3d at 1026. "The relative degree of importance to be attached to any particular factor" is case specific. *Officers for Justice*, 688 F.2d at 625.

In addition, "[a]dequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. As discussed below, the Court finds that the proposed settlement is fair, adequate, and reasonable, and that Class Members received adequate notice.

### a. Adequacy of Notice

Under Federal Rule of Civil Procedure 23(e), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The notice must "clearly and concisely state in plain, easily understood language" the nature of the action, the class definition, and the class members' right to exclude themselves from the class. Fed. R. Civ. P. 23(c)(2)(B). Although Rule 23 requires that reasonable efforts be made to reach all class members, it does not require that each class member actually receive notice. *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (noting that the standard for class notice is "best practicable" notice, not "actually received" notice).

The Court finds that the notice and notice plan previously approved by the Court was implemented and complies with Rule 23(c)(2)(B). *See* Dkt. No. 44 at 5, 15–16. The Court ordered the third-party settlement administrator to send class notice via U.S. mail based on a class list Defendant provided. *Id.* at 5, 15. Simpluris, Inc., the third-party settlement administrator, represents that class notice was provided as directed. Dkt. No. 48-1 at ¶¶ 3–9. Simpluris verified the mailing addresses from the class list with the National Change of Address Database. *Id.* ¶ 5. A total of 377 notice packets were sent out, and 25 packets were initially returned as undeliverable. *Id.* ¶¶ 6, 9. For those 25 returned notice packets, Simpluris performed an address trace to find more current addresses and re-mailed 21 of the notice packets. *Id.* ¶ 9. As of November 30, 2020, therefore, only four of the total 377 notice packets were undeliverable. *Id.*

In light of these facts, the Court finds that the parties have sufficiently provided the best practicable notice to the Class Members.

//

//

### b. Fairness, Adequacy, and Reasonableness

Having found the notice procedures adequate under Rule 23(e), the Court next considers whether the entire settlement comports with Rule 23(e).

#### 1. Strength of Plaintiff's Case and Litigation Risk

Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case. *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). Courts "may presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-1365-CW, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010). Additionally, difficulties and risks in litigating weigh in favor of approving a class settlement. *Rodriguez*, 563 F.3d at 966. "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014) (quotations omitted).

The Court finds that the amount offered in settlement is reasonable in light of the complexity of this litigation and the substantial risk Plaintiff would face in litigating the case given the nature of the asserted claims. *See* Dkt. No. 48 at 4–5; *see also* Dkt. No. 47 at 3–6; Dkt. No. 36 at 10–16. Defendant refutes the factual allegations underlying several of Plaintiff's claims, and were the case to proceed, Defendant would argue against class certification. *Id*. In reaching a settlement, Plaintiff has ensured a favorable recovery for the class. *See Rodriguez*, 563 F.3d at 966 (finding litigation risks weigh in favor of approving class settlement). Accordingly, these factors weigh in favor of approving the settlement. *See Ching*, 2014 WL 2926210, at *4 (favoring settlement to protracted litigation).

#### 2. Risk of Maintaining Class Action Status

In considering this factor, the Court looks to the risk of maintaining class certification if the litigation were to proceed. Certifying a class encompassing approximately 377 National Red Cross Training Services instructors, who worked offsite throughout California, presents complex issues, especially in the context of labor laws, that could undermine certification. *See* Dkt. No. 48

8

at 4–5; *see also* Dkt. No. 47 at 3–4; Dkt. No. 36 at 10–16. Accordingly, this factor also weighs in favor of settlement.

### 3. Settlement Amount

The amount offered in the settlement is another factor that weighs in favor of approval. Based on the facts in the record and the parties' arguments at the final fairness hearing, the Court finds that the $377,000 settlement amount, which constitutes approximately 71% of what Class Counsel estimates to be the realistic recovery at trial, falls well "within the range of reasonableness" in light of the risks and costs of litigation. *See* Dkt. No. 48 at 5; Dkt. No. 36-1 at ¶ 55; *see also Villanueva v. Morpho Detection, Inc.*, No. 13-cv-05390-HSG, 2016 WL 1070523 *4 (N.D. Cal. March 18, 2016) (citing cases). The average net recovery, after deduction of administration costs and the requested attorneys' fees, costs, and incentive award, is $589.45 per Settlement Class Member. Dkt. No. 48-1 at ¶¶ 13–16. The settlement administrator has estimated that, based on the pay periods worked by each Class Member, the highest individual settlement payment to be paid is approximately $2,274.08, the lowest is approximately $16.36, and the average is approximately $589.45. *See id.* at ¶ 14. This factor therefore weighs in favor of approval.

### 4. Extent of Discovery Completed and Stage of Proceedings

The Court finds that Class Counsel had sufficient information to make an informed decision about the merits of the case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). The parties settled only after Plaintiff investigated Defendant's policies and practices, the parties engaged in informal discovery, and Plaintiff reviewed Defendant's payroll and scheduling data prior to a full-day mediation. *See* Dkt. No. 47-1 at ¶ 14. The Court finds that the parties received, examined, and analyzed information, documents, and materials sufficient to allow them to assess the likelihood of success on the merits. This factor weighs in favor of approval.

### 5. Experience and Views of Counsel

The Court next considers the experience and views of counsel. "[P]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each

party's expected outcome in litigation." *Rodriguez*, 563 F.3d at 967 (quotations omitted). Accordingly, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008). Class Counsel has substantial experience in labor and wage class actions. *See* Dkt. No. 47-1 ¶¶ 4–5; Dkt. No. 36-1 at ¶ 7. The Court recognizes, however, that courts have diverged on the weight to assign counsel's opinions. *Compare Carter v. Anderson Merch.*, LP, 2010 WL 1946784, at *8 (C.D. Cal. May 11, 2010) ("Counsel's opinion is accorded considerable weight."), *with Chun-Hoon*, 716 F. Supp. 2d at 852 ("[T]his court is reluctant to put much stock in counsel's pronouncements. . . ."). This factor's impact is therefore modest, but favors approval.

### 6. Reaction of Class Members

The reaction of the Class Members supports final approval. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D. Cal. 2004); *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval.").

Class notice, which was served in accordance with the method approved by the Court, advised the Class of the requirements to object to or opt out of the settlement. The deadline to do so was November 13, 2020. *See* Dkt. No. 48-1 at ¶¶ 10–12. Simpluris received no objections and only three requests for exclusion, out of the 377 Class Members. *See id.* The Court finds that the lack of objections and minimal number of opt-outs in comparison to the size of the class indicate overwhelming support among the Class Members and weigh in favor of approval. *See*, *e.g.*, *Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement where 45 of approximately 90,000 class members objected); *Rodriguez v. West Publ. Corp.*, Case No. CV05–3222 R, 2007 WL 2827379, at *10 (C.D. Cal. Sept. 10, 2007) (finding favorable class reaction where 54 of 376,301 class members objected).

\*   \*   \*

After considering and weighing the above factors, the Court finds that the settlement

1 agreement is fair, adequate, and reasonable, and that the settlement Class Members received
2 adequate notice. Accordingly, Plaintiff's motion for final approval of the class action settlement is
3 **GRANTED**.

     **B.**    **Attorneys' Fees, Costs and Expenses, and Incentive Award**

In its unopposed motion, Class Counsel asks the Court to approve an award of $94,250 in attorneys' fees and $9,095.15 in costs. Dkt. No. 63 at 1–12. Class Counsel also seeks an $8,000 incentive award for the Named Plaintiff. *Id.* at 13–14.

     **i.**    **Attorneys' Fees**

        **a.**  **Legal Standard**

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). In a state law action—like this one—state law also governs the calculation of attorneys' fees. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Nevertheless, the Court may still look to federal authority for guidance in awarding attorneys' fees. *See Apple Computer, Inc. v. Superior Court*, 126 Cal. App. 4th 1253, 1264 n.4 (2005) ("California courts may look to federal authority for guidance on matters involving class action procedures.").

Under California law, the "percentage of fund method" is proper in class actions. *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 506 (2016). In addition, "trial courts have discretion to conduct a lodestar cross-check on a percentage fee." *Id.* The "lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941 (citing *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003). Trial courts "also retain the discretion to forgo a lodestar cross-check and use other means to evaluate the reasonableness of a requested percentage fee." *Laffitte*, 1 Cal. 5th at 506.

        **b.**  **Discussion**

Class Counsel here seeks $94,250 in fees, or 25% of the settlement amount. *See* Dkt. No. 47 at 1–12. Using federal law for guidance, 25% of the common fund is the benchmark for

11

attorney fee awards. *See*, *e.g.*, *In re Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."). The Court considers the reasonableness of the percentage requested in light of the factors endorsed by the Ninth Circuit, with the 25% award as a starting point. The Ninth Circuit has identified several factors that a court should consider to determine whether to adjust a fee award from the benchmark: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiff; and (5) awards made in similar cases. *See Vizcaino*, 290 F.3d at 1048–50.

The Court recognizes that Class Counsel obtained significant results for the class. The settlement amount represents approximately 71% of what Class Counsel estimates to be the realistic recovery at trial. Moreover, no Class Member objected to the settlement and only three members requested exclusion, suggesting strong support for the settlement's outcome. Further, Class Counsel assumed substantial risk in litigating this action on a contingency fee basis, despite "the unpredictable risks that are common to most complex employment class actions . . . ." Dkt. No. 47-1 at ¶ 11. With respect to the quality of litigation, Class Counsel is experienced in litigating large class actions concerning employment matters and wage and hour cases. The successful result involved significant commitment of effort and skill. In particular, the attorneys spent many hours analyzing Defendant's payroll and scheduling data. *See id.* at ¶ 14.

Class Counsel further contends that its lodestar supports the reasonableness of its request. In calculating its lodestar, Class Counsel states that it expended a total of 127.80 hours litigating this action. *Id.* at ¶ 13. With respect to hourly rates, the rates requested are $495 for the two associates and $625 for the partner on this case. *Id.* The Court finds that the billing rates used by Class Counsel to calculate the lodestar are reasonable and in line with prevailing rates in this district for personnel of comparable experience, skill, and reputation. *See, e.g.*, *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018) (rates from $650 to $1,250 for partners or senior counsel, $400 to $650 for associates); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 2672 CRB (JSC), 2017 WL

1047834, at *5 (N.D. Cal. Mar. 17, 2017) (billing rates ranging from $275 to $1600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals reasonable "given the complexities of this case and the extraordinary result achieved for the Class."). According to Class Counsel, based on the number of hours billed and the hourly rates, this yields a lodestar of $71,620.00. *See* Dkt. No. 47-1 at ¶ 13. This does not include, however, any time spent preparing the motion for final approval or in overseeing the distribution of settlement funds. *See id.* at ¶ 15. Class Counsel is therefore seeking fees with a 1.3 lodestar multiplier. Dkt. No. 47 at 10–11.

The Court finds that these factors warrant attorneys' fees in the amount of the 25% benchmark. In recognition of the favorable settlement, the substantial risks of litigation, and the financial burden assumed, the Court **GRANTS** attorneys' fees of 25% of the total settlement amount, or $94,250.

### ii. Attorneys' Costs

Class Counsel is entitled to recover "those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (quotations omitted). Class Counsel seeks reimbursement of $9,095.15 in out-of-pocket costs. *See* Dkt. No. 47 at 12–13. Class Counsel submitted a table summarizing the costs and expenses incurred. Dkt. No. 47-1 at ¶ 17. These expenses include mediation and travel related fees, as well as filing fees for the complaint and service of process. *Id.* The Court is satisfied that these costs were reasonably incurred and **GRANTS** the motion for costs in the amount of $9,095.15.

### iii. Incentive Award

Class Counsel requests an incentive award of $8,000 for the Named Plaintiff. "[N]amed plaintiffs . . . are eligible for reasonable incentive payments." *Staton*, 327 F.3d at 977; *Rodriguez*, 563 F.3d at 958 ("Incentive awards are fairly typical in class action cases."). They are designed to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59. Nevertheless, the Ninth Circuit has cautioned that "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives . . . ." *Radcliffe v.*

*Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (quotations omitted).  This is particularly true where "the proposed service fees greatly exceed the payments to absent class members." *Id.*  The district court must evaluate an incentive award using "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation . . . ." *Id.* at 977.

In wage and hour cases, many courts in this district have held that a $5,000 incentive award is "presumptively reasonable."  *See*, *e.g.*, *Harris v. Vector Marketing Corp.*, No. 08-cv-5198-EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) (observing that "as a general matter, $5,000 is a reasonable amount"); *Smith v. Am. Greetings Corp.*, No. 14-CV-02577-JST, 2016 WL 362395, at *11 (N.D. Cal. Jan. 29, 2016) (awarding $5,000); *Odrick v. UnionBancal Corp.*, No. C 10-5565 SBA, 2012 WL 6019495, at *7 (N.D. Cal. Dec. 3, 2012) (same).  Incentive awards may also be especially appropriate in wage and hour class actions, where a named plaintiff undertakes "a significant 'reputational risk' in bringing [an] action against [plaintiff's] former employer. *Covillo v. Specialtys Cafe*, No. C-11-00594 DMR, 2014 WL 954516, at *8 (N.D. Cal. Mar. 6, 2014) (citing *Rodriguez*, 563 F.3d at 958–59).  In determining the reasonableness of a requested incentive award, some courts have considered, among other factors, the proportionality between the incentive award requested and the average class member's recovery.  *See Austin v. Foodliner, Inc.*, No. 16-CV-07185-HSG, 2019 WL 2077851, at *8 (N.D. Cal. May 10, 2019); *Smith*, 2016 WL 362395, at *10.

Plaintiff requests an $8,000 service award, at the high end of the range of awards granted by this Court in comparable class actions.  *See Austin*, 2019 WL 2077851, at *8; *McDonald v. CP OpCo, LLC*, No. 17-CV-04915-HSG, 2019 WL 2088421, at *8 (N.D. Cal. May 13, 2019).  Although Plaintiff suggests that the requested incentive award "is fair when considered relative to the $377,000 Gross Settlement," the Court disagrees.  Plaintiff is seeking almost fourteen times the amount of the average recovery for each Class Member.  Moreover, given that the case settled before any formal discovery, Plaintiff was not even deposed in this case.  Rather, she estimates that she spent approximately 30 hours  "discussing the case with counsel, responding to calls from

14

counsel, gathering and providing documents and other information to Class Counsel, and meeting with Class Members, both in person and over the phone, to discuss her lawsuit." *See* Dkt. No. 47 at 13. The Court does not minimize Plaintiff's role in enabling a highly favorable result for her fellow Class Members, but considering all the circumstances of this case, the Court finds that the presumptive $5,000 service award is reasonable to compensate Plaintiff for her efforts. The Court therefore **GRANTS IN PART** the request for an incentive award in the amount of $5,000.

### III. CONCLUSION

Accordingly, the Court **GRANTS** the motion for final approval of class action settlement and **GRANTS IN PART** the motion for attorneys' fees and incentive award. The Court approves the settlement amount of $377,000; administrator fees not to exceed $7,500; and attorneys' fees and costs in the amount of $103,345.15. The Court further awards named Plaintiff an incentive award of $5,000.

The parties and settlement administrator are directed to implement this Final Order and the settlement agreement in accordance with the terms of the settlement agreement. The parties are further directed to file a short stipulated final judgment of two pages or less within 21 days from the date of this order. The judgment need not, and should not, repeat the analysis in this order.

**IT IS SO ORDERED.**

Dated: 1/8/2021

HAYWOOD S. GILLIAM, JR.
United States District Judge